## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*, | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |
| FTX RECOVERY TRUST, | |
| Plaintiff, | |
| - against - | |
| HUOBI GLOBAL LTD., HTX LTD., ABOUT CAPITAL MANAGEMENT (HK) CO., LTD., DIGITAL LEGEND HODLINGS LTD., ORANGE ANTHEM LTD., and POLO DIGITAL ASSETS, LTD., | Adv. Pro. No. 24-50219 (KBO) |
| Defendants. | |

**MOTION OF DEFENDANTS ABOUT CAPITAL MANAGEMENT (HK) CO., LTD. AND ORANGE ANTHEM LTD. TO DISMISS THE COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM**

**KIRK & INGRAM, LLP**
David E. Kirk (No. 7310)
43 West 43rd Street, Suite 279
New York, NY 10036
Telephone: (212) 859-3504
DKirk@kirkingram.com

*Counsel for Defendants About Capital Management (HK) Co., Ltd. and Orange Anthem Ltd.*

## **TABLE OF CONTENTS**

NATURE AND STAGE OF THE PROCEEDING ........................................................ 1

SUMMARY OF ARGUMENT ................................................................................ 1

STATEMENT OF RELEVANT ALLEGED FACTS .................................................. 3

    A.    The Parties .................................................................................... 3

    B.    Plaintiff Attempts to Obtain Assets from the Huobi Exchange ........... 4

    C.    Plaintiff Attempts to Disallow Orange Anthem's Claim Upon the Estate .............. 5

ARGUMENT ....................................................................................................... 6

   I.    THE COURT LACKS PERSONAL JURISDICTION OVER ABOUT CAPITAL ......... 6

    A.    Plaintiff Fails to Plead Any Jurisdictional Connection Between About Capital and the United States ......................................................... 7

    B.    The Complaint Cannot Establish Personal Jurisdiction with Group Pleading ....... 8

    C.    About Capital's Alleged Ownership Interest in a Purported Enterprise Does Not Plausibly Establish Personal Jurisdiction ......................................... 10

    D.    Exercising Personal Jurisdiction Over About Capital Would Offend Traditional Notions of Fair Play and Substantial Justice ....................................... 12

    E.    Jurisdictional Discovery Should Not Be Permitted ............................... 13

  II.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST ABOUT CAPITAL ....... 14

    A.    The Complaint Fails to State a Turnover Claim Against About Capital ............... 14

        1.   Plaintiff Cannot Demand That About Capital Turn Over Another Entity's Assets ................................................................. 14

        2.   Plaintiff Cannot Establish a Turnover Claim Using Group Pleading ............. 16

    B.    The Complaint Fails to State a Claim for Violation of the Automatic Stay Against About Capital ................................................................... 18

    C.    The Complaint Fails to State a Section 502(d) Claim Against About Capital ...... 18

  III.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST ORANGE ANTHEM ... 19

    A.    Orange Anthem Has Not Been Adjudged Liable for Possessing Estate Property . 20

    B.    No Other Party Has Been Adjudged Liable for Possessing Estate Property ........ 21

    C.    Plaintiff Cannot Assert a Section 502(d) Claim Based on Affiliation ................. 22

    D.    Plaintiff Cannot Assert a Section 502(d) Claim Based on Conclusory Assertions of Operational Involvement ............................................... 25

CONCLUSION .................................................................................................. 29

# TABLE OF AUTHORITIES

**Cases**

*3G Licensing, S.A. v. Lenovo Grp. Ltd.*,
  2019 U.S. Dist. LEXIS 143453 (D. Del. Aug. 22, 2019) ........................................................13

*Abeinsa Litig. Tr. v. Crown Fin., LLC (In re Abeinsa Holding, Inc.)*,
  645 B.R. 680 (Bankr. D. Del. 2022) ......................................................................................14

*Alcoa Inc. v. Alcan Inc.*,
  2007 U.S. Dist. LEXIS 51565 (D. Del. July 17, 2007) ....................................................10, 11

*Arpaio v. Dupre*,
  527 F. App'x 108 (3d Cir. 2013) .............................................................................................8

*Asahi Metal Indus. Co. v. Superior Ct. of Cal.*,
  480 U.S. 102 (1987) ................................................................................................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..........................................................................................................14, 28

*BCP Liquidating LLC v. Bridgeline Gas Mktg., LLC (In re Borden Chems. & Plastics
  Operating Ltd. P'shp)*,
  336 B.R. 214 (Bankr. D. Del. 2006) ...................................................................................26-27

*Baraka v. McGreevey*,
  481 F.3d 187 (3d Cir. 2007) ..................................................................................10, 14, 17, 26

*Berdeaux v. OneCoin Ltd.*,
  561 F. Supp. 3d 379 (S.D.N.Y. 2021) ......................................................................................9

*Beskrone v. OpenGate Capital Grp. (In re Pennysaver USA Publ'g, LLC)*,
  587 B.R. 445 (Bankr. D. Del. 2018) ............................................................................19, 20, 21

*BlackBerry Ltd. v. Nokia Corp.*,
  2018 U.S. Dist. LEXIS 44936 (D. Del. Mar. 20, 2018) ..........................................................27

*Burtch v. Zachem (In re TZEW Holdco LLC)*,
  2023 Bankr. LEXIS 2306 (Bankr. D. Del. Sep. 19, 2023) ......................................................17

*Celgene Corp. v. Mylan Pharms., Inc.*,
  17 F.4th 1111 (Fed. Cir. 2021) ..............................................................................16, 17, 27, 28

*Centauro Liquid Opportunities Master Fund, L.P. v. Bazzoni*,
  2016 U.S. Dist. LEXIS 136024 (S.D.N.Y. Sep. 30, 2016) ......................................................23

*Centauro Liquid Opportunities Master Fund, L.P. v. Bazzoni*,
  2019 U.S. Dist. LEXIS 160052 (S.D.N.Y. Sep. 18, 2019) .........................................24

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ..........................................................................................................6

*Ding Gu v. Zuguang Wang*,
  2025 U.S. Dist. LEXIS 36642 (D.N.J. Feb. 28, 2025) ...............................................8

*Dunn v. Barney*,
  2024 Bankr. LEXIS 379 (Bankr. D. Del. Feb. 16, 2024) .........................................7

*EGP Fuels Co. v. Port of Hous. Auth. (In re Enron Corp.)*,
  2006 Bankr. LEXIS 4658 (Bankr. S.D.N.Y. June 2, 2006) ...............................15, 28

*EisnerAmper LLP v. Morgan (In re SRC Liquidation LLC)*,
  581 B.R. 78 (D. Del. 2017) .........................................................................27-28

*Empower Brands LLC v. Tristar Prods., Inc.*,
  2024 U.S. Dist. LEXIS 225561 (D. Del. Dec. 12, 2024) .........................................23

*FBI Wind Down Inc. Liquidating Tr. v. All Am. Poly Corp. (In re FBI Wind Down, Inc.)*,
  581 B.R. 116 (Bankr. D. Del. 2018) ...............................................................15, 28

*Fid. Nat'l Info. Servs. v. Plano Encryption Techs., LLC*,
  2016 U.S. Dist. LEXIS 54653 (D. Del. Apr. 25, 2016) ...........................................6

*Genesis Int'l Holdings v. Northrop Grumman Corp.*,
  238 F. App'x 799 (3d Cir. 2007) ..................................................................6, 8

*Giuliano v. Mitsubishi Digit. Elecs. Am., Inc. (In re Ultimate Acq. P'rs, LP)*,
  2012 Bankr. LEXIS 1905 (Bankr. D. Del. May 1, 2012) .........................................20

*In re Aegean Marine Petroleum Network, Inc.*,
  529 F. Supp. 3d 111 (S.D.N.Y. 2021) ...........................................................9

*In re AgFeed USA, LLC*,
  2015 Bankr. LEXIS 1403 (Bankr. D. Del. Mar. 11, 2015) .................................20, 22

*In re Davis*,
  889 F.2d 658 (5th Cir. 1989) .........................................................................21

*In re Firestar Diamond, Inc.*,
  627 B.R. 804 (S.D.N.Y. 2021) ......................................................................26

*In re Lansdale Family Rests., Inc.*,
    977 F.2d 826 (3d Cir. 1992) ................................................................18

*In re Lids Corp.*,
    260 B.R. 680 (Bankr. D. Del. 2001) ......................................................21

*In re Odom Antennas, Inc.*,
    340 F.3d 705 (8th Cir. 2003) ...............................................................21

*In re Tyson*,
    433 B.R. 68 (S.D.N.Y. 2010) ..........................................................24, 25

*Int'l Shoe Co. v. Wash.*,
    326 U.S. 310 (1945) .............................................................................7

*Linus Holding Corp. v. Mark Line Indus., LLC*,
    376 F. Supp. 3d 417 (D.N.J. 2019) ......................................................10

*Liquidation Tr. of Sols. Liquidation LLC v. Stienes (In re Sols. Liquidation LLC)*,
    608 B.R. 384 (Bankr. D. Del. 2019) ....................................................27

*MBIA Ins. Co. v. Tilton (In re Zohar III)*,
    2021 Bankr. LEXIS 1947 (Bankr. D. Del. July 23, 2021) ...............17, 18

*Miller Yacht Sales, Inc. v. Smith*,
    384 F.3d 93 (3d Cir. 2004) ....................................................................6

*Monsanto Co. v. Syngenta Seeds, Inc.*,
    443 F. Supp. 2d 636 (D. Del. 2006) ....................................................11

*Nespresso USA, Inc. v. Ethical Coffee Co. SA*,
    263 F. Supp. 3d 498 (D. Del. 2017) ....................................................10

*Official Comm. of Unsecured Creditors v. Highland Capital Mgmt., L.P. (In re Moll Indus.)*,
    454 B.R. 574 (Bankr. D. Del. 2011) ....................................................17

*Plusgrade L.P. v. Endava Inc.*,
    2023 U.S. Dist. LEXIS 39114 (S.D.N.Y. Mar. 8, 2023) ..........................8

*Polk 33 Lending, LLC v. Schwartz*,
    555 F. Supp. 3d 38 (D. Del. 2021) ......................................................27

*Reg. Agents, Ltd. v. Reg. Agent, Inc.*,
    880 F. Supp. 2d 541 (D. Del. 2012) ....................................................13

*Regency Holdings (Cayman), Inc. v. Microcap Fund, Inc.*
*(In re Regency Holdings (Cayman), Inc.)*,
   216 B.R. 371 (Bankr. S.D.N.Y. 1998) ....................................................................16

*Sathianathan v. Pac. Exch., Inc.*,
   248 F. App'x 345 (3d Cir. 2007) ............................................................................12

*Sierra v. Trafigura Trading LLC*,
   2024 U.S. Dist. LEXIS 144600 (D. Del. Aug. 14, 2024) ........................................8

*Stanziale v. Brown-Minneapolis Tank ULC, LLC (In re BMT-NW Acq., LLC)*,
   582 B.R. 846 (Bankr. D. Del. 2018) ......................................................................20

*Stanziale v. Heico Holdings, Inc. (In re Conex Holdings, LLC)*,
   514 B.R. 405 (Bankr. D. Del. 2014) ..................................................................17, 18

*Texaco Ref. & Mktg., Inc. v. Del. River Basin Comm'n*,
   824 F. Supp. 500 (D. Del. 1993) ............................................................................15

*Toys "R" Us, Inc. v. Step Two, S.A.*,
   318 F.3d 446 (3d Cir. 2003) ...................................................................................12

*Truinject Corp. v. Nestlé Skin Health S.A.*,
   2020 U.S. Dist. LEXIS 45851 (D. Del. Mar. 17, 2020) ..........................................9

*Turner v. Prince George's Cty. Pub. Schs.*,
   694 F. App'x 64 (3d Cir. 2017) ................................................................................7

*UD Dissolution Liquidating Tr. v. Sphere 3D Corp. (In re UD Dissolution Corp.)*,
   629 B.R. 11 (Bankr. D. Del. 2021) .........................................................................16

*Walden v. Fiore*,
   571 U.S. 277 (2014) ...........................................................................................7, 12

*Welded Constr., L.P. v. The Williams Cos. (In re Welded Constr., L.P.)*,
   609 B.R. 101 (Bankr. D. Del. 2019) .......................................................................18

*Williams v. McGreevey (Touch Am. Holdings, Inc.)*,
   401 B.R. 107 (Bankr. D. Del. 2009) .......................................................................15

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980) ...........................................................................................8, 12

*Wortham v. KarstadtQuelle AG*,
   153 F. App'x 819 (3d Cir. 2005) .......................................................................12, 13

*Wright v. Lehigh Valley Hosp. & Health Network*,
    2011 U.S. Dist. LEXIS 68012 (E.D. Pa. June 23, 2011) ...........................................27

*You Map, Inc. v. Snap Inc.*,
    2021 U.S. Dist. LEXIS 139524 (D. Del. July 27, 2021) ....................................10, 13

*Zazzali v. AFA Fin. Gp., LLC (In re DBSI, Inc.)*,
    477 B.R. 504 (Bankr. D. Del. 2012) .......................................................................18

**Foreign Authorities**

*Indus. Bank Fin. Leasing Co. Ltd.*,
    [2020] BVIHC (COM) 2018/0032.............................................................................23

*Prest v. Petrodel Res. Ltd.*,
    [2013] UKSC 34 .............................................................................................23, 24, 25

*VTB Cap. plc v. Nutritek Int'l Corp.*,
    [2013] UKSC 5 ......................................................................................................25

**Statutes**

11 U.S.C. § 362 ...........................................................................................................18

11 U.S.C. § 502 ................................................................................................ *passim*

11 U.S.C. § 542 ................................................................................................ *passim*

**Rules**

Fed. R. Civ. P. 12(b) .............................................................................................1, 3, 6

Fed. R. Bankr. P. 7012 ...................................................................................................1

By and through their undersigned counsel, defendants About Capital Management (HK) Co., Ltd. ("About Capital") and Orange Anthem Ltd. ("Orange Anthem") hereby move this Court, pursuant to Rule 12(b)(2) and Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, to dismiss with prejudice the claims asserted against them in the Complaint ("Compl.," D.I. 1).[1]

## NATURE AND STAGE OF THE PROCEEDING

This adversary proceeding arises out of the bankruptcy of FTX Trading Ltd. ("FTX") and affiliated entities.  On November 9, 2024, debtors FTX and Alameda Research Ltd. ("Alameda") filed this adversary proceeding.  On February 11, 2025, the Court granted the motion of FTX Recovery Trust ("Plaintiff") to be substituted as the plaintiff in all adversary proceedings, including this proceeding.  Plenary D.I. 29554.

On April 7, 2025, this Court entered a Case Management Plan and Scheduling Order proposed by Plaintiff and defendants About Capital, Orange Anthem, and Digital Legend Hodlings Ltd.  D.I. 21.  Defendants Huobi Global Ltd., HTX Ltd., and Polo Digital Assets, Ltd. have not appeared in this action.  About Capital and Orange Anthem are contemporaneously filing a motion to stay discovery pending resolution of this motion to dismiss.

## SUMMARY OF ARGUMENT

This adversary proceeding arises out of a dispute over alleged estate assets that were held overseas when debtors FTX and Alameda collapsed in the wake of their massive fraud.  Defendants About Capital and Orange Anthem are foreign companies having nothing to do with those estate assets or the dispute over them.  They have been dragged into this litigation because they are

---

[1] Movants do not presently take a position on this Court's authority to enter a final order or judgment in this proceeding and will state any such position in their answer to the Complaint, pursuant to Local Rule 7012-1.

alleged to have vaguely defined ownership interests or other affiliations with different entities alleged to be involved in these disputes. The claims against them fail for several reasons.

*First*, Plaintiff's case against About Capital cannot escape the starting gate because it has not established a *prima facie* case that personal jurisdiction exists over About Capital, a Hong Kong company. Plaintiff has alleged *nothing* to clear that initial hurdle—no United States presence, business, or suit-related conduct. All the Complaint alleges is that About Capital acquired an unspecified ownership interest in Huobi Global, another foreign entity. Plaintiff's attempt to fold About Capital into blanket references to "Huobi" does not cure this defect. Personal jurisdiction must be established as to each defendant individually, not through group pleading— and Plaintiff spells out no jurisdictional ties concerning that purported "group" in any case.

*Second*, Plaintiff fails to allege any plausible claim against About Capital. Plaintiff asserts a turnover claim but does not allege that About Capital ever had possession, custody, or control of any recoverable estate property. Plaintiff cannot skirt that pleading obligation with allegations that About Capital has an ownership interest in other entities, nor with impermissible group pleading. The claim for violating the automatic stay fares no better, as the Complaint alleges no post-petition affirmative conduct by About Capital at all, let alone a willful violation. The Section 502(d) claim fails because it does not even assert that About Capital has any claim upon the estate to disallow.

*Third*, Plaintiff's single claim against Orange Anthem, for disallowance under Section 502(d), lacks any legal or factual basis. Plaintiff cannot assert a Section 502(d) claim without first obtaining a judgment on a turnover or preference claim. Here, not only does Plaintiff lack such a judgment, it has not even *asserted* a turnover or preference claim against Orange Anthem. Nor could it—Orange Anthem is not alleged to have done anything other than open a trading account on the FTX exchange and line up with other creditors after the exchange collapsed under the weight

of its fraud scheme.  Plaintiff's suggestion that Orange Anthem's separate corporate form should be disregarded, because it allegedly shares a common owner with a different entity involved in the turnover dispute, is unfounded in the law.  Section 502(d) cannot be weaponized against creditors based on their alleged affiliations with other entities.

## STATEMENT OF RELEVANT ALLEGED FACTS

### A.  The Parties

Debtor FTX Trading Ltd. ("FTX") is a foreign corporation registered in Antigua and Barbuda that operated a cryptocurrency trading exchange.  Compl. ¶ 18.  Debtor Alameda Research Ltd. ("Alameda") is a foreign company registered in the British Virgin Islands.  *Id.* ¶ 19.  Plaintiff FTX Recovery Trust has been substituted for FTX and Alameda as the plaintiff in this and other adversary proceedings.  Plenary D.I. 29554.

Defendant Huobi Global Ltd. ("Huobi Global") is a foreign company that was registered in the Seychelles until October 13, 2023.  Compl. ¶ 20.  A cryptocurrency exchange called Huobi allegedly "formerly operated under" Huobi Global at unspecified times.  *Id.*  Defendant HTX Ltd. ("HTX") is a Seychelles company that is alleged to currently operate the cryptocurrency exchange called Huobi, which has been rebranded to HTX.  *Id.* ¶ 23.

Defendant About Capital is a foreign company registered in Hong Kong.  *Id.* ¶ 21.  Plaintiff alleges upon information and belief, without supporting facts, that About Capital is controlled by an individual named Justin Sun.  *Id.*  In September 2022, About Capital allegedly acquired an unspecified ownership interest in Huobi Global and other unspecified entities.  *Id.*[2]

---

[2] While the well-pleaded allegations in the Complaint are assumed true for purposes of movants' Rule 12(b)(6) motion, movants do not concede or admit the facts alleged in the Complaint, including, without limitation, the allegations that About Capital acquired any ownership interest in Huobi Global and that Justin Sun exercises control over About Capital.

Defendant Digital Legend Hodlings Ltd. ("Digital Legend") is a foreign company registered in the British Virgin Islands that also allegedly acquired an unspecified ownership interest in Huobi Global and other unspecified entities. *Id.* ¶ 22.

Plaintiff alleges that, during unspecified "relevant times," the Huobi cryptocurrency exchange has been owned and operated by "one or more" of Huobi Global, About Capital, Digital Legend, and HTX. *Id.* ¶ 24. Without factual support, Plaintiff alleges upon information and belief that those entities "operate as a unified, integrated enterprise, including sharing management and operational teams." *Id.* The Complaint refers to these entities generically as "Huobi" and does not differentiate between them. *See id.*

Defendant Orange Anthem is a foreign company registered in the British Virgin Islands that is allegedly controlled and wholly owned by Justin Sun, who was its director when it was formed. *Id.* ¶¶ 26, 28, 67.

Defendant Polo Digital Assets, Ltd. ("Polo Digital") is a foreign company registered in the Seychelles that allegedly operates a cryptocurrency exchange branded Poloniex. *Id.* ¶ 27. Without factual support, Plaintiff alleges upon information and belief that Polo Digital is owned and controlled by Justin Sun. *Id.* ¶ 28.

### B. Plaintiff Attempts to Obtain Assets from the Huobi Exchange

The Complaint scarcely alleges any facts relating to About Capital, instead grouping it within generic references to "Huobi" throughout the Complaint. At some point prior to filing for bankruptcy, Alameda allegedly maintained a cryptocurrency trading account on the Huobi cryptocurrency exchange that was held in the name of an Alameda employee. *Id.* ¶ 30. The Complaint does not specify at which "Huobi" entity this account was opened. *See id.*

On November 11 and November 14, 2022, FTX and affiliated debtors, including Alameda, filed a petition in this Court under Chapter 11 of the Bankruptcy Code. *Id.* ¶ 2. On November 16,

2022, the CEO of the debtors sent a letter to nonparty Huobi Tech. Holdings, Ltd. requesting that the assets in Alameda's cryptocurrency account be secured and to coordinate the transfer of those assets to the debtors. *Id.* ¶ 31. After some discussions, communications between the debtors and Huobi Tech. Holdings, Ltd. ceased. *Id.*

From November 23, 2022 until at least August 16, 2023, the debtors communicated with unspecified persons at an unspecified entity labelled "Huobi" in the Complaint, requesting that the assets in Alameda's trading account be secured and transferred to the debtors. *Id.* ¶¶ 31-36. Those requests did not succeed, leading the debtors to file this action. *Id.* ¶ 36.

Other than alleging that About Capital and Digital Legend each acquired an unspecified ownership interest in Huobi Global and "related entities," *id.* ¶¶ 21-22, Plaintiff alleges no conduct concerning About Capital. Plaintiff refers only generically to "Huobi" and does not allege that About Capital had any involvement with Alameda's cryptocurrency trading account. Nor does Plaintiff allege that About Capital had any role in the communications concerning the account. *See id.* ¶¶ 30-36.

### C.  Plaintiff Attempts to Disallow Orange Anthem's Claim Upon the Estate

Orange Anthem opened a trading account on FTX's cryptocurrency exchange in or around April 2022. *Id.* ¶ 10. Plaintiff states that this account was "nominally" opened by Orange Anthem but was "maintained" and "operated" by Polo Digital. *Id.* ¶¶ 10, 67. In connection with opening its account, Orange Anthem allegedly submitted documentation stating that the source of funds for Orange Anthem's account came from accounts at the Binance cryptocurrency exchange, and that the e-mail addresses associated with those Binance accounts began with "binancehedgepolo" followed by a string of numbers. *Id.* ¶ 10. Plaintiff speculates that "hedgepolo" is a reference to the Poloniex cryptocurrency exchange. *Id.* The Poloniex cryptocurrency exchange is allegedly operated by Polo Digital, an entity allegedly under the control of Justin Sun. *Id.* ¶¶ 27-28.

After FTX filed its Chapter 11 petition, Orange Anthem submitted a customer proof of claim, Claim No. 57284, with respect to its FTX account, in the amount of approximately $12 million. *Id.* ¶¶ 10, 66. Plaintiff alleges no other facts concerning Orange Anthem and has asserted no claims against Orange Anthem other than its Section 502(d) claim. That claim seeks to disallow Orange Anthem's customer claim upon the estate, purportedly because Orange Anthem is "affiliated with" Polo Digital. *See id.* ¶¶ 67-68.

## ARGUMENT

### I.    THE COURT LACKS PERSONAL JURISDICTION OVER ABOUT CAPITAL

About Capital moves to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2). To defeat that motion, Plaintiff is "required to present a *prima facie* case that jurisdiction exist[s]" over About Capital. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 94 (3d Cir. 2004).

"[O]nce a motion to dismiss for lack of personal jurisdiction is made, a plaintiff cannot rely 'on the bare pleadings alone' in order to withstand the motion; it must respond 'with actual proofs, not mere allegations.'" *Fid. Nat'l Info. Servs. v. Plano Encryption Techs., LLC*, 2016 U.S. Dist. LEXIS 54653, at *17 (D. Del. Apr. 25, 2016) (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984)), *report and recommendation adopted*, 2016 U.S. Dist. LEXIS 202075 (D. Del. June 23, 2016). In the absence of such a showing, About Capital must be dismissed from the case. *See, e.g.*, *Genesis Int'l Holdings v. Northrop Grumman Corp.*, 238 F. App'x 799, 803 (3d Cir. 2007) (affirming dismissal where plaintiff "failed to make a *prima facie* showing that any of the jurisdictional defendants is subject to specific or general personal jurisdiction").

Establishing general jurisdiction over a foreign defendant requires pleading that its contacts with the forum are "so 'continuous and systematic' as to render them essentially at home in the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). Specific jurisdiction requires Plaintiff

6

to "establish[] with reasonable particularity sufficient contacts between the defendant and the forum." *Turner v. Prince George's Cty. Pub. Schs.*, 694 F. App'x 64, 66 (3d Cir. 2017). Here, that forum is the United States. *See Dunn v. Barney*, 2024 Bankr. LEXIS 379, at *17 (Bankr. D. Del. Feb. 16, 2024) (applying "national contacts" standard in adversary proceeding).

The alleged forum contacts must be sufficient "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). Moreover, "the defendant's suit-related conduct must create a substantial connection with the forum" that "arise[s] out of contacts that the 'defendant *himself*' creates with the forum." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The purpose of these strict requirements is to "protect the liberty of the nonresident defendant — not the convenience of plaintiffs or third parties." *Id.* (citation omitted).

Plaintiff utterly fails to meet its *prima facie* pleading obligation.

### A.  Plaintiff Fails to Plead Any Jurisdictional Connection Between About Capital and the United States

The Complaint is almost silent with respect to About Capital, and what little it says does not remotely establish this Court's jurisdiction under either a specific or general jurisdiction theory. About Capital is a Hong Kong company. Compl. ¶ 21. It is not alleged to have any offices, operations, or employees in the United States, to have engaged in any transactions or business with the United States, or to have otherwise availed itself of the United States in any way. All the Complaint says is that About Capital allegedly acquired an unspecified ownership interest in Huobi Global, an entity that was registered in Seychelles, and in other unspecified "related entities." *Id.* ¶¶ 20-21.

7

Those allegations do not plausibly demonstrate *any* contacts between About Capital and the United States, let alone sufficient contacts such that it "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Having failed to plead a *prima facie* case that personal jurisdiction exists, Plaintiff's claims against About Capital must be dismissed. *See Genesis*, 238 F. App'x at 803; *Sierra v. Trafigura Trading LLC*, 2024 U.S. Dist. LEXIS 144600, at *38 (D. Del. Aug. 14, 2024).

**B. The Complaint Cannot Establish Personal Jurisdiction with Group Pleading**

The Complaint attempts to elide over its lack of allegations concerning About Capital by referring to it and three other foreign defendants as "Huobi" and vaguely asserting that "Huobi" is operated by "one or more associated companies, including Defendants Huobi Global, About Capital, Digital Legend, and HTX." Compl. ¶ 24. Plaintiff cannot cure its failure to establish personal jurisdiction over About Capital by grouping it together with other entities, whether in the Complaint or in any response Plaintiff offers in opposition to this motion.

"'Each defendant's contacts with the forum State must be assessed individually.'" *Arpaio v. Dupre*, 527 F. App'x 108, 114 (3d Cir. 2013) (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 n.13 (1984)). Accordingly, "with regard to personal jurisdiction, Plaintiff must show, and the District Court must rule, specifically as to [each defendant]." *Id.* at 114 (remanding case that "did not assess whether it had jurisdiction over each Defendant separately").

For that reason, courts frequently reject attempts to plead jurisdiction by muddling defendants together. *See, e.g.*, *Ding Gu v. Zuguang Wang*, 2025 U.S. Dist. LEXIS 36642, at *18 n.13 (D.N.J. Feb. 28, 2025) (rejecting "group-pled" jurisdictional allegations and noting that "[t]his defect alone, therefore, warrants dismissal for failure to properly allege personal jurisdiction over each defendant"); *Plusgrade L.P. v. Endava Inc.*, 2023 U.S. Dist. LEXIS 39114, at *12 (S.D.N.Y. Mar. 8, 2023) (dismissing claims because "group pleading renders futile any attempt to

address the issue of personal jurisdiction"); *In re Aegean Marine Petroleum Network, Inc.*, 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021) ("To allege personal jurisdiction over a defendant, group pleading is not permitted.  Instead, the plaintiff is required to establish personal jurisdiction separately over each defendant."); *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 397 (S.D.N.Y. 2021) ("This tactic is plainly impermissible to satisfy Plaintiffs' burden to establish a prima facie case of personal jurisdiction against *each* Defendant as to *each* claim asserted.").

 *Truinject Corp. v. Nestlé Skin Health S.A.* is instructive.  2020 U.S. Dist. LEXIS 45851, at *6 (D. Del. Mar. 17, 2020).  There, the court granted a foreign entity's motion to dismiss for lack of personal jurisdiction.  The court observed that the complaint "attempt[ed] to create the impression that [the foreign entity's] role was significant by collectively defining all of the Corporate Defendants as 'Nestlé Skin Health,'" and noted that "by frequently refer[ring] to 'Defendants' without specifying a particular Defendant," it was "extremely difficult . . . to discern from the Amended Complaint which Defendant performed the alleged acts."  *Id.*  The Court dismissed the foreign entity and denied a request for jurisdictional discovery, concluding that "group pleading has resulted in a complaint that fails to meet its burden to allege sufficient facts to establish that this Court may properly exercise personal jurisdiction."  *Id.* at *6-7.

 The same result should follow here.  Plaintiff has done nothing to establish that About Capital was involved in any conduct relevant to this case, let alone in jurisdictional conduct connecting it to the United States.  As in *Truinject*, Plaintiff has obfuscated that lack of involvement through blanket references to a collective "Huobi" moniker.  *See, e.g.*, Compl. ¶¶ 32-36. "[Plaintiff's] approach [has] resulted in a deficient complaint" that must be dismissed.  *See Truinject*, 2020 U.S. Dist. LEXIS 45851, at *7 n.4.

### C. About Capital's Alleged Ownership Interest in a Purported Enterprise Does Not Plausibly Establish Personal Jurisdiction

Plaintiff's allegation that About Capital purchased an unspecified ownership interest in Huobi Global and other unspecified entities, Compl. ¶ 21, does not cure the Complaint's jurisdictional deficiencies. Personal jurisdiction does not arise out of one entity's ownership of another, let alone partial ownership. *See, e.g.*, *You Map, Inc. v. Snap Inc.*, 2021 U.S. Dist. LEXIS 139524, at *13 n.7 (D. Del. July 27, 2021) ("[M]erely owning a Delaware entity that distributes product in the United States is insufficient to support jurisdiction over a nonresident defendant."); *Alcoa Inc. v. Alcan Inc.*, 2007 U.S. Dist. LEXIS 51565, at *9 (D. Del. July 17, 2007) (finding no jurisdiction over out-of-state entity that owned at least 33 Delaware subsidiaries).

Nor can Plaintiff get anywhere by leaning on the conclusory, information-and-belief assertion that About Capital is part of a "unified, integrated enterprise, including sharing management and operational teams." Compl. ¶ 24. That conclusion lacks any particularized facts to support it and should not be credited. *See Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (unsupported conclusions and legal conclusions need not be accepted). Indeed, such conclusions are routinely rejected even where far more is alleged than what Plaintiff offers here.

For instance, the court in *Nespresso USA* considered allegations that a foreign entity "controlled" a domestic subsidiary because it "dictate[d] the policies and strategies" of a domestic subsidiary, had two identified individuals who shared leadership roles at the domestic subsidiaries, and presented their financials as "one indistinguishable whole." *Nespresso USA, Inc. v. Ethical Coffee Co. SA*, 263 F. Supp. 3d 498, 505 (D. Del. 2017). The court rejected those allegations as insufficient to establish a *prima facie* case that the domestic subsidiary was an agent of the foreign parent company and dismissed the foreign parent for lack of personal jurisdiction. *Id. See also Linus Holding Corp. v. Mark Line Indus., LLC*, 376 F. Supp. 3d 417, 427 (D.N.J. 2019) (allegations

10

of "interrelated" entities with "executive overlap" insufficient for personal jurisdiction based on veil-piercing); *Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F. Supp. 2d 636, 644 (D. Del. 2006) (overlapping officers and directors, transfers of employees, and involvement in formulating and approving strategy not sufficient to establish personal jurisdiction).

Similarly, the court in *Alcoa* held that it lacked jurisdiction over an out-of-state entity that owned no fewer than 33 Delaware subsidiaries, consolidated its and its subsidiaries' financials as "one indistinguishable whole," and "present[ed] a unified picture of [the entity] and its several subsidiaries." *Alcoa*, 2007 U.S. Dist. LEXIS 51565, at *9. The court dismissed the out-of-state parent, notwithstanding the plaintiff's contention that "all of the facts regarding the relationships between these corporations are uniquely within [the entity's] knowledge." *Id.* The court flatly rejected the argument that the out-of-state defendant's "failure to 'illuminate' the relationships between itself [and its subsidiaries] somehow creates a basis for this court to deny [the entity's] motion," concluding that "it is not defendants' burden to make an affirmative showing that there is no basis for personal jurisdiction." *Id.* at *11-12.

These principles apply here with even greater force. Here, Plaintiff has alleged *no* particularized facts showing that About Capital is part of an "integrated enterprise." With even less factual support than what was considered—and rejected—in *Nespresso* and *Alcan*, Plaintiff's conclusory assertion of an "integrated enterprise" should be rejected out of hand.

Even if they could be credited, these allegations would land Plaintiff no closer to establishing jurisdictional ties to the United States in any event. Huobi Global and the other companies that Plaintiff lumps together with About Capital are also foreign entities without alleged connections to the United States. *See* Compl. ¶¶ 20, 22-24. The dispute consists of an unspecified,

foreign "Huobi" entity's alleged withholding of assets purportedly belonging to Alameda, which is another foreign entity. *Id.* ¶¶ 19, 30-35. None of that conduct relates to the United States.

Plaintiff may point to alleged outreach from the United States Attorney's Office for the Southern District of New York to unspecified "Huobi" entities in connection with this dispute. *Id.* ¶¶ 33-35. Those communications cannot form the basis for personal jurisdiction, which must be based on "contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285. *See, e.g.*, *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 455 (3d Cir. 2003) (holding that "telephone communications or mail sent by a defendant [do] not trigger personal jurisdiction if they 'do not show purposeful availment'"); *Sathianathan v. Pac. Exch., Inc.*, 248 F. App'x 345, 347 (3d Cir. 2007) (affirming dismissal where "[t]he only contacts the individual defendants made with the forum state in this case were a handful of telephone calls, emails, and letters").

### D. Exercising Personal Jurisdiction Over About Capital Would Offend Traditional Notions of Fair Play and Substantial Justice

Even if Plaintiff had established some suit-related connection between About Capital and the United States, asserting personal jurisdiction would only be permitted if doing so were fair and reasonable under the circumstances, such that "maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *World-Wide Volkswagen*, 444 U.S. at 292 (quoting *Int'l Shoe*, 326 U.S. at 316). "A weak minimum contacts showing requires greater emphasis on reasonableness." *Wortham v. KarstadtQuelle AG*, 153 F. App'x 819, 825 (3d Cir. 2005).

In considering whether asserting personal jurisdiction would be reasonable, courts look to various factors but consider "the burden on the defendant" to be "a primary concern." *World-Wide Volkswagen*, 444 U.S. at 292. Where, as here, the defendant is a foreign entity, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant

weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *See Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 114 (1987).

Exercising personal jurisdiction over About Capital would not be reasonable under the circumstances. About Capital is an entity based in Hong Kong, Compl. ¶ 21, and the dispute itself concerns one foreign entity's attempt to obtain foreign-owned digital assets from another foreign entity. *See id.* ¶¶ 19, 30, 36. About Capital's presence in the suit stems only from the allegation that it acquired an ownership interest in another foreign entity two months before FTX collapsed. *Id.* ¶ 21. "Forcing a wholly foreign company with no day-to-day operations to litigate in [this forum] is no small burden." *Wortham*, 153 F. App'x at 825. It would not be fair or reasonable, nor consistent with due process, to force About Capital to take on that burden here.

### E.  Jurisdictional Discovery Should Not Be Permitted

Plaintiff may claim that it should be entitled to jurisdictional discovery to try to salvage its deficient Complaint. Not so. "Jurisdictional discovery is only appropriate when the plaintiff presents 'factual allegations that suggest with reasonable particularity the possible existence' of facts supporting a finding of personal jurisdiction." *You Map*, 2021 U.S. Dist. LEXIS 139524, at *15 (quoting *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010)). Plaintiff presents nothing of the sort. "[Granting] jurisdictional discovery under such circumstances would be to allow plaintiff to 'undertake a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery.'" *Reg. Agents, Ltd. v. Reg. Agent, Inc.*, 880 F. Supp. 2d 541, 548 (D. Del. 2012) (quoting *Eurofins Pharma*, 623 F.3d at 157). *See also 3G Licensing, S.A. v. Lenovo Grp. Ltd.*, 2019 U.S. Dist. LEXIS 143453, at *24 (D. Del. Aug. 22, 2019) ("[T]he Third Circuit has repeatedly indicated that if a plaintiff fails to make out a *prima facie* showing, a grant of jurisdictional discovery would not be appropriate.")

## II.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST ABOUT CAPITAL

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In considering the allegations, the Court is "not compelled to accept 'unsupported conclusions and unwarranted inferences.'" *Baraka*, 481 F.3d at 195 (quoting *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)).  Nor is it required to credit "'a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### A.  The Complaint Fails to State a Turnover Claim Against About Capital

Plaintiff asserts a turnover claim under Section 542 of the Bankruptcy Code against "Huobi," thereby lumping About Capital together with three other entities.  Compl. ¶¶ 47-49.  That claim fails as to About Capital because the Complaint does not allege that About Capital has possession, custody, or control of any estate assets—it has nothing to turn over.  Plaintiff cannot gloss over that deficiency through group pleading.

#### 1.  Plaintiff Cannot Demand That About Capital Turn Over Another Entity's Assets

To state a claim for turnover, "[t]he party seeking turnover must establish that: (1) the property is in the possession, custody, or control of another entity, (2) the property can be used in accordance with the provisions of section 363 and (3) the property has more than inconsequential value to the debtor's estate." *Abeinsa Litig. Tr. v. Crown Fin., LLC (In re Abeinsa Holding., Inc.)*, 645 B.R. 680, 690 (Bankr. D. Del. 2022).  *See* 11 U.S.C. § 542(a) (subject of turnover claim must have "possession, custody, or control" of estate property).

The thrust of Plaintiff's turnover claim appears to be that Alameda maintained a cryptocurrency trading account on the Huobi cryptocurrency exchange, Compl. ¶ 30, and that an

unspecified "Huobi" entity now possesses the funds in that account and must turn them over. *Id.* ¶¶ 47-49.  But the Complaint does not allege that *About Capital* has, or ever had, possession, custody, or control of that account or any other property of the estate.  It does not suggest that About Capital ever had any involvement with or connection to the Alameda account.  Indeed, the Complaint mentions almost nothing concerning About Capital, except that it allegedly acquired an unspecified percentage of Huobi Global and "related entities" in September 2022.  *Id.* ¶¶ 21-22.

Regardless of which unspecified entity allegedly holds the account in question, or whether About Capital even has an ownership interest in that entity, Plaintiff cannot equate an ownership interest in an entity with possession, custody, or control of the *assets* of that entity.  "It is well recognized that 'a corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary.'" *Williams v. McGreevey (Touch Am. Holdings, Inc.)*, 401 B.R. 107, 126 (Bankr. D. Del. 2009) (quoting *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003)).  *See also Texaco Ref. & Mktg., Inc. v. Del. River Basin Comm'n*, 824 F. Supp. 500, 506 (D. Del. 1993) (explaining "settled principle[] . . . that the corporation, not the stockholders of the corporation, owns the property, rights, and privileges of the corporation"), *aff'd*, 30 F.3d 1488 (3d Cir. 1994).

It follows that "a parent who only maintains ownership or corporate governance control over a subsidiary, but no legal title to a subsidiary's assets, *does not have control of the subsidiary's assets*." *FBI Wind Down Inc. Liquidating Tr. v. All Am. Poly Corp. (In re FBI Wind Down, Inc.)*, 581 B.R. 116, 131 (Bankr. D. Del. 2018) (emphasis added).  *See EGP Fuels Co. v. Port of Hous. Auth. (In re Enron Corp.)*, 2006 Bankr. LEXIS 4658, at *18 (Bankr. S.D.N.Y. June 2, 2006) ("[A] parent's control, through an ownership structure or other corporate governance mechanism, of a subsidiary entity does not constitute control of the subsidiary's assets, such as a bank account,

where there is no legal title to a subject asset held by the parent."); *Regency Holdings (Cayman), Inc. v. Microcap Fund, Inc. (In re Regency Holdings (Cayman), Inc.)*, 216 B.R. 371, 375-77 (Bankr. S.D.N.Y. 1998) (rejecting argument that sole shareholder's ability to amend subsidiary's bylaws and remove directors gave it control of subsidiary's assets).

That principle squares with the plain text of Section 542(d), which requires possession, custody, or control of estate *property*, not ownership or control of another entity that possesses such property.  *See* 11 U.S.C. § 542(a).  For example, in *Sphere 3D Corp.*, the Court considered whether a turnover claim could be asserted against the directors of an entity to force them to turn over certain assets possessed by that entity.  *See UD Dissolution Liquidating Tr. v. Sphere 3D Corp. (In re UD Dissolution Corp.)*, 629 B.R. 11, 38 (Bankr. D. Del. 2021).  The Court considered the plaintiff's argument that a claim for "turnover against the [entity's] Directors [was] appropriate because the Directors exercised control over [the entity that possessed the property]," but dismissed the claim because "there [was] no allegation that the Directors possess property of the estate."  *Id.*  Thus, Plaintiff cannot use Section 542 to command About Capital to turn over the assets of another entity.

Even if, contrary to the terms of the statute and legal authority, Plaintiff could translate control of a subsidiary into control of the subsidiary's assets for purposes of Section 542, it still gets nowhere.  Plaintiff has not alleged that About Capital controls any entities through its unspecified ownership stakes, let alone explain how.  *See Celgene Corp. v. Mylan Pharms., Inc.*, 17 F.4th 1111, 1129 (Fed. Cir. 2021) (rejecting conclusory "control" allegations).

### 2.   Plaintiff Cannot Establish a Turnover Claim Using Group Pleading

To the extent Plaintiff seeks to lean on generic references to "Huobi" to implicate About Capital in any alleged conduct, that group pleading cannot be used to sustain its turnover claim. One could reasonably assume that the references to "Huobi" littered throughout the Complaint

concern the entities directly involved with the cryptocurrency exchange, rather than About Capital, an entity that allegedly purchased an ownership interest in one of those entities.  But the Complaint makes it impossible to decipher who did what, because it impermissibly "lumps all of the [Huobi] Defendants together . . . without supplying specific facts as to each defendant's wrongdoing." *Stanziale v. Heico Holdings, Inc. (In re Conex Holdings, LLC)*, 514 B.R. 405, 414 (Bankr. D. Del. 2014) (dismissing claims).

That rampant group pleading dooms Plaintiff's claim on the merits.  *See MBIA Ins. Co. v. Tilton (In re Zohar III)*, 2021 Bankr. LEXIS 1947, at *31 (Bankr. D. Del. July 23, 2021) (dismissing claim) ("Because of this group pleading, the Court is left guessing which Defendant did what particular act."); *Burtch v. Zachem (In re TZEW Holdco LLC)*, 2023 Bankr. LEXIS 2306, at *8 (Bankr. D. Del. Sep. 19, 2023) (dismissing claims) ("[G]roup pleading . . . forces both the Defendants and the Court to guess who did what to whom and when.  Such speculation is anathema to contemporary pleading standards.") (cleaned up).

Plaintiff is not saved by its conclusory allegation that About Capital and the other entities that it calls "Huobi" all "operate as a unified, integrated enterprise, including sharing management and operational teams."  Compl. ¶ 24.  That information-and-belief assertion is a legal conclusion masquerading as a factual allegation, and it should not be credited.  *See Baraka*, 481 F.3d at 195; *Celgene*, 17 F.4th at 1129.  Such allegations are not remotely sufficient to justify collapsing four distinct legal entities, as Plaintiff seeks to do.  *See, e.g.*, *Official Comm. of Unsecured Creditors v. Highland Capital Mgmt., L.P. (In re Moll Indus.)*, 454 B.R. 574, 590-91 (Bankr. D. Del. 2011) (finding allegations of shared officers and directors insufficient to establish "single enterprise").

**B.  The Complaint Fails to State a Claim for Violation of the Automatic Stay Against About Capital**

Once again tossing About Capital into a group of entities labeled "Huobi," Plaintiff asserts a claim against About Capital for violation of the automatic stay.  Compl. ¶¶ 69-72.  Such a claim requires a post-petition act that is "affirmative rather than merely passive.  The Plaintiff 'must show that Defendants engaged in conduct which was an affirmative post-petition act manifesting either an exercise of control over property of the estate, or collecting, assessing or recovering such property in order to demonstrate a stay violation.'"  *Welded Constr., L.P. v. The Williams Cos. (In re Welded Constr., L.P.)*, 609 B.R. 101, 127 (Bankr. D. Del. 2019) (quoting *Pardo v. Nylcare Health Plans, Inc. (In re APF Co.)*, 274 B.R. 408, 416 (Bankr. D. Del. 2001)) (cleaned up).

Plaintiff comes up short here too.  It has not alleged that About Capital engaged in *any* post-petition act.  By referring generically to actions by "Huobi," Plaintiff "fail[s] to plead with sufficient particularity the wrongful conduct [About Capital] took."  *MBIA Ins. Co.*, 2021 Bankr. LEXIS 1947, at *30.  *See also Heico Holdings*, 514 B.R. at 414.  Having identified no post-petition conduct by About Capital at all, it goes without saying that Plaintiff fails to allege any affirmative act violating the automatic stay, let alone a "willful violation."  *See* 11 U.S.C. § 362(k)(1); *In re Lansdale Family Rests., Inc.*, 977 F.2d 826, 829 (3d Cir. 1992).

**C.  The Complaint Fails to State a Section 502(d) Claim Against About Capital**

Exemplifying the group pleading that infects the entire Complaint, Plaintiff asserts a disallowance claim against About Capital (and all other defendants) under Section 502(d), but it does not identify any claim by About Capital that it aims to disallow.  Compl. ¶¶ 65-68.  Without a claim to disallow, no action can arise under Section 502(d).  *See Zazzali v. AFA Fin. Gp., LLC (In re DBSI, Inc.)*, 477 B.R. 504, 517 (Bankr. D. Del. 2012) (dismissing Section 502(d) claim where the "[t]rustee ha[d] not even alleged that Movants filed any proofs of claim").  Nor has

Plaintiff "first obtain[ed] a judicial determination" that About Capital is liable to return property

to the estate, as it must do before asserting a Section 502(d) claim. *Beskrone v. OpenGate Capital*

*Grp. (In re Pennysaver USA Publ'g, LLC)*, 587 B.R. 445, 468 (Bankr. D. Del. 2018); *see infra*

Point III.A. The Section 502(d) claim must be dismissed.

## III.   THE COMPLAINT FAILS TO STATE A CLAIM AGAINST ORANGE ANTHEM

Plaintiff brings only a single claim against Orange Anthem—a claim for disallowance

under Section 502(d). Compl. ¶¶ 65-68. Plaintiff has no legal or factual basis for asserting such a

claim, which is called for only in a specific set of circumstances not found here:

> . . . [T]he court shall disallow any claim of *any entity from which property is recoverable* under section 542, 543, 550, or 553 of this title *or that is a transferee of a transfer avoidable* under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

11 U.S.C. § 502(d) (emphases added).

The statute is unambiguous. If an entity is adjudged to have recoverable property or be the

transferee of an avoidable transfer pursuant to specifically enumerated provisions of the

Bankruptcy Code, that entity's claims shall be disallowed until the entity has returned the property

for which it is liable to the estate. No other entity's claims may be disallowed.

Plaintiff seeks to extend the ambit of Section 502(d) far beyond what the statute permits.

It seeks to disallow the otherwise undisputed claim of Orange Anthem without obtaining a turnover

judgment or even filing a turnover claim against Orange Anthem. And it seeks to do so, not

because there is any estate property to recover from Orange Anthem, but because Orange Anthem

is alleged to share a common owner with another entity, Polo Digital, which allegedly does possess

such property. This overextension of Section 502(d) fails for several reasons.

## A.  Orange Anthem Has Not Been Adjudged Liable for Possessing Estate Property

The claim fails at the threshold.  A wealth of case law makes clear that Plaintiff cannot bring a claim against Orange Anthem under Section 502(d), because Orange Anthem has not been found liable for a turnover, preference, or avoidance claim under any of the provisions enumerated by Section 502(d).  Indeed, no such claim has even been *asserted* against Orange Anthem.

*OpenGate Capital* and numerous other decisions have set forth the prerequisites for asserting a disallowance claim under Section 502(d):

> Disallowing a claim under Section 502(d) requires a judicial determination that a claimant is liable. A debtor wishing to avail itself of this section's benefits must ***first obtain a judicial determination*** on the complaint.  Where the debtor "has merely commenced an adversary proceeding," the Court will hold that Section 502(d) is inapplicable.  The Trustee has not obtained a judicial determination on the preference complaint—a prerequisite to a claim under Section 502(d).  Therefore, ***The Trustee fails to adequately plead a claim under Section 502(d).***

*OpenGate Capital*, 587 B.R. at 468 (emphasis added and internal citations omitted).

Applying that reasoning, the court in *OpenGate Capital* dismissed a Section 502(d) disallowance claim where the trustee had asserted a preference claim against the defendant but had not yet obtained a judgment.  *Id.*  Other cases have reached similar results.  *See, e.g.*, *Stanziale v. Brown-Minneapolis Tank ULC, LLC (In re BMT-NW Acq., LLC)*, 582 B.R. 846, 866-67 (Bankr. D. Del. 2018) (dismissing Section 502(d) claim where no judicial determination had been reached on preference claim); *Giuliano v. Mitsubishi Digit. Elecs. Am., Inc. (In re Ultimate Acq. P'rs, LP)*, 2012 Bankr. LEXIS 1905, at *9 (Bankr. D. Del. May 1, 2012) (same); *In re AgFeed USA, LLC*, 2015 Bankr. LEXIS 1403, at *11 (Bankr. D. Del. Mar. 11, 2015) (overruling Section 502(d) objection to paying claim because "the mere allegation of recovery under Chapter 5 of the

Bankruptcy Code is insufficient to disallow the [claim]"); *In re Lids Corp.*, 260 B.R. 680, 684 (Bankr. D. Del. 2001) (same).[3]

As these cases explain, a debtor cannot assert a claim under Section 502(d) merely because it has filed a preference or turnover action against the targeted claimant. And here, Plaintiff has not even done that—it has not asserted *any* other claim against Orange Anthem. Nor could it. The threadbare allegations against Orange Anthem would not support a claim under any of the provisions enumerated by Section 502(d), because Orange Anthem is not alleged to have any recoverable estate property or to have received any avoidable transfers. Without an adjudicated or even *alleged* turnover or preference claim against Orange Anthem, the Section 502(d) claim fails.

### B.  No Other Party Has Been Adjudged Liable for Possessing Estate Property

Plaintiff appears to suggest that Orange Anthem's claim can be disallowed under Section 502(d) because Orange Anthem's alleged owner and director also allegedly controls Polo Digital, which is the subject of a Section 542 turnover claim. Compl. ¶¶ 26, 28, 50-52. That argument fails for the same reasons above. Before asserting a Section 502(d) claim, Plaintiff must "first obtain a judicial determination" on the underlying turnover or preference claim. *See OpenGate Capital*, 587 B.R. at 468. It has not done so. It has "merely commenced an adversary proceeding," *id.*, against Polo Digital, an entity that has not even appeared in this case. That plainly will not do. *See supra* Point III.A.

Importantly, Section 502(d) does not empower Plaintiff to delay the resolution and payment of Orange Anthem's legitimate claim upon the estate while Plaintiff's dispute with Polo Digital

---

[3] Other circuits have reached similar conclusions. *See In re Odom Antennas, Inc.*, 340 F.3d 705, 708 (8th Cir. 2003) ("[S]ection 502(d) should be used to disallow a claim after the entity is first adjudged liable; otherwise, the court could not determine if the exception applies."); *In re Davis*, 889 F.2d 658, 662 (5th Cir. 1989) ("[Section 502(d)] is designed to be triggered after a creditor has been afforded a reasonable time in which to turn over amounts adjudicated to belong to the bankruptcy estate.").

unfolds. Attempting to do so is a misuse of the provision. It may be the case that Plaintiff "would rather hold funds reserved for the [claim] in escrow pending determination of the adversary proceeding" against Polo Digital, but that desire "should not prejudice [Orange Anthem's] right to full payment on an otherwise valid proof of claim." *In re AgFeed*, 2015 Bankr. LEXIS 1403, at *12 (overruling Section 502(d) objection and directing immediate payment of disputed claim).

### C. Plaintiff Cannot Assert a Section 502(d) Claim Based on Affiliation

Even if, counterfactually, Plaintiff now had a judgment against Polo Digital, its Section 502(d) claim against Orange Anthem would still fail as a matter of law. Section 502(d) applies only to persons liable for returning property to the estate, not to loosely alleged affiliates.

The only claims that may be disallowed under Section 502(d) are those made by an "entity from which property is recoverable . . . or that is a transferee of a transfer avoidable" under the specific provisions enumerated in Section 502(d). *See* 11 U.S.C. § 502(d). The Complaint does not suggest that Orange Anthem falls into those clearly delineated categories, nor that it had anything to do with the turnover dispute between Alameda and Polo Digital, nor that it ever came into contact with any estate property. All that the Complaint alleges is that:

- Orange Anthem opened an FTX account in April 2022 and submitted a proof of claim for its account after FTX declared bankruptcy in November 2022. Compl. ¶¶ 2, 10.

- When Orange Anthem was formed, its sole owner and director was Justin Sun, who is alleged to control Polo Digital, the operator of the Poloniex exchange. *Id.* ¶¶ 10, 27-28.

- Orange Anthem is part of TRON, a blockchain network founded by Justin Sun. *Id.* ¶¶ 23, 26.

- Materials submitted with Orange Anthem's FTX account application stated that the funds for its FTX account would come from accounts at a cryptocurrency exchange called Binance that used email addresses purportedly referencing the Binance and Poloniex exchanges. *Id.* ¶ 67.

- Polo Digital allegedly "operates an account on FTX.com through Orange Anthem." *Id.* ¶ 67.

Those allegations do not plausibly give rise to any claim against Orange Anthem under the plain terms of Section 502(d) or the prerequisite turnover provisions enumerated therein.  Instead, Plaintiff attempts to bootstrap Polo Digital's (hypothetical) liability for a turnover claim into a disallowance claim against Orange Anthem, because they are allegedly owned by the same individual, Justin Sun.  Compl. ¶¶ 10, 28, 68.

Extending Section 502(d) as Plaintiff appears to suggest would have the effect of disregarding separate corporate entities, incorporated in different countries and involved in different alleged conduct, on the basis that they are horizontally affiliated through a common alleged owner.  That drastic outcome has no support in the law, particularly on the sparse facts alleged.  *See Empower Brands LLC v. Tristar Prods., Inc.*, 2024 U.S. Dist. LEXIS 225561, at *89 (D. Del. Dec. 12, 2024) (noting that "[h]orizontal veil piercing has 'not been adopted in Delaware'" and that "[p]ersuading a Delaware Court to disregard the corporate entity is a difficult task").

Disregarding Orange Anthem's separate corporate status would not be permitted under the law of the British Virgin Islands, where Orange Anthem is incorporated, nor under the English common law principles that guide its courts.  *See Indus. Bank Fin. Leasing Co. Ltd.*, [2020] BVIHC (COM) 2018/0032, at 4-5 ¶ 10 (noting that "[i]t is trite law that the assets of a company are not the assets of even a 100 per cent shareholder" and that the veil-piercing exception "will now-a-days be vanishingly rare in the light of *Prest v. Petrodel Resources Ltd.*") (attached as Ex. A); *Centauro Liquid Opportunities Master Fund, L.P. v. Bazzoni*, 2016 U.S. Dist. LEXIS 136024, at *12 (S.D.N.Y. Sep. 30, 2016) (concluding that "law governing alter ego liability in the BVI is English law" and assessing English law principles).

Under English law, "[s]ubject to very limited exceptions, most of which are statutory, a company is a legal entity distinct from its shareholders. . . . Their separate personality and property

are the basis on which third parties are entitled to deal with them and commonly do deal with them." *Prest v. Petrodel Res. Ltd.*, [2013] UKSC 34, at 5 ¶ 8 (Ex. B). Accordingly, the corporate form may be disregarded under English law only in the rare instance where "a person is under an *existing legal obligation or liability* or subject to an existing legal restriction which he *deliberately evades* or whose enforcement he deliberately frustrates by interposing a company *under his control*." *Prest*, [2013] UKSC 34, at 18 ¶ 35 (emphases added) (Ex. B). Such "opportunities for veil-piercing are extremely limited" under English law and require that the "defendant had already incurred some liability to the plaintiff at the time he interposed the corporate structure." *See In re Tyson*, 433 B.R. 68, 86, 88 (S.D.N.Y. 2010) (analyzing English law cases and principles).

The allegations here bear no resemblance to what the law requires. Orange Anthem is not alleged to be controlled by Polo Digital. It is allegedly affiliated with Polo Digital only by virtue of having a common owner and controller—a horizontal relationship not contemplated under *Prest*. Moreover, nothing in the Complaint suggests that Orange Anthem was interposed to "deliberately evade[]" Polo Digital's obligations. *Prest*, [2013] UKSC 34, at 18 ¶ 35 (Ex. B). To the contrary, Orange Anthem opened its FTX trading account in April 2022, long before FTX collapsed and long before Polo Digital could have had any obligations to turn over assets to the estate. Compl. ¶ 67. Those facts do not remotely support disregarding Orange Anthem's corporate form and imposing responsibility on it for an alleged turnover dispute with Polo Digital. *See, e.g.*, *Centauro Liquid Opportunities Master Fund, L.P. v. Bazzoni*, 2019 U.S. Dist. LEXIS 160052, at *22-24 (S.D.N.Y. Sep. 18, 2019) (rejecting veil-piercing theory under English law where there was no existing obligation that was "deliberately frustrated").

Disallowing Orange Anthem's claim due to a trading account dispute between Polo Digital and Alameda would be a perverse outcome. It would result in Orange Anthem "being held liable

as if [it] had been a co-contracting party" in a relationship that it had nothing to do with, and that "neither [Orange Anthem] nor any of the contracting parties" intended Orange Anthem to be a part of. *See VTB Cap. plc v. Nutritek Int'l Corp.*, [2013] UKSC 5, at 42 ¶ 132 (rejecting veil-piercing claim) (Ex. C). Plaintiff cannot demand a restructuring of the parties' relationships simply because it was Orange Anthem that created a trading account with FTX, while only Polo Digital allegedly incurred any liability to Alameda. "It is not an abuse to cause a legal liability to be incurred by the company in the first place. It is not an abuse to rely upon the fact (if it is a fact) that a liability is not the controller's because it is the company's. On the contrary, that is what incorporation is all about." *Prest*, [2013] UKSC 34, at 18 ¶ 34 (Ex. B).

Plaintiff "[could have] avoid[ed] the harsh effects of [this] principle by the exercise of due diligence, for instance, by contracting around a potential problem." *In re Tyson*, 433 B.R. at 90. As the seminal English case on the matter stated, "no one need trust a limited liability company unless he so please." *In re Tyson*, 433 B.R. at 90 (quoting *Salomon v. A. Salomon & Co., Ltd.*, [1897] A.C. 22 (H.L.)). Long before its insolvency, FTX chose to allow Orange Anthem to open a trading account on the FTX exchange. Separately, Alameda chose to open a trading account on Polo Digital's Poloniex exchange—a different entity in a different jurisdiction. Plaintiff cannot now undo the consequences of those decisions by using this Court to meld those entities together. Of course, none of this stops Plaintiff from attempting to seek recourse against Polo Digital here or in an appropriate forum. But this Court should not countenance Plaintiff's attempt to interpose Orange Anthem as a stand-in for that entity.

### D. Plaintiff Cannot Assert a Section 502(d) Claim Based on Conclusory Assertions of Operational Involvement

Plaintiff may attempt to argue that Orange Anthem's FTX account was only "nominally" its own, Compl. ¶ 10, or that Polo Digital "maintained" or "operate[d]" the account, *id.* ¶¶ 10, 67.

That argument cannot move the needle either.  Section 502(d) is limited to disallowing claims made by entities adjudged liable to the debtors in preference or avoidance actions; it is not a mechanism for unwinding dealings between third parties.  "Section 502(d) can *only apply to a claim if the claimant meets the definition of Section 502(d)* (such as by receiving a fraudulent or preferential payment from the debtor) or . . . if the claim was transferred from an entity that itself would be subject to disallowance under Section 502(d)."  *In re Firestar Diamond, Inc.*, 627 B.R. 804, 808-09 (S.D.N.Y. 2021) (emphasis added).

Neither of those circumstances apply here, as Orange Anthem itself does not "meet[] the definition of Section 502(d)," *id.*, nor is its claim alleged to have been transferred to or from an entity that does.  To the contrary, the Complaint admits that Orange Anthem opened a trading account with FTX months before FTX's bankruptcy, and that after FTX filed its Chapter 11 petition, it submitted a proof of claim for assets in its account.  Compl. ¶ 10.  Orange Anthem's claim upon the estate is its own, and Plaintiff cannot disallow it by speculating that Orange Anthem allowed Polo Digital to "maintain" or "operate" its trading account.

Any suggestion that Orange Anthem's FTX account somehow belongs to Polo Digital because it "maintained" or "operated" the account should also be rejected as a "legal conclusion couched as a factual allegation" that lacks any plausible factual support.  *See Baraka*, 481 F.3d at 195 (quoting *Papasan*, 478 U.S. at 286).  All Plaintiff offers is an allegation that the Binance accounts from which Orange Anthem's FTX account was initially funded used email addresses that contained the word "binancehedgepolo," and an assertion, upon information and belief, that "hedgepolo" may have been a reference to the Poloniex exchange.  Compl. ¶ 67.  Further undermining the credibility of this speculation, Plaintiff simply ignores the term "hedge," perhaps as inconvenient to its theory.  *See BCP Liquidating LLC v. Bridgeline Gas Mktg., LLC (In re*

*Borden Chems. & Plastics Operating Ltd. P'shp*), 336 B.R. 214, 220 (Bankr. D. Del. 2006) (evaluating definitions of hedge, including "offsetting transactions to ensure a position of breaking even") (quoting Black's Law Dictionary 740 (8th ed. 2004)).

Taken together, these assertions do not remotely support the contention that Orange Anthem's FTX account belonged to Polo Digital, a different entity domiciled in a different jurisdiction, and which is not alleged to control Orange Anthem or have any relationship with it other than having the same alleged owner. Courts routinely reject similar attempts to force a legal conclusion without sufficient supporting facts.

For instance, in *Celgene*, the Federal Circuit rejected bare allegations that the defendant "work[ed] in concert" with and "controlled" another entity, noting that those were "legal conclusions" that required facts alleging "*how* [the entity] is involved" or "*how* it bypassed the corporate form." *Celgene*, 17 F.4th at 1129 (dismissing complaint as "too conclusory to establish a plausible claim of liability"). *See also, e.g.*, *BlackBerry Ltd. v. Nokia Corp.*, 2018 U.S. Dist. LEXIS 44936, at *5 (D. Del. Mar. 20, 2018) (allegation that entity "oversees" a business unit "does not provide a sufficient factual basis to support a plausible [claim]"); *Wright v. Lehigh Valley Hosp. & Health Network*, 2011 U.S. Dist. LEXIS 68012, at *10 (E.D. Pa. June 23, 2011) ("'Operational control' and 'ultimate responsibility' are not facts; they are legal conclusions utterly devoid of any factual basis asserted to support the beliefs pled."); *Polk 33 Lending, LLC v. Schwartz*, 555 F. Supp. 3d 38, 44 (D. Del. 2021) (rejecting "wholly conclusory" allegations concerning "corporate waste"); *Liquidation Tr. of Sols. Liquidation LLC v. Stienes (In re Sols. Liquidation LLC)*, 608 B.R. 384, 402 (Bankr. D. Del. 2019) (dismissing claim where there was "no factual support provided whatsoever to forward this allegation past the point of being conclusory"); *EisnerAmper LLP v.*

*Morgan (In re SRC Liquidation LLC)*, 581 B.R. 78, 94 (D. Del. 2017) (court "could not reasonably infer from the factual allegations" that breach of duties caused insolvency).

The same result follows here. The Complaint offers nothing about how Polo Digital supposedly "operated" Orange Anthem's FTX account, let alone how that "operation" could have any effect on Orange Anthem's legal ownership of assets in its account. Even if Polo Digital controlled Orange Anthem—which is not and could not be alleged—Orange Anthem's assets would still remain its own. *See FBI Wind Down*, 581 B.R. at 131; *EGP Fuels*, 2006 Bankr. LEXIS 4658, at *18; *supra* Point II.A. Nor does Plaintiff explain how the initial funding source for Orange Anthem's FTX account—accounts on the Binance platform—has any bearing on Orange Anthem's ownership of its own assets. Without any legal or factual grounding, Plaintiff's conclusion cannot stand. *See Celgene*, 17 F.4th at 1129.

Plaintiff's threadbare allegations are not plausible so much as they are convenient: Orange Anthem is not the subject of a turnover claim, so Plaintiff contends, without support, that Orange Anthem's FTX account must have been "operated" by an entity that is. The same could be theorized about any two entities with a common owner, which would allow Plaintiff to tailor claims however it wishes amongst a group of entities under alleged common ownership. That cannot be enough to state a claim. *See Iqbal*, 556 U.S. at 678 (plausibility requires "factual content that allows the court to draw the *reasonable* inference that the defendant is liable") (emphasis added).

Plaintiff has not met any of the statutory criteria for bringing a Section 502(d) claim against Orange Anthem. Nor would it be able to do so in the future upon the facts alleged. Accordingly, the Section 502(d) claim against Orange Anthem must be dismissed, and Orange Anthem's claim upon the estate cannot be disallowed.

## CONCLUSION

For the foregoing reasons, the claims against About Capital and Orange Anthem should be dismissed with prejudice.


Dated: April 21, 2025                                  Respectfully submitted,

                                                       /s/ David E. Kirk
                                                       **KIRK & INGRAM, LLP**
                                                       David E. Kirk (No. 7310)
                                                       43 West 43rd Street, Suite 279
                                                       New York, NY 10036
                                                       Telephone: (212) 859-3504
                                                       DKirk@kirkingram.com

                                                       *Counsel for Defendants About
                                                       Capital Management (HK) Co.,
                                                       Ltd. and Orange Anthem Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of April 2025, I caused a true and correct copy of the

foregoing document to be served upon all parties of record via CM/ECF, and the parties listed

below by e-mail.

Dated:  April 21, 2025

/s/ David E. Kirk
David E. Kirk (No. 7310)

LANDIS RATH & COBB LLP
Adam G. Landis, Esq.
Richard S. Cobb, Esq.
Matthew B. McGuire, Esq.
Howard W. Robertson IV, Esq.
919 Market Street, Suite 1800
Wilmington, Delaware 19801
landis@lrclaw.com
cobb@lrclaw.com
mcguire@lrclaw.com
robertson@lrclaw.com

SULLIVAN & CROMWELL LLP
Stephanie G. Wheeler, Esq.
Brian D. Glueckstein, Esq.
Justin J. DeCamp, Esq.
Christopher J. Dunne, Esq.
Jacob M. Croke, Esq.
125 Broad Street
New York, NY 10004
wheelers@sullcrom.com
gluecksteinb@sullcrom.com
decampj@sullcrom.com
dunnec@sullcrom.com
crokej@sullcrom.com

*Attorneys for Debtors and Plaintiff FTX
Recovery Trust*

CAHILL GORDON & REINDEL LLP
Gregory Strong, Esq.
221 W. 10th Street, 3rd Floor
Wilmington, DE 19801
GStrong@cahill.com

Samson A. Enzer, Esq.
Tammy L. Roy, Esq.
Joel H. Levitin, Esq.
Gregory Mortenson, Esq.
32 Old Slip
New York, NY 10005
SEnzer@cahill.com
TRoy@cahill.com
JLevitin@cahill.com
GMortenson@cahill.com

*Attorneys for Digital Legend Hodlings Ltd.*

YOUNG CONAWAY STARGATT &
TAYLOR LLP
Jared W. Kochenash, Esq.
Matthew Barry Lunn, Esq.
Robert F. Poppiti, Jr., Esq.
1000 North King Street
Wilmington, DE 19801
jkochenash@ycst.com
mlunn@ycst.com
rpoppiti@ycst.com

PAUL HASTINGS LLP
Luc A. Despins, Esq.
Caroline Diaz, Esq.
Erez Gilad, Esq.
Kristopher M. Hansen, Esq.
John F. Iaffaldano, Esq.
Leonie C. Koch, Esq.
Samantha Martin, Esq.
Kenneth Pasquale, Esq.
Gabriel Sasson, Esq.
Isaac Sasson, Esq.
200 Park Avenue
New York, NY 10166
lucdespins@paulhastings.com
carolinediaz@paulhastings.com
erezgilad@paulhastings.com
krishansen@paulhastings.com
jackiaffaldano@paulhastings.com
leoniekoch@paulhastings.com
samanthamartin@paulhastings.com
kenpasquale@paulhastings.com
gabesasson@paulhastings.com
isaacsasson@paulhastings.com

Frank A. Merola, Esq.
1999 Avenue of the Stars, 27th Floor
Century City, CA 90067
frankmerola@paulhastings.com

KRAMER LEVIN NAFTALIS &
FRANKEL LLP
Kenneth H. Eckstein, Esq.
1177 Avenue of the Americas
New York, NY 10036
keckstein@kramerlevin.com

*Attorneys for Official Committee of Unsecured Creditors*

OFFICE OF THE U.S. TRUSTEE
Joseph James McMahon, Jr., Esq.
Benjamin A. Hackman, Esq.
Linda Richenderfer, Esq.
Office of the United States Trustee
844 King Street, Suite 2207
Lockbox 35
Wilmington, DE 19801
joseph.mcmahon@usdoj.gov
benjamin.a.hackman@usdoj.gov
Linda.Richenderfer@usdoj.gov

David Gerardi, Esq.
Office of the United States Trustee
One Newark Center,1085 Raymond
Boulevard, Suite 2100
Newark, NJ 07102
David.Gerardi@usdoj.gov

*Attorneys for United States Trustee*