# EXHIBIT C

**Redline**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,‡ | Case No. 22-11068 (~~JTD~~KBO) |
| Debtors. | (Jointly Administered) |

| | |
|---|---|
| ~~FTX TRADING LTD. and ALAMEDA RESEARCH LTD.,~~ | |
| ~~Plaintiffs~~FTX RECOVERY TRUST, | |
| Plaintiff, | Adv. Pro. No. 24——— (~~JTD~~ 50219 (KBO) |
| - against - | |
| HUOBI GLOBAL LTD., ~~HTX LTD.,~~ ABOUT CAPITAL MANAGEMENT (HK) CO., LTD., DIGITAL LEGEND HODLINGS LTD., ~~HBIT LTD~~HUOBI GLOBAL S.A., ORANGE ANTHEM LTD., ~~and~~ POLO DIGITAL ASSETS, LTD., and YUCHEN "JUSTIN" SUN | |
| Defendants. | |

**[PROPOSED] AMENDED COMPLAINT FOR TURNOVER OF ASSETS PURSUANT TO 11 U.S.C. §§ 542, FOR VIOLATIONS OF THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. §§ 362, ~~FOR AVOIDANCE OF TRANSFERS PURSUANT TO 11 U.S.C. § 547,~~ AND FOR DISALLOWANCE OR SUBORDINATION OF CLAIMS PURSUANT TO 11 U.S.C. §§ 502 AND 510**

~~Plaintiffs~~Plaintiff FTX ~~Trading Ltd. ("FTX.com") and Alameda Research Ltd.~~

~~("Alameda") (together,~~Recovery Trust ("Plaintiff" or the "~~Plaintiffs~~Trust"), through ~~their~~its

---

‡ ~~The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.~~

undersigned counsel, for ~~their~~its Amended Complaint against Huobi Global Ltd. ("Huobi Global"), ~~HTX Ltd. ("HTX"),~~ About Capital Management (HK) Co., Ltd. ("About Capital"), Digital Legend Hodlings Ltd. ("Digital Legend~~," and~~"), Huobi Global, S.A. (together with Huobi Global, ~~HTX and~~ About Capital, and Digital Legend, "Huobi~~"), Hbit Ltd. ("Hbit~~"), Orange Anthem Ltd. ("Orange Anthem"), ~~and~~ Polo Digital Assets, Ltd. ("Poloniex~~,~~") and Yuchen "Justin" Sun ("Sun" and together with Huobi, ~~Hbit, and~~ Orange Anthem, and Poloniex, the "Defendants"), allege the following based upon personal knowledge and upon ~~their~~its investigation to date as to ~~themselves~~itself and ~~their~~its own acts, and upon information and belief as to all other matters:

### NATURE OF THE CASE

1.      ~~Plaintiffs bring~~Plaintiff brings this adversary proceeding ("Adversary Proceeding") pursuant to Section 542 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code~~")~~"), to recover more than $27 million in debtor assets held in Huobi and Poloniex exchange accounts belonging to Alameda. ~~Plaintiffs~~Plaintiff also ~~assert~~asserts claims for violations of the automatic stay pursuant to Section 362 of the Bankruptcy Code for Defendants' actions affecting property of the debtors' estates. ~~Plaintiffs further seek to avoid preferential transfers to Defendant Hbit pursuant to Section 547 of the Bankruptcy Code.~~ Finally, pursuant to Section 502(d) of the Bankruptcy Code, ~~Plaintiffs seek~~Plaintiff seeks to disallow any and all claims filed or held by ~~Defendants~~Sun and/or Orange Anthem in the above-captioned bankruptcy cases (collectively, the "Chapter 11 Cases") unless and until Defendants have relinquished to ~~Plaintiffs~~Plaintiff all property determined by the Court to be subject to turnover, avoidable and/or recoverable.

2.      On November 11 and November 14, 2022 (as applicable, the "Petition Date"), FTX.com Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors" and each a "Debtor") filed with the United States Bankruptcy Court for the District of Delaware (the "Court") voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. No trustee has been appointed for Plaintiffs or any other Debtor in these Chapter 11 Cases, and the Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. On November 22, 2022, the Court entered an order authorizing joint administration of the Chapter 11 Cases [D.I. 128]. Accordingly, Plaintiffs have the authority to file this Complaint to commence, and thereafter to prosecute, this Adversary Proceeding. On October 8, 2024, the Court entered an order confirming the *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26404] (the "Plan"), which became effective on January 3, 2025 [D.I. 29127] (the "Plan Effective Date").

3.      Upon the Plan Effective Date, all assets of the Debtors, including all claims and causes of action, were transferred to and vested in Plaintiff, a Delaware statutory trust. The Trust is the successor-in-interest to the litigation claims of Debtors Alameda Research Ltd. ("Alameda") and FTX Trading Ltd ("FTX.com").

3.4.      Prior to the filing of the Chapter 11 Cases, Alameda engaged in cryptocurrency trading and other activities. As part of its trading operations, Alameda opened and operated accounts at various cryptocurrency exchanges around the world.

4.5.      Huobi currently operates one of the world's largest exchanges offering cryptocurrency trading services, reportedly averaging billions of dollars in spot, futures and

options trading each day.[2]  In or around September 2022, Sun ~~"Justin" Yuchen ("Justin Sun")~~ acquired control of Huobi and its affiliates. ~~Upon information~~ through Defendants About Capital and ~~belief, Defendant Hbit operated as a subsidiary of Huobi~~Digital Legend.

~~5.~~6.    Poloniex currently operates another large cryptocurrency exchange, which boasts an estimated 24-hour trading volume of more than $750 million as of November 9, 2024.[3] ~~Justin~~ Sun ~~owns~~has owned and ~~operates~~operated the Poloniex exchange ~~as well~~since 2019.

~~6.~~7.    Prior to the filing of these Chapter 11 Cases, Alameda maintained an account on Huobi with an account number ending in -8170 (the "Alameda Huobi Account").  The Alameda Huobi Account had been opened using the name of a former Alameda employee (the "Former Alameda Employee"), but was at all times funded and controlled by, and used solely for the benefit of, Alameda.  Additionally, prior to the filing of these Chapter 11 Cases, Samuel Bankman-Fried opened an account on Poloniex (the "Alameda Poloniex Account," and together with the Alameda Huobi Account, the "Alameda Accounts") registered to the e-mail address exchanges@alameda-research.com.  The Alameda Poloniex Account also was at all times funded and controlled by, and used solely for the benefit of, Alameda.

~~7.~~8.    Immediately after commencing these Chapter 11 Cases, the Debtors determined that the Alameda Accounts collectively contained Debtor assets then-valued at approximately $27.5 million, and that both Huobi and Poloniex had locked the Alameda Accounts, rendering the Debtors unable to recover their assets.  The Debtors promptly contacted Huobi and Poloniex to request that they preserve the Debtors' assets in the Alameda Accounts and cooperate with the Debtors' requests to facilitate the return of these assets for the benefit of the Debtors' estates.

---

[2]    ~~See https://cointelegraph.com/news/htx-overtakes-coinbase-trading-volumes.~~

[3]    ~~See https://www.coingecko.com/en/exchanges/poloniex.~~

8.9.    Despite repeated outreach from the Debtors, as well as outreach to Huobi from the Former Alameda Employee and the United States Attorney's Office for the Southern District of New York (the "SDNY"), Huobi and Poloniex have both refused to cooperate with the Debtors' requests and continue to wrongfully withhold the Debtors' property.  This Adversary Proceeding seeks the turnover of these estate assets held by Huobi and Poloniex.

9.    Defendant Hbit also received gross transfers of digital assets currently valued at more than $14 million from FTX.com in the ninety days prior to the commencement of these Chapter 11 Cases.  These transfers constitute preferential transfers and are avoidable under Section 547 of the Bankruptcy Code.

10.    Upon information and belief, Sun, through Huobi and/or Poloniex, also maintained multiple FTX.com accounts with, including an account numbers ending in -2904 and -9858 that werewas nominally opened in the namesname of DefendantsDefendant Orange Anthem with an account number ending in -2904 (the "Orange Anthem FTX Account") and Hbit (the "Hbit FTX Account") respectively.").  The Orange Anthem FTX Account was opened in or around April 2022.  Know-Your-Customer ("KYC") materials submitted in connection with opening the Orange Anthem FTX Accountto FTX reflect that:  (i) at the time Orange Anthem was formed, its sole shareholder and director was Justin Sun; and (ii) source of wealth documentation stated that the funds for the Orange Anthem FTX Account would come from accounts at Binance (another cryptocurrency exchange) with e-mail addresses beginning "binancehedgepolo" followed by a string of numbers. that were nominally owned by an entity called "Black Anthem Ltd.," which also had Sun as its sole shareholder and director; and (iii) Black Anthem Ltd. had a separate FTX.com customer account—also controlled by Sun— that was registered to "forpolo01@tron.network."  Upon information and belief, the references to

"hedgepolo" ~~refers~~and "forpolo" are references to the Poloniex exchange controlled by ~~Justin Sun.  The Hbit FTX Account was opened in or around August 2021, and Huobi repeatedly has acknowledged to the Debtors that it controlled this account.~~Sun.  After the Petition Date, a customer ~~proofs~~proof of claim ~~were~~was filed against the Debtors with respect to the Petition Date ~~balances~~balance of the Orange Anthem FTX Account (totaling approximately $12 million~~)~~ ~~and the Hbit FTX Account (totaling approximately $18 million).~~).  Pursuant to Section 502(d) of the Bankruptcy Code, ~~Plaintiffs seek~~Plaintiff seeks to disallow ~~these claims, as well as any and all other claims filed or held by Defendants in these Chapter 11 Cases~~, or alternatively to equitably subordinate, this claim unless and until Defendants have relinquished to ~~Plaintiffs~~Plaintiff all property determined by the Court to be subject to turnover, avoidable and/or recoverable.

11.     During the course of this Adversary Proceeding, ~~Plaintiffs~~Plaintiff may learn (through discovery or otherwise) of additional property of the Debtors subject to turnover under Section 542 of the Bankruptcy Code, or transfers made to Defendants that are avoidable under Sections 547 or 548 of the Bankruptcy Code.  ~~Plaintiffs intend~~Plaintiff intends to recover all such property and avoid and recover all such transfers made to or for the benefit of Defendants or any other transferee.  ~~Plaintiffs reserve~~Plaintiff reserves the right to further amend this Amended Complaint to include, without limitation:  (i) further information regarding any property or transfers, (ii) additional plaintiffs or defendants, (iii) modifications of and/or revision to the Defendants' names, and (iv) additional causes of action, if applicable (collectively, the "Amendments"), that may become known at any time during this Adversary Proceeding, through formal discovery or otherwise, and intend for any such Amendments to relate back to this Amended Complaint.

## JURISDICTION AND VENUE

12.     This Adversary Proceeding relates to the ~~Plaintiffs'~~ Chapter 11 Cases filed with this Court on the Petition Date.  The Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

13.     This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Court may enter final orders herein.

14.     Venue of this Adversary Proceeding in this District is proper pursuant to 28 U.S.C. § 1409, and venue in this District is consistent with the interests of justice, judicial economy, and fairness.

15.     The statutory predicates for the relief requested herein are Sections 105(a), 502(d), 362, 542, 544, 547, and 550 of the Bankruptcy Code.

16.     This Adversary Proceeding is commenced pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure because, at a minimum, it seeks, among other things, to recover money or property belonging to the Debtors' Chapter 11 estates.  Fed. R. Bankr. P. 7001(1).

17.     Pursuant to Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, ~~Plaintiffs consent~~Plaintiff consents to the entry of final orders and judgments by the Court on these claims to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## THE PARTIES

18.     Plaintiff FTX~~.com~~ Recovery Trust is a ~~corporation registered in Antigua~~Delaware statutory trust created and ~~Barbuda that operated a~~implemented pursuant to the Plan, and the sole

7

owner by assignment of all rights and assets of the Debtors under the Plan, as confirmed by the Court.

18.19.  Defendant Yuchen "Justin" Sun is a Chinese national and cryptocurrency ~~trading exchange~~entrepreneur.  At all relevant times, as described below, Sun owned, controlled, and dominated the actions and dealings of Huobi, Poloniex, and Orange Anthem.  As such, those entities are Sun's alter egos.

~~19.    Plaintiff Alameda is a British Virgin Islands company limited by shares.~~

20.    Defendant Huobi Global is a company that was registered in Seychelles until October 13, 2023.  The Huobi cryptocurrency exchange formerly operated under Huobi Global.

21.    Defendant About Capital is a Hong Kong company and, together with Defendant Digital Legend, acquired Huobi through Huobi Global and other related entities in September 2022.  Upon information and belief, ~~Justin~~ Sun exercises control over About Capital.

22.    Defendant Digital Legend is a British Virgin Islands company and, together with Defendant About Capital, acquired Huobi through Huobi Global and other related entities in September 2022.  Upon information and belief, ~~Justin~~ Sun exercises control over Digital Legend.

23.    Defendant ~~HTX~~Huobi Global S.A. is a company ~~currently registered~~that was organized in ~~Seychelles.~~Panama in May 2023.  At the time Huobi Global S.A. was organized, its treasurer was Huobi Global.  Huobi Global S.A. is the registrant of the "HTX" trademark in the United States, which trademark application was filed in October 2023.  Upon information and belief, Sun exercises control over Huobi Global S.A.

24.    Defendant Orange Anthem is a British Virgin Islands company wholly owned by Sun.  Upon information and belief, Orange Anthem is part of Sun's TRON Network, which is a blockchain protocol founded and controlled by Sun.

25.     Defendant Polo Digital Assets, Ltd. ~~HTX currently operates the Huobi cryptocurrency exchange.~~ was a company incorporated in the Republic of Seychelles. Notwithstanding that Polo Digital Assets, Ltd. was stricken from the Seychelles registry in January 2022, upon information and belief, Polo Digital Assets, Ltd. and/or its incorporated or unincorporated successor(s) continue to operate Poloniex and are controlled by Sun.

~~23.~~    At all relevant times, Huobi has been owned, controlled and operated by or through one or more associated companies owned and controlled by Sun, including Defendants Huobi Global, Huobi Global S.A., About Capital, and Digital Legend.  In September 2023, Huobi rebranded to "HTX~~,~~," which stands for "Huobi TRON Exchange," ~~in September 2023~~ as part of "a new era for the platform with synergy between HTX, TRON, and Poloniex."[4]  ~~Upon information and belief, TRON a/k/a the TRON Network is a blockchain protocol founded by Justin Sun.~~

~~24.~~26.  ~~At all relevant times, Huobi has been owned and operated by or through one or more associated companies, including Defendants Huobi Global, About Capital, Digital Legend, and HTX.~~  Upon information and belief, and as described below, Defendants Huobi Global, Huobi Global S.A., About Capital, and Digital Legend~~, and HTX~~ operate as a unified, integrated enterprise under Sun's ownership and control, including by sharing management and operational teams.  Because Defendants Huobi Global, Huobi Global S.A., About Capital, and Digital Legend~~, and HTX~~ operate as a joint enterprise, they are described together in this Complaint as "Huobi." ~~ Upon information and belief, Justin Sun exercises control over Huobi.~~

---

[4]    *Huobi Rebrands to HTX, Unveils Global Expansion Roadmap*, HTX (Sept. 13, 2023), https://www.htx.com/support/84948926582328~~.).~~

25.    Defendant Hbit is a Hong Kong company and was a wholly-owned subsidiary of Huobi until at least September 2022.

26.1.    Defendant Orange Anthem is a British Virgin Islands company wholly owned by Justin Sun.  Upon information and belief, Orange Anthem is part of Justin Sun's TRON network.

27.    Defendant Polo Digital Assets, Ltd. is a company incorporated in the Republic of Seychelles.  Upon information and belief, Polo Digital Assets, Ltd. currently operates the Poloniex exchange.[5]

28.    Upon information and belief, Hbit, Orange Anthem, Huobi, and Poloniex are under the common ownership and control of Justin Sun.

## FACTUAL ALLEGATIONS

### I.    Justin Sun Dominates and Controls Huobi, Poloniex, and Orange Anthem

27.    Justin Sun operates Huobi, Poloniex, Orange Anthem, along with his TRON Network, as a unified, integrated enterprise.  Because Sun dominates and controls these entities, they exist solely as legal fictions and operate as Sun's alter egos.  Accordingly, Huobi, Poloniex, and Orange Anthem's liabilities may be imputed to Sun.

#### A.    Sun and His Entities Routinely Fail to Observe Corporate Formalities

28.    Sun operates an integrated enterprise utilizing intentionally opaque and non-functional corporate structures.  For example, a publicly available Huobi service agreement refers to "HTX Ltd." as a counterparty to certain Huobi agreements.  Although Huobi identifies HTX Ltd. as being incorporated in the Seychelles, the Trust has been unable to identify any company incorporated under that name in the Seychelles corporate registry.  Other Huobi

---

[5]    *See, e.g.*, *Poloniex Spins Out from Circle with New Backing & Global Focus*, POLONIUS, https://support.poloniex.com/hc/en-us/articles/360040020993-Poloniex-Spins-Out-from-Circle-with-New-Backing-Global-Focus (last visited Oct. 14, 2024).

agreements do not even identify a single extant corporate entity, and instead refer generally to the "HTX Platform."  Huobi's primary user agreement highlights the absurdity and intentional opacity of this structure, stating that Huobi is operated by a group of "HTX Operators" that includes "all parties that run the Platform, including but not limited to legal persons, ***unincorporated organisations*** and teams that provide the Services and are responsible for such Services" (emphasis added).[6]  The agreement notes that "the HTX Operators may change as our business adjusts, in which case the changed operators shall perform their obligations under this Agreement and provide the Services to you," and that "[i]n case of a dispute, you shall determine the entities by which this Agreement are performed with you and the counterparties of the dispute, depending on the specific Services that you use and the particular actions that affect your rights or interests."  Of course, nothing in the user agreement or anywhere else in Huobi's publicly available records provides any means by which anyone could identify the specific "legal persons, unincorporated organisations [or] teams" that are currently providing any particular services for the Huobi exchange.  This opacity and abuse of the corporate form is by design and intended to prevent parties from exercising their rights against Huobi.

29.     Similarly, Poloniex's website identifies only one corporate entity, Defendant Polo Digital Assets, Ltd., on a page describing regulations in the European Economic Area, but all other areas of Poloniex's website, including the user agreement contained therein, are otherwise devoid of reference to any corporate entities.  Notwithstanding that Poloniex's website identifies Defendant Polo Digital Assets, Ltd., the Seychelles corporate registry indicates that Polo Digital Assets, Ltd. has been dissolved and stricken off.  A former Poloniex employee observed that

---

[6]     *HTX Platform User Agreement*, HTX, https://www.htx.com/support/360000298561.

Poloniex's corporate structure was intentionally designed as "a Russian nesting doll of obfuscation" for the express purpose of making it difficult for customers to sue.[7]

30.     Sun is not merely an influential outsider or informal advisor to the Huobi and Poloniex exchanges; he is their acknowledged owner and ultimate controller. Public reporting confirms that Sun acquired controlling interests in Huobi and Poloniex through entities he owns and controls, and that he has since treated the exchanges as integral components of a unified business enterprise. Public reporting also describes Sun as more than just an informal "advisor" to Huobi; rather, Sun "has effectively functioned as [Huobi]'s leader," including by exercising day-to-day control and setting corporate strategy.[8] Similarly, comments by former Poloniex employees confirm that Sun entirely controls the policies and procedures of the Poloniex exchange after he acquired it in 2022. Sun has reportedly slackened token listing requirements, "bulldoz[ed] Poloniex's KYC rules," and automated the exchange's KYC system to "virtually rubber-stamp[] government IDs of any kind."[9]

31.     Sun has repeatedly referred to Huobi and Poloniex as "his" exchanges and their assets as "his" money. As just one example, in November 2022, in response to concerns about Huobi's solvency in the wake of the FTX collapse, Sun sought to allay any worries by posting a message on X (formerly Twitter) that "***Brother Sun will cherish the Huobi brand like his own child (after all, it cost over a billion dollars, needs to keep making money, and tarnishing [its]***

---

[7]     Christopher Harland-Dunaway, *The Many Escapes of Justin Sun*, The Verge (Mar. 9, 2022), https://www.theverge.com/c/22947663/justin-sun-tron-cryptocurrency-poloniex.

[8]     Weilun Soon & Elaine Yu, *Huobi's New Boss Shakes Up Crypto Firm with China Plan*, The Wall Street Journal (Mar. 27, 2023), https://www.wsj.com/articles/huobis-new-boss-shakes-up-crypto-firm-with-china-plan-94d65efb?.

[9]     Harland-Dunway, *supra* note 2.

*reputation would be a huge loss).*"[10]  Sun continued by assuring Huobi customers that Huobi had adequate reserves and that there was no need for customers to withdraw their assets, stating "***Some people say they want to withdraw coins to drain Brother Sun's money, Brother Sun doesn't want that, but he's absolutely not afraid of everyone withdrawing coins.***"

32.     Other public comments from Sun further underscore his control and ownership over Huobi, including by announcing what tokens may be listed on the Huobi exchange:



And by discussing reports regarding Sun's efforts to solicit potential buyers for Huobi:

---

[10]     Justin Sun (@justinsuntron), X (Nov. 12, 2022, 1:55 AM), https://x.com/justinsuntron/status/1591323854785622017 (X translation from Chinese).



33.    Sun also abuses his control over his entities as part of an integrated enterprise operating under his direction.  Sun routinely refers to Huobi and Poloniex collectively, speaking of their actions, policies, and strategic decisions as coordinated or unified.  These statements further reflect Sun's own understanding and public acknowledgment that the two platforms

function as a single, integrated enterprise subject to his control, rather than as independent and unaffiliated entities:[11]



[11]    Justin Sun (@justinsuntron), X (Nov. 12, 2022, 12:31 AM), https://x.com/justinsuntron/status/1591302729523433478; Justin Sun (@justinsuntron), X (Apr. 5, 2023, 12:10 PM), https://x.com/justinsuntron/status/1643647313049686016; Justin Sun (@justinsuntron), X (Apr. 5, 2023, 12:03 PM), https://x.com/justinsuntron/status/1643645551190347776.

34.     In September 2023, Huobi rebranded as "HTX"—which stands for "Huobi TRON Exchange."  Huobi issued a press release describing the "HTX" name as signifying a "new era for the platform with synergy between HTX, Tron, and Poloniex" (*i.e.*, Sun's three primary corporate interests).[12]

35.     Shortly thereafter, a series of significant security incidents affected Sun-affiliated exchanges and infrastructure, including a hack of Huobi in September 2023 resulting in approximately $8 million in losses, a hack of Poloniex in early November 2023 resulting in approximately $100 million in losses, and subsequent hacks of Huobi and the HECO blockchain (another Sun-controlled network within the HTX/Tron ecosystem) on November 22, 2023 resulting in more than $100 million in additional losses.

36.     Immediately following the November 22, 2023 incidents, Sun issued public statements addressing users of Huobi and Poloniex collectively.  In those statements, Sun announced that *both* platforms were suspending deposits and withdrawals and represented that "we" would bear the losses arising from *all* of the security incidents across *both* exchanges.  Sun did not distinguish between Huobi and Poloniex, attribute responsibility to separate management teams, or suggest that the platforms were independently operated or financially isolated from one another.[13]

---

[12]     HTX, *supra* note 1.

[13]     Justin Sun (@justinsuntron), X (Nov. 24, 2023, 9:55 AM), https://x.com/justinsuntron/status/1728064872632795480.



37.     Various U.S. and foreign governmental and regulatory entities also have recognized Sun's routine disregard for corporate separateness and formalities.  As just one example, in March 2023, the U.S. Securities and Exchange Commission filed a civil enforcement action alleging that Sun exercised pervasive control over multiple corporate entities—including Tron Foundation Limited, BitTorrent Foundation Ltd., and Rainberry, Inc.—such that those entities functioned as alter egos of Sun himself, rather than as independent actors.  *See* Amended Complaint, *SEC* v. *Sun*, No. 1:23-cv-02433, ECF No. 59 (S.D.N.Y. Apr. 18, 2024).  The SEC alleged that Sun directed the entities' operations, orchestrated their transactions, and used them interchangeably to effectuate securities offerings, market manipulation, and deceptive practices, thereby abusing the corporate form to shield personal conduct and evade regulatory scrutiny. Similarly, in August 2021, after Sun had acquired Poloniex, the SEC instituted a settled enforcement action against Poloniex, LLC, finding that it had operated the Poloniex exchange in the United States as an unregistered national securities exchange and failed to comply with basic regulatory obligations.[14]

---

[14]     Comm'r Hester M. Peirce, *In the Matter of Poloniex, LLC*, U.S. Securities and Exchange Commission (Aug. 9, 2021), https://www.sec.gov/newsroom/speeches-statements/pierce-statement-poloniex-080921.

**B.      Sun Uses His Entities as a Mere Façade to Advance His Personal Interests**

38.      Sun also uses his control over Orange Anthem, Huobi, Poloniex and his many other shell companies for his own personal and financial advantage.

39.      In September 2022, in the weeks before Sun surreptitiously assumed control of Huobi through Defendants About Capital and Digital Legend, internal Huobi sources raised concerns that Sun would exploit the exchange for his personal gain.  These concerns were relayed directly to FTX personnel while the Sun-Huobi deal was still being negotiated.  Huobi sources communicated to Samuel Bankman-Fried that Huobi's then-Chief Executive Officer, Li Lin, was hesitant to sell Huobi to Sun because he "d[id] not trust Justin Sun" and thought that "Justin [would] arbitrage [Huobi] tokens to ruin the [H]uobi platform."

40.      Those concerns were not unfounded:  Poloniex employees have also reported that Sun exploited his control over the Poloniex exchange to advance his personal interests.  After Sun acquired and assumed control over the Poloniex exchange in October of 2019, a former employee recounted that Sun "started to see all the possibilities of using Polo as more or less his personal bank."[15]  As one example, employees described how Sun ordered Poloniex engineers to gather undelivered Bitcoin "dust" on the Poloniex exchange—customer deposits suspended in limbo after customers accidentally deposited their Bitcoins into the wrong type of cryptocurrency wallet.  As the engineers worked to gather the Bitcoin at Sun's direction, they came to "underst[and] [that] Justin Sun would take the Bitcoin personally."[16]  Pursuant to this project, which was officially titled "Operation Couch Cushions," "nearly all the Bitcoin dust was

---

[15]      Harland-Dunway, *supra* note 2.

[16]      *Id.*

18

siphoned out" of Poloniex, representing over $10 million in value and hundreds of customer transactions.[17]

41.    As recently as December of 2025, public analyses of Huobi's proof-of-reserves demonstrate that Bitcoin products directly traceable to Sun's Poloniex make up a massive portion of Huobi's reserves—but Poloniex itself has yet to complete a proof-of-reserves, and Poloniex does not anywhere disclose where the Bitcoin backing its product is held, or where this Bitcoin comes from.[18]  Public reports suggest that these connections "raise worrying implications about how Sun uses [the reserves], and about [Huobi's] internal controls"—concerns that directly affect the Trust given Sun's refusal to return the Trust's assets held at Huobi and Poloniex.[19]

42.    Sun also has abused his myriad corporate entities for his personal benefit in connection with his other dealings with the FTX.com exchange.  As just one example, in connection with the KYC process for opening the Orange Anthem FTX Account, Sun expressly disclaimed any meaningful separateness between Defendant Orange Anthem and another Sun-controlled entity, Black Anthem Limited ("Black Anthem").

43.    The email address used to open the Orange Anthem FTX Account was account19@tron.network, and the KYC materials submitted for that account identified Sun as the sole director and shareholder of Orange Anthem.  When FTX requested proof of Orange Anthem's assets, the Tron personnel seeking to open the Orange Anthem FTX Account

---

[17]    *Id.*

[18]    Protos Staff, *'Someone' Is Taking Advantage of HTX's Reserves*, PROTOS (Dec. 22, 2025), https://protos.com/someone-is-taking-advantage-of-htxs-reserves/.

[19]    *Id.*

responded with screenshots reflecting assets that were held not by Orange Anthem, but rather nominally by Black Anthem, which had a separate FTX.com customer account registered to the email address "forpolo01@tron.network."  Moreover, the assets in question were held in Black Anthem's accounts on another cryptocurrency exchange, registered to the email addresses *binancehedgepolo24@tron.network*, *binancehedgepolo25@tron.network*, and *binancehedgepolo26@tron.network.*

44.     When FTX questioned why the screenshots reflected assets held by a different company, the Tron personnel opening the Orange Anthem account expressly dismissed any distinction among the entities, responding that Black Anthem "uses the director Sun Yuchen, this totally matches the director of Orange Anthem Ltd. Sun Yuchen.  The person is the same."  FTX replied that this did not prove "that the company Orange Anthem Limited owns th[e] assets," to which the Tron personnel stated "Yes Sun Yuchen is the sole director for Black Anthem Ltd as same as Orange Anthem Ltd," insisting that Sun's common ownership and control rendered the entities interchangeable.

45.     Thus, in the course of opening the Orange Anthem FTX Account, these Tron personnel operating at Sun's direction argued that FTX should ignore any distinctions between these ostensibly different legal entities and should instead recognize the situation for what it was: all of the accounts and assets held by Black Anthem and Orange Anthem were functionally interchangeable and were all owned and controlled by Sun.

46.     Sun continues to exploit the fiction of corporate separateness between himself and Orange Anthem for his own personal benefit in these Chapter 11 Cases.  Although the proof of claim associated with the Orange Anthem FTX Account was nominally filed in the name of

Orange Anthem (by Tron personnel), Sun has publicly described himself—personally—as an FTX.com creditor:[20]



47.    The Trust has, to date, identified no claims other than the Orange Anthem claim that are held in the name of Sun or otherwise directly linked to his various entities.

**C.    Sun's Entities Maintain Non-Functioning and Overlapping Directors**

48.    Although much of the information regarding the functioning of the directors exists in the exclusive control of the Defendants, publicly available information indicates that Sun installs non-functioning directors with close personal relationships to him to oversee his entities.

49.    In particular, Sun has installed Yiying Jiang—publicly reported to be Sun's stepmother—as a (or sole) director of numerous entities he controls, including Defendant Digital Legend.  Jiang has served as director or shareholder of more than fifteen of Sun's other entities, including several entities directly connected to other defendants in this action.  As just one example, Jiang was the sole member of Augustech, LLC, a Delaware company that provided technology and IT services to Poloniex.  Public reporting notes that Augustech, LLC was the

---

[20]    Justin Sun (@justinsuntron), X (Apr. 5, 2023, 12:23 PM), https://x.com/justinsuntron/status/1643650631239102464.

company Sun used to employ the U.S.-based personnel that operated the Poloniex exchange. Indeed, Jiang's signature appears on a filing with the Delaware Secretary of State seeking to dissolve Augustech, LLC, submitted in February 2025 (*i.e.*, shortly after the commencement of this Adversary Proceeding in November 2024).

50.     Jiang also is a director of several TRON Network entities—for example, she is a director of the Singapore entity "Tron Foundation Limited," and was appointed to that position the same day Sun resigned from his role as director of that entity, and also is the sole director of "Tron Network Ltd.," a British Virgin Islands entity.  Jiang also serves as a director of Rainberry, Inc., a California company where Sun is the sole shareholder and Sun's father, Weike Sun, serves as CEO.  Jiang's role at more than fifteen of Sun's entities, in connection with her close personal relationship to Sun, suggests that Jiang acts as a director in name only, with little actual function.

51.     Sun's father, Weike Sun, also serves as the Chairman of the Board of Directors of "Tron, Inc." (Nasdaq:  TRON), a publicly traded Nevada company that spent 25 years as a manufacturer of plush toys and other amusement park souvenirs operating under the name "SRM Entertainment, Inc." before announcing in mid-2025 a "pivot" to a "TRON Token Treasury Strategy."  As part of that "pivot," an entity nominally 100% owned by Weike Sun invested $100 million in the company, the existing Board was replaced by Weike Sun as Chairman and two other Tron-affiliated individuals, Justin Sun was named as "Global Advisor," and the company changed its name to Tron, Inc.  Notwithstanding his lack of an official corporate title, Sun was front and center to ring the opening bell to celebrate Tron, Inc.'s rebranding:



52.    And Tron, Inc. just last week announced another "$18 million strategic equity investment from Justin Sun, founder of the TRON blockchain," through Sun's vehicle Black Anthem Limited.[21]

**D.    Sun Abuses the Corporate Form to Perpetrate Fraud**

53.    As described above, Sun's entities fail to observe corporate formalities and do not maintain corporate records.  This absence of formal guardrails has facilitated, or at least failed to prevent, criminal activity on Sun's platforms.  Reporting from *The Wall Street Journal* highlights that Sun's company TRON, which also operates a blockchain with the same name, "has been a popular channel for crypto's criminal fraternity to move funds."[22]  Indeed, *The Wall Street*

---

[21]    *Tron Inc. Secures $18 Million Strategic Investment from Justin Sun, Founder of the TRON Blockchain*, Business Insider (Dec. 29, 2025), https://markets.businessinsider.com/news/stocks/tron-inc-secures-18-million-strategic-investment-from-justin-sun-founder-of-the-tron-blockchain-1035673450.

[22]    Angus Berwick, Patricia Kowsmann, & Vicky Ge Huang, *A Crypto Billionaire Who Feared Arrest in the U.S. Returns for Dinner With Trump*, WSJ (May 22, 2025), https://www.wsj.com/finance/currencies/justin-sun-trump-crypto-dinner-7efd5367.

*Journal* also cited research that suggests that "more than half of all illegal crypto activity—some $26 billion—took place on [TRON]."[23]  As some crypto experts have explained, "criminals like T[RON] because it gives users the option to conceal their identities, charges low fees and can be converted into cash easily."[24]

54.    TRON is not the only platform of Sun's that is used for illicit purposes. According to public reports, Huobi has been used by scammers to deprive customers of billions of dollars of cryptocurrencies.[25]  In recent lawsuits, the Supreme Court of Seychelles found that Huobi Global Limited, then operating the Huobi exchange, had failed to comply with its due-diligence obligations under the Anti-Money Laundering Act, thereby allowing individuals to improperly receive and store stolen assets on Huobi.[26]

55.    Moreover, as described below, Sun deliberately maintains and exploits the opaque corporate structure of his entities to impede efforts to recover assets that rightfully belong to the Trust.

---

[23]    *Id.*; *see also* Rob Wile, *Meet the Man – Once Sued by the SEC – Who Won the Crypto Contest to Have Dinner with the President*, NBC News (May 20, 2025), https://www.nbcnews.com/business/business-news/trump-coin-crypto-dinner-who-is-top-holder-justin-sun-rcna207983.

[24]    Alexandra Ulmer & Simon Lewis, *Trump Crypto Venture Partners with Platform Linked to Middle East Militants*, Reuters (Dec. 12, 2024), https://www.reuters.com/technology/trump-crypto-venture-partners-with-platform-linked-middle-east-militants-2024-12-12/.

[25]    Wahid Pessarlay, *Secret Exchange Inside HTX Linked to $10B Scam Network*, Yahoo Finance (Nov. 20, 2025), https://finance.yahoo.com/news/secret-exchange-inside-htx-linked-090441026.html; Spencer Woodman et al., *Crypto Giants Moved Billions Linked to Money Launderers, Drug Traffickers and North Korean Hackers*, ICIJ (Nov. 17, 2025).

[26]    *Filippo* v. *Huobi Global Limited*, CS 92/2023 [2024] SCSC 174 (Nov. 15, 2024); *Lui* v. *Huobi Global Limited*, CS 124/2023 [2025] SCS 3 (Jan. 15, 2025).  In both lawsuits, Huobi Global Limited was unrepresented and did not appear.

I.II.    **Huobi and Poloniex Have Repeatedly Refused to Return Debtor Property**

A.        ~~Huobi Withholds Debtor Property~~

29.56.  Prior to the Petition Date, Alameda engaged in cryptocurrency trading and other activities.  In connection with its cryptocurrency trading activities, Alameda maintained and operated accounts on various cryptocurrency exchanges around the world.  Alameda sometimes opened accounts on these exchanges in its own name, but other times it sought to obscure the fact that it was operating the accounts on these exchanges by opening accounts in the names of its employees or in the names of shell companies.  These "secret" accounts afforded Alameda the ability to trade without expressly disclosing its involvement.

30.57.  One such "secret" account—the Alameda Huobi Account—was nominally held in the name of the Former Alameda Employee, but was at all times funded and controlled by, and used solely for the benefit of, Alameda.  As of the Petition Date, the Alameda Huobi Account held assets then-valued at approximately $22 million.  Prior to FTX's collapse, the Debtors were able to freely access and withdraw their assets from the Alameda Huobi Account.  As described below, both Alameda and the Former Alameda Employee have repeatedly provided Huobi with written confirmation that the Alameda Huobi Account belongs to Alameda and that the assets contained therein should be turned over to the Debtors, yet Huobi has unjustifiably refused to do so.  Instead, in direct response to FTX's collapse and these Chapter 11 Cases, Huobi affirmatively disabled access to the Alameda Huobi Account.

58.    Prior to the Petition Date, Alameda also operated an account on the Poloniex exchange—the Alameda Poloniex Account—that had been opened by Bankman-Fried using the e-mail address exchanges@alameda-research.com.  Prior to FTX's collapse, the Debtors were able to freely access and withdraw assets from the Alameda Huobi Account.  As of the Petition Date, the Alameda Poloniex Account held assets then-valued at approximately $5.5 million.

Although the Debtors were for a brief time able to access and withdraw certain assets from the Alameda Poloniex Account after the Petition Date, as described in more detail below, Poloniex subsequently affirmatively disabled access to the Alameda Poloniex Account.

**A.       Huobi Withholds Debtor Property**

31.59.  On November 16, 2022, the now CEO of the post-petition Debtors sent Huobi affiliate Huobi Tech. Holdings, Ltd. ("Huobi Tech") a letter requesting that the assets in the Alameda Huobi Account be secured, and seeking to coordinate the transfer of the assets in the Alameda Huobi Account to the Debtors.  After repeated follow-ups, the Debtors on November 23, 2022 had a telephone call with a member of Huobi Tech's legal team and requested Huobi's assistance in recovering the Debtors' assets.  The Huobi Tech legal team member noted that Huobi had an FTX.com account with a significant Petition Date balance and asked whether FTX.com would be promptly transferring those funds to Huobi.  Once the Debtors explained the process of the Chapter 11 Cases being overseen by this Court, the Huobi Tech legal team member claimed that he did not work at the "correct" Huobi entity, refused to identify the "correct" Huobi entity or anyone who worked there, and declined to engage further.

32.60.  On November 23, 2022, the Debtors sent a letter to Huobi, again requesting that the assets in the Alameda Huobi Account be secured, and seeking to coordinate the transfer of the assets in the Alameda Huobi Account to the Debtors.  On December 6, 2022, outside counsel for Huobi responded to the Debtors and requested additional information regarding the Alameda Huobi Account, as well as written confirmation from the Former Alameda Employee that he consented to the Debtors' requests.

33.61.  After further communications involving Huobi, the Former Alameda Employee and the SDNY, on February 1, 2023, each of the Debtors, the Former Alameda Employee and the SDNY sent Huobi a letter addressing Huobi's requests.  The Debtors' letter confirmed

Alameda's control of the Alameda Huobi Account and ownership of the assets therein and provided Huobi with directions regarding the transfer of those assets to the Debtors.  The Former Alameda Employee's letter confirmed that he had no interest in the assets held in the Alameda Huobi Account and consented to the Debtors' requests.  The SDNY's letter also confirmed that SDNY did not object to the Debtors' request that Huobi return the assets in the Alameda Huobi Account to the Debtors.

34.62.  Huobi did not promptly transfer the assets in the Alameda Huobi Account as requested, and after repeated follow-ups, eventually requested that the Debtors, the Former Alameda Employee and the SDNY send Huobi an additional set of letters providing additional directions and more detailed confirmations that each of the Debtors, the Former Alameda Employee and the SDNY would hold Huobi harmless for complying with the Debtors' requests. On May 5, 2023, each of the Debtors, the Former Alameda Employee and the SDNY sent Huobi another letter addressing Huobi's new requests.  At Huobi's request, the Debtors and SDNY each provided further letters on May 17 and May 19, 2023, respectively, confirming again that each of the Debtors and SDNY would hold Huobi harmless if Huobi complied with the Debtors' requests.

35.63.  Despite having received the requested documentation from each of the Debtors, the Former Alameda Employee and the SDNY, Huobi refused to cooperate further.  On July 21, 2023, after repeated follow-ups, Huobi's counsel informed the Debtors that he no longer represented Huobi on this matter, and directed the Debtors to communicate directly with Huobi's regulatory team.  The Debtors promptly followed up directly with Huobi's regulatory team, and on August 16, 2023, Huobi's regulatory team finally responded to the Debtors' outreach. Notwithstanding that Huobi had previously confirmed several times that it would comply with

the Debtors' requests after receiving the requested letters, Huobi's regulatory team now claimed to the Debtors for the first time that "the [Alameda Huobi] Account is currently being investigated by the Chinese police," and asserted that Huobi was "unable to move and/or transfer any assets from the Account until the said investigation is concluded."

36.64.  The Debtors have repeatedly followed up with Huobi to request additional information regarding this purported investigation and the Alameda Huobi Account, but Huobi has refused to engage further.  As a result, the Debtors have no choice but to seek judicial enforcement of their rights under the Bankruptcy Code.

### B.       Poloniex Withholds Debtor Property

37.       Prior to the Petition Date, Alameda also operated an account on the Poloniex exchange—the Alameda Poloniex Account—that had been opened by Bankman-Fried using the e-mail address exchanges@alameda-research.com.  As of the Petition Date, the Alameda Poloniex Account held assets then-valued at approximately $5.5 million.

38.65.  Poloniex has without justification refused to turn over the assets in the Alameda Poloniex Account to the Debtors, despite numerous requests.  On November 16, 2022, the now-CEO of theFollowing the commencement of these Chapter 11 Cases, the Debtors continued to have access to the Alameda Poloniex Account for a brief period of time, and were able to withdraw a portion of their assets.  But in the midst of that process—and notwithstanding the worldwide automatic stay that had taken effect as of the commencement of these Chapter 11 cases—Poloniex unilaterally disabled the Debtors' ability to make further withdrawals, effectively freezing the remaining assets in the Alameda Poloniex Account.  On November 16, 2022, the CEO of the post-petition Debtors sent a letter to Poloniex's CEO requesting that the assets in the Alameda Poloniex Account be secured and seeking to coordinate on how to safely transfer the assets to the Debtors' estates.  The next day, the Poloniex "compliance team"

responded, requesting "an agenda for discussion."  After the Debtors provided more information,
the Poloniex "compliance team" asked for an "official court order" so that it could act on the
letter and the Debtors' requests.

39.66.  On January 31, 2023, the Debtors sent a second letter to Poloniex's CEO,
confirming that this Court had authorized the Debtors to secure their at-risk assets, including
cryptocurrency and cash, and to move all assets held in third-party brokerages to other accounts.
The January 31 letter also explained that Section 362 of the Bankruptcy Code operates as a
worldwide automatic stay, enjoining all persons from taking any action to exercise control over
property of any Debtor, and that Section 542 of the Bankruptcy Code requires that any estate
property be turned over to the Debtors upon request.

40.67.  After further discussion, Poloniex agreed to allow the Debtors to recover the
assets in the Alameda Poloniex Account, and informed the Debtors that they would have to
create a new Poloniex account in order to facilitate the transfer and recovery of those assets.  In
April 2023, the Debtors' cybersecurity advisors created a new Poloniex account for the Debtors
as requested.  However, Poloniex then raised for the first time several new roadblocks, claiming
that the Debtors would need to provide multiple additional forms of written documentation
proving their ownership of the assets in the Alameda Poloniex Account, as well as further
documentation regarding the authority of the Debtors' cybersecurity advisors to transfer these
assets.  Notwithstanding the seemingly arbitrary nature of these requests, the Debtors dutifully
provided everything requested by Poloniex, at which point Poloniex (like Huobi) stopped
responding and failed to cooperate further.  Other than one e-mail claiming that Poloniex was
undergoing an "internal restructuring," Poloniex has to date refused to respond further to the
Debtors' requests.  As a result, the Debtors have no choice but to seek judicial enforcement of

their rights underBy altering the Debtors' post-petition access to their property and locking assets that were freely accessible as of the Petition Date, Poloniex has acted to change the status quo in violation of the automatic stay under Section 362 of the Bankruptcy Code.

*    *    *

41.68.  Section 542(a) of the Bankruptcy Code mandates that "an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title . . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate."  11 U.S.C. § 542(a).

42.69.  The assets held in the Alameda Accounts at Huobi and Poloniex are property of the Debtors' estates pursuant to Section 541(a)(1) of the Bankruptcy Code, which defines "property of the estate" to include, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case," "wherever located and by whomever held." 11 U.S.C. § 541(a).[27]

43.70.  "Congress intended that property of the estate be broadly inclusive of all interests that the debtor has under state law."  *In re Barksdale*, 281 B.R. 548, 551 (Bankr. D.N.J. 2002). "[T]he Bankruptcy Code is not concerned with the 'technicalities of title' when it comes to determining property of the estate."  *In re NJ Affordable Homes Corp.*, 2006 WL 2128624, at *8 (Bankr. D.N.J. June 29, 2006) (cleaned up).  Instead, property belongs to the estate where the

---

[27]     In addition, insofar as Huobi and Poloniex qualify as custodians under Bankruptcy Code Section 543, they are obligated to "deliver to the [Debtors] any property of the [Debtors] held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case."  11 U.S.C. § 543(b).

30

debtor controls the property or otherwise indicates its "legal or equitable interests" in the property.  *E.g.*, *In re Schwartz*, 2014 WL 2621114, at *5 (Bankr. D.N.J. June 12, 2014) (holding that bank account not in debtor's name was nevertheless property of the estate where debtor funded account, showed "ownership, control, and interest" in account, and money "functionally belonged" to debtor).

44.71.  The letters that the Former Alameda Employee has submitted to Huobi, as well as the declarations executed by Caroline Ellison, the former CEO of Alameda, attached hereto as Exhibits 1 and 2, confirm that there is no bona fide dispute as to the Debtors' ownership of the assets in the Alameda Accounts.  The assets in the Alameda Accounts, valued at approximately $27.5 million as of the Petition Date, are not of inconsequential value or benefit to the estate.

72.    Moreover, by refusing to return the assets in the Alameda Accounts to the Debtors, Huobi and Poloniex are depriving the Debtors of the value of their property and have caused the Debtors to incur significant costs in seeking to secure those assets.  By refusing to process the Debtors' withdrawal requestsWhile the Debtors were able to freely access the Alameda Accounts pre-petition and withdraw, trade or otherwise manage their assets held therein, Huobi and Poloniex each altered the status quo ante by affirmatively disabling access to those accounts in response to the FTX Group's collapse.

73.    Upon information and belief, Huobi has further altered the status quo ante through numerous other post-petition actions that have devalued the Trust's assets held in the Alameda Huobi Account.  For example, in January 2024, Huobi implemented a conversion scheme that stripped Huobi Token ("HT") holders of virtually all economic and utility benefits tied to HT, and transferred those benefits to a newly created "HTX" token.  The HT-to-HTX conversion process also was available only for a limited period of time, and could be conducted only

through the Huobi exchange platform.  Because under the announced conversion process all functionalities and perks previously associated with HT were migrated to the HTX token, the price of HT precipitously declined—a ***more than 98% decline*** since the Petition Date—and HT holders that were able to access their Huobi accounts were effectively compelled to exchange their assets to preserve value.  The Debtors held several hundred thousand dollars' worth of HT in the Alameda Huobi Account as of the Petition Date, and Huobi's post-petition implementation of this "conversion" scheme combined with Huobi's improper disabling of access to the Alameda Huobi Account have caused substantial harm to the Trust.

45.74.  By disabling access in response to the FTX Group's collapse and these Chapter 11 Cases, Huobi and Poloniex flout one of the key purposes of the automatic stay:  "to prevent any creditor from becoming a self-determined arbiter of what constitutes property of the estate and what actions are permitted or prohibited by the stay."  *In re Johnson*, 548 B.R. 770, 787 (Bankr. S.D. Ohio, 2016); *see also Maritime Elec. Co., Inc*. v. *United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991) ("[T]he stay protects creditors by preventing particular creditors from acting unilaterally in self-interest . . . to the detriment of other creditors.").

**H.    Preferential Transfers Made by FTX.com to Hbit**

46.    Based on currently available information, during the Preference Period, Hbit received the benefit of certain withdrawals of digital assets and fiat currency from its FTX.com exchange account as set forth in Exhibit 3.  Based on pricing as of October 1, 2024, those assets are collectively valued at approximately $14,020,107.53.[28]  Those withdrawals constitute preferential transfers and are avoidable under Section 547 of the Bankruptcy Code.  FTX.com's

---

[28]    The Debtors are continuing to investigate the degree to which various accounts were actually controlled by the entities and individuals to which they were registered.

preference claim against Hbit may be subject, in part, to a "subsequent new value" defense in an amount to be determined arising from deposits into Hbit's FTX.com account subsequent to these preferential transfers.

### III.    Justin Sun, Through Orange Anthem, Engaged in Inequitable Conduct That Harmed Creditors

75.    Sun, through Orange Anthem, also sought to exploit the Debtors' financial distress shortly before the commencement of these Chapter 11 Cases.  As confidence in the FTX Group began to collapse, FTX.com halted withdrawals for most customers on November 8, 2022.  By November 9, 2022, it was widely understood by market participants, counterparties, and senior FTX Group management that the FTX Group was insolvent and that a bankruptcy filing was imminent absent receipt of emergency funding.  Sun sought to capitalize on the FTX Group's precarious financial condition and entered into discussions with Bankman-Fried concerning a limited liquidity arrangement focused exclusively on Sun-affiliated digital assets, including TRX (Tron token), HT, SUN (an eponymous token described as "a crucial component of the TRON DeFi"), JST (a platform token for "JUST," another Sun-branded Tron DeFi project) and BTT (BitTorrent Token, launched by the Tron Foundation and BitTorrent (yet another entity owned by Sun)).  On November 10, 2022, Sun's Tron Network Limited and FTX.com executed a letter of intent, pursuant to which Tron Network Limited would provide a "token facility" to facilitate withdrawals of TRX, BTT, JST, SUN, and HT from the FTX.com exchange.  Thereafter, Bankman-Fried announced that FTX.com had reached an agreement with Tron Network Limited to "establish a special facility to allow holders of TRX, BTT, JST, SUN, and HT to swap assets from FTX.com 1:1 to external wallets."  The announcement of the Tron Credit Facility immediately caused the prices of these Sun-linked tokens on the FTX.com exchange to spike by approximately 400%, on average.

76.     A draft "Token Loan Agreement" dated November 10, 2022 circulated between FTX and Tron Network Limited reflects that Tron Network Limited agreed to provide liquidity for the Sun-related tokens in the below amounts:

| Token | Amount |
|-------|--------|
| TRX | 161,500,751.00 |
| JST | 2,311,821.56 |
| BTT | 355,971,983,726.00 |
| SUN | 9,371,410.33 |
| HT | 404,099.55 |

Early on November 11, 2022, these Sun-related tokens were delivered to FTX.com through transfers to the Orange Anthem FTX Account customer account. Those token transfers represent substantially all of the Petition Date balance of the Orange Anthem FTX Account.

77.     Sun immediately exploited this agreement for his own benefit and to the detriment of FTX.com customers. On November 10, Sun publicly announced on social media that he would provide liquidity to holders of his tokens on FTX.com to facilitate withdrawals, backed by Huobi's "robust global infrastructure,"[29] later adding that trading had resumed on FTX.com for TRX, JST, SUN, HT, and BTT.

---

[29]     Justin Sun (@justinsuntron), X (Nov. 10, 2022, 4:30 AM), https://x.com/justinsuntron/status/1590637904770265089.



78.     During this brief window before the FTX Group commenced these Chapter 11 Cases on November 11, 2022, certain FTX.com customers were able to remove assets from the FTX.com platform, either because they already held Sun-affiliated tokens or because they converted other assets into Sun-affiliated tokens at substantial premiums in order to access the withdrawal corridor.

79.     By supplying "liquidity" that enabled only a select subset of customers to withdraw assets immediately prior to the Petition Date—while the vast majority of similarly situated customers' accounts remained frozen—Sun and Orange Anthem affirmatively facilitated a breakdown of creditor equality by providing preferential treatment unavailable to others who did not have tokens associated with Sun.  Creditors who attempted to convert their assets to Sun-related tokens did so at a substantial premium, ultimately reducing the amount of their holdings

shortly before the Petition Date.  Although styled as a "rescue" or "liquidity facility," the arrangement functioned as a selective exit mechanism, effectively reallocating estate value away from the general creditor body and toward Sun and his enterprises.

80.    By enabling asset withdrawals that otherwise would have remained property of the estate, Sun and Orange Anthem's conduct directly reduced the pool of assets available for pro rata distribution among creditors.  Moreover, Sun and Orange Anthem derived an unfair advantage by positioning themselves as the gatekeepers of the only viable withdrawal path, thereby enhancing economic leverage and their market positions while other creditors were left without recourse.

81.    Upon information and belief, Sun's publicized "rescue" scheme was not intended to benefit FTX.com creditors.  Rather, the scheme was designed to—and did—artificially inflate the prices of Sun-affiliated tokens by inducing a surge in demand on FTX.com, as creditors were forced to purchase those tokens as the sole apparent pathway to withdraw trapped assets.[30]

**CAUSES OF ACTION**

**COUNT ONE**
**TURNOVER CLAIM PURSUANT TO 11 U.S.C. § 542**
**(AGAINST DEFENDANTS SUN AND HUOBI)**

47.82.    Plaintiffs repeatPlaintiff repeats and reallege the allegations in paragraphs 1 through 4681 as if fully set forth here.

48.83.  As alleged above, Huobi continues to withhold the funds contained in the Alameda Huobi Account, which comprises assets of the Debtors' estates that are not of

---

[30]    See, e.g., Tom Carreras, *FTX and Tron Have Launched a Highly Suspicious Withdrawal Scheme*, Crypto Briefing (Nov. 10, 2022), https://cryptobriefing.com/ftx-and-tron-have-launched-a-highly-suspicious-withdrawal-scheme/.

inconsequential value.  ~~The Debtors seek~~Plaintiff seeks an order from the Court directing Sun and Huobi to turn over to the Debtors the assets in the Alameda Huobi Account, which are property of the Debtors' estates pursuant to Bankruptcy Code Section 541(a)(1).

49.84.  The relief requested also is authorized under the Court's equitable powers codified in section 105(a) of the Bankruptcy Code.  Pursuant to that section, this Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105(a).

**COUNT TWO**
**TURNOVER CLAIM PURSUANT TO 11 U.S.C. § 542**
**(AGAINST DEFENDANTS SUN AND POLONIEX)**

50.85.  ~~Plaintiffs repeat~~Plaintiff repeats and ~~reallege~~realleges the allegations in paragraphs 1 through 4684 as if fully set forth here.

51.86.  As alleged above, Poloniex continues to withhold the funds contained in the Alameda Poloniex Account, which comprises assets of the Debtors' estates that are not of inconsequential value.  The Debtors seek an order from the Court directing Sun and Poloniex to turn over to the Debtors the assets in the Alameda Poloniex Account, which are property of the Debtors' estates pursuant to Bankruptcy Code Section 541(a)(1).

52.87.  The relief requested also is authorized under the Court's equitable powers codified in section 105(a) of the Bankruptcy Code.  Pursuant to that section, this Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105(a).

**COUNT THREE**
~~FTX.COM PREFERENTIAL TRANSFERS~~
DISALLOWANCE OF CLAIMS **PURSUANT TO 11 U.S.C. §** ~~547(b~~502(d**)**
**(AGAINST** ~~HBIT~~DEFENDANTS SUN AND ORANGE ANTHEM**)**

~~53.~~88.   Plaintiffs repeatPlaintiff repeats and ~~reallege~~realleges the allegations in paragraphs 1 through ~~46~~87 as if fully set forth here.

~~54.      FTX.com made the transfers addressed herein during the Preference Period, as more specifically described in Exhibit 3.~~

~~55.      Each of the transfers was a transfer of property of FTX.com.~~

~~56.      Each of the transfers was made to the benefit of Hbit.~~

~~57.      With respect to each of the transfers, Hbit was a creditor of FTX.com (within the meaning of 11 U.S.C. § 101(10)), or, alternately, Hbit received such transfers for the benefit of a creditor or creditors of FTX.com.~~

~~58.      Each of the transfers was made on account of an antecedent debt, namely FTX.com's obligation to deliver to Hbit the cryptocurrency or cash balances in Hbit's FTX.com accounts.~~

~~59.      Each of the transfers was made within ninety days of the Petition Date.~~

~~60.      Each of the transfers was made while FTX.com was insolvent.~~

~~61.      Each of the transfers enabled Hbit to receive more than it would have received if: (i) FTX.com's Chapter 11 Case were a case under Chapter 7 of the Bankruptcy Code; (ii) the transfer had not been made; and (iii) the amount paid to Hbit on account of the debt were determined by the Bankruptcy Code.~~

~~62.      As of the date hereof, Hbit has not returned any of the transfers to FTX.com.~~

63.    Pursuant to 11 U.S.C. § 547(b), FTX.com has undertaken reasonable due diligence in the circumstances of the case and has taken into account known or reasonably knowable affirmative defenses and believes that the transfers are avoidable.

64.    Accordingly, these transfers should be avoided as preferences pursuant to Section 547(b) of the Bankruptcy Code, and FTX.com may recover from Hbit the full amount of the transfers, plus interest from the transfer dates, and costs and fees to the extent available, for the benefit of the Debtors' bankruptcy estates.

**COUNT FOUR**
**DISALLOWANCE OF CLAIMS PURSUANT TO 11 U.S.C. § 502(d)**
**(AGAINST ALL DEFENDANTS)**

65.    Plaintiffs repeat and reallege the allegations in paragraphs 1 through 46 as if fully set forth here.

66.89.  Defendants haveOrange Anthem/Sun filed claimsa claim (Claim No. 57284) in these Chapter 11 Cases totaling approximately $3012 million, including Claim Nos. 94681 and 57284 filed by Hbit and Orange Anthem, respectively.

67.90.  As alleged above, Huobi is an entityand Poloniex are entities from which property is recoverable under Section 542 of the Bankruptcy Code; Hbit is its affiliate under common ownership and control; and Hbit is transferee of transfers avoidable under Section 547 of the Bankruptcy Code.  Further, PoloniexSun operates an account on FTX.com through Orange Anthem.  The Orange Anthem FTX Account was opened in or around April 2022.  KYC materials submitted in connection with opening the Orange Anthem FTX Accountto FTX reflect that:  (i) at the time Orange Anthem was formed, its sole shareholder and director was Justin Sun; and (ii) source of wealth documentation stated that the funds for the Orange Anthem FTX Account would come from accounts at Binance (another cryptocurrency exchange) with e-mail addresses beginning "binancehedgepolo" followed by a string of numbers. that were nominally

owned by an entity called "Black Anthem Ltd.," which also had Sun as its sole shareholder and director; and (iii) Black Anthem Ltd. had a separate FTX.com customer account—also controlled by Sun—that was registered to "forpolo01@tron.network."  Upon information and belief, the references to "hedgepolo" refersand "forpolo" are references to the Poloniex exchange controlled by Justin Sun.  The Hbit FTX Account was opened in or around August 2021, and Huobi repeatedly has acknowledged to the Debtors that it controlled this account.Sun.

91.    As alleged above, Orange Anthem's Claim No. 57284 is based on the November 11, 2022 transfer of certain Sun-linked tokens to the Orange Anthem FTX Account as part of Sun's "rescue" scheme.  Sun also has publicly claimed that he is "one of the creditors of FTX."

68.92.  By reason of the foregoing facts and pursuant to Section 502(d) of the Bankruptcy Code, any claims of Defendants, or persons or entities affiliated with or controlled by Defendants, that have been or will in the future be asserted in these Chapter 11 Cases should be disallowed unless and until Defendants have relinquished to PlaintiffsPlaintiff the property held or transferred, or have paid PlaintiffsPlaintiff the value of such property, for which and to the extent that the Court has determined Defendants are liable pursuant to 11 U.S.C. §§ 542 or 550.

**COUNT FOUR**
**COUNT FIVE**
**VIOLATION OF THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(a)(3), (k)
(AGAINST DEFENDANTS SUN, HUOBI, AND POLONIEX)**

69.93.  Plaintiffs repeatPlaintiff repeats and reallegerealleges the allegations in paragraphs 1 through 4692 as if fully set forth here.

70.94.  Section 362(a)(3) of the Bankruptcy Code provides, in relevant part, that a petition "filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all

entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

95.     Prior to the FTX Group's collapse, Alameda maintained accounts on the Huobi and Poloniex exchanges, and had free and unfettered access to withdraw, trade and otherwise manage their assets held in those accounts. Only after—and because of—the FTX Group's collapse, Huobi and Poloniex took affirmative and intentional steps to alter the status quo ante by disabling the Debtors' ability to access those assets and their accounts. With respect to Poloniex, the Debtors in fact had maintained that same access for a brief period following the commencement of these Chapter 11 Cases, and were able to withdraw a portion of their assets from the Alameda Poloniex Account before Poloniex unilaterally disabled the Debtors' access to their assets in a clear violation of the worldwide automatic stay. And Huobi also has engaged in numerous other affirmative post-petition actions that have altered the status quo ante (and thus violated the automatic stay) by devaluing the Trust's assets held in the Alameda Huobi Account.

71.96.  The Debtors' assets in the Alameda Accounts comprise property of the Debtors' estates under Section 541 of the Bankruptcy Code. *See* 11 U.S.C. § 541(a)(1) (estate property is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case").

72.97.  Section 362(k) of the Bankruptcy Code permits an individual injured by a willful violation of the automatic stay to recover "actual damages, including costs and attorneys' fees, and, in appropriate circumstances, [to] recover punitive damages." *See* 11 U.S.C. § 362(k)(1). PlaintiffsPlaintiff respectfully submitsubmits that the above circumstances warrant both actual and punitive damages to be determined by the Court based on the depletion of estate assets, including any losses in value of the Debtors' assets in the Alameda Accounts.

**COUNT FIVE**
**EQUITABLE SUBORDINATION PURSUANT TO 11 U.S.C. § 510(C)**
**(AGAINST DEFENDANTS SUN AND ORANGE ANTHEM)**

98.    Plaintiff repeats and realleges the allegations in paragraphs 1 through [x] as if fully set forth here.

99.    By reason of the foregoing facts and pursuant to Section 510(c) of the Bankruptcy Code, the claim of Orange Anthem in the Chapter 11 Cases should be equitably subordinated to the claims of innocent creditors who were not harmed by Sun and Orange Anthem's inequitable conduct.

100.    Equitable subordination as requested herein is consistent with the provisions and purposes of the Bankruptcy Code.

**PRAYER FOR RELIEF**

WHEREFORE, ~~Plaintiffs~~Plaintiff respectfully ~~pray~~prays that this Court:

~~73.~~101.         Enter an order under 11 U.S.C. § 542 and 105(a) directing the turnover of assets held in the Alameda Accounts to ~~Debtor Alameda~~Plaintiff;

~~74.    Award Plaintiffs (a) the return of property to the Debtors' bankruptcy estates that is the subject of the avoidable preferential transfers alleged herein; or (b) monetary damages reflecting the applicable value in accordance with 11 U.S.C. § 550 of the avoidable preferential transfers alleged herein (plus the value of any additional avoidable transfers Plaintiffs learn, through discovery or otherwise, were made to Defendants);~~

~~75.~~102.         Enter an order under 11 U.S.C. § 502(d) disallowing any and all claims filed or held by ~~Defendants~~Sun and/or Orange Anthem in these Chapter 11 Cases unless and until Defendants relinquish to ~~Plaintiffs~~Plaintiff the amount ordered as an award for avoidable transfers and for property withheld;

42

76.103.         Enter an order under 11 U.S.C. § 362(k) awarding actual and punitive damages to Plaintiffs Plaintiff for Sun, Huobi, and Poloniex's violations of the automatic stay with respect to the assets in the Alameda Accounts;

104.    Enter an order under 11 U.S.C. § 510(c)(1) subordinating any and all claims filed or held by Sun and/or Orange Anthem in these Chapter 11 Cases to the claims of innocent creditor;

77.105.         Award Plaintiffs their Plaintiff its attorneys' fees, pre- and post-judgment interests, and costs of suit; and

78.106.         Award Plaintiffs Plaintiff all other relief, at law or equity, to which they it may be entitled.

Dated: ~~November 9, 2024~~January 7, 2026 **LANDIS RATH & COBB LLP**
Wilmington, Delaware

/s/ ~~Matthew B. McGuire~~ _Howard W. Robertson, IV_____

Adam G. Landis (No. 3407)
Richard S. Cobb (No. 3157)
Matthew B. McGuire (No. 4366)
Howard W. Robertson, IV (No. 6903)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
        ~~cobb@lrclaw.com~~
        ~~mcguire@lrclaw.com~~
        ~~robertson@lrclaw.com~~

-and-

**SULLIVAN & CROMWELL LLP**
~~Stephanie G. Wheeler (admitted _pro hac vice_)~~
Brian D. Glueckstein (admitted _pro hac vice_)
Justin J. DeCamp (admitted _pro hac vice_)
Christopher J. Dunne (admitted _pro hac vice_)
Jacob M. Croke (admitted _pro hac vice_)
Daniel P. O'Hara (admitted _pro hac vice_)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: ~~wheelers~~gluecksteinb@sullcrom.com
        ~~gluecksteinb@sullcrom.com~~
        decampj@sullcrom.com
        dunnec@sullcrom.com
        crokej@sullcrom.com


        oharad@sullcrom.com

_Counsel for the ~~Debtors~~_
_~~and Debtors-in-Possession~~FTX Recovery Trust_

44