## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,<br><br>                       Debtors. | Chapter 11<br><br>Case No. 22-11068 (KBO)<br><br>(Jointly Administered) |
| FTX RECOVERY TRUST,<br><br>                       Plaintiff,<br><br>- against -<br><br>HUOBI GLOBAL LTD., HTX LTD., ABOUT CAPITAL MANAGEMENT (HK) CO., LTD., DIGITAL LEGEND HODLINGS LTD., ORANGE ANTHEM LTD., and POLO DIGITAL ASSETS, LTD.,<br><br>                       Defendants. | Adv. Pro. No. 24-50219 (KBO) |

### BRIEF OF DEFENDANTS ABOUT CAPITAL MANAGEMENT (HK) CO., LTD. AND ORANGE ANTHEM LTD. IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT

**KIRK & INGRAM, LLP**
David E. Kirk (No. 7310)
43 West 43rd Street, Suite 279
New York, NY 10036
Telephone: (212) 859-3504
DKirk@kirkingram.com

*Counsel for Defendants About Capital Management (HK) Co., Ltd. and Orange Anthem Ltd.*

# **TABLE OF CONTENTS**

NATURE AND STAGE OF PROCEEDING ................................................................. 1

SUMMARY OF ARGUMENT .................................................................................... 2

ARGUMENT ............................................................................................................. 3

I.    LEGAL STANDARD ....................................................................................... 3

II.   PLAINTIFF'S PROPOSED AMENDMENT WOULD BE FUTILE AS TO
      ABOUT CAPITAL AND ORANGE ANTHEM ............................................... 4

      A.    The Proposed Amended Complaint Fails to State a Claim Against About Capital ... 4

      B.    The Proposed Amended Complaint Fails to Cure the Claim for Disallowance
            Against Orange Anthem ........................................................................... 7

      C.    The Proposed Amended Complaint Does Not Plausibly State a Claim for Equitable
            Subordination Against Orange Anthem ................................................... 10

III.  ABOUT CAPITAL AND ORANGE ANTHEM WOULD BE PREJUDICED BY
      PLAINTIFF'S UNDUE DELAY IN PURSUING AMENDMENT ............................ 13

CONCLUSION ......................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bayou Steel BD Holdings, L.L.C. v. Black Diamond Cap. Mgmt. L.L.C.*
 *(In re Bayou Steel BD Holdings, L.L.C.)*,
 2024 Bankr. LEXIS 2469 (Bankr. D. Del. Oct. 8, 2024) ........................................................ 14

*Burtch v. Seaport Capital, LLC (In re Direct Response Media, Inc.)*,
 466 B.R. 626 (Bankr. D. Del. 2012) ...................................................................................... 12

*Burtch v. Zachem (In re TZEW Holdco LLC)*,
 2023 Bankr. LEXIS 2306 (Bankr. D. Del. Sep. 19, 2023) ...................................................... 5

*City of Chi. v. Fulton*,
 592 U.S. 154 (2021) ............................................................................................................. 6, 7

*Cureton v. NCAA*,
 252 F.3d 267 (3d Cir. 2001) ................................................................................................... 13

*FBI Wind Down Inc. Liquidating Tr. v. All Am. Poly Corp. (In re FBI Wind Down, Inc.)*,
 581 B.R. 116 (Bankr. D. Del. 2018) ........................................................................................ 5

*Giuliano v. Fleming (In re Nobilis Health Corp.)*,
 661 B.R. 891 (Bankr. D. Del. 2024) ...................................................................................... 12

*In re Burlington Coat Factory Sec. Litig.*,
 114 F.3d 1410 (3d Cir. 1997) ................................................................................................... 3

*In re Denby-Peterson*,
 941 F.3d 115 (3d Cir. 2019) ..................................................................................................... 7

*In re Tyson*,
 433 B.R. 68 (S.D.N.Y. 2010) ......................................................................................... 8, 9, 10

*In re Walmart Inc. Sec. Litig.*,
 151 F.4th 103 (3d Cir. 2025) ...................................................................................... 3, 7, 8, 10

*Indem. Ins. Co. v. Integrated Health Servs. (In re Integrated Health Servs.)*,
 375 B.R. 730 (D. Del. 2007) .................................................................................................. 14

*Knox v. Lion/Hendrix Cayman Ltd. (In re John Varvatos Enters.)*,
 2021 U.S. Dist. LEXIS 171924 (D. Del. Sep. 10, 2021) .................................................. 12, 13

*MBIA Ins. Co. v. Tilton (In re Zohar III)*,
 2021 Bankr. LEXIS 1947 (Bankr. D. Del. July 23, 2021) ....................................................... 5

*Official Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs Credit Partners L.P.*
*(In re Fedders N. Am., Inc.)*,
405 B.R. 527 (Bankr. D. Del. 2009) ................................................................................................ 11

*Official Comm. of Unsecured Creditors of HH Liquidation, LLC v. Comvest Grp. Holdings, LLC*
*(In re HH Liquidation, LLC)*,
590 B.R. 211 (Bankr. D. Del. 2018) ........................................................................................... 10, 12

*Official Unsecured Creditors' Comm. of Broadstripe, LLC v. Highland Capital Mgmt., L.P.*
*(In re Broadstripe, LLC)*,
444 B.R. 51 (Bankr. D. Del. 2010) ................................................................................................ 11

*Riverside Acquisition Grp. LLC v. Vertis Holdings, Inc. (In re Vertis Holdings, Inc.)*,
536 B.R. 589 (Bankr. D. Del. 2015) .............................................................................................. 15

*Stanziale v. Richards, Layton & Finger, P.A. (In re EP Liquidation, LLC)*,
583 B.R. 304 (Bankr. D. Del. 2018) .............................................................................................. 14

*Tilton v. MBIA Inc. (In re Zohar III, Corp.)*,
639 B.R. 73, 91 (Bankr. D. Del. 2022) .................................................................................. 10, 11, 12

*Williams v. McGreevey (Touch Am. Holdings, Inc.)*,
401 B.R. 107 (Bankr. D. Del. 2009) ................................................................................................ 5

**Rules**

Fed. R. Civ. P. 15 ....................................................................................................................... 3

Fed. R. Civ. P. 12 ....................................................................................................................... 1

Fed. R. Bankr. P. 7012 ................................................................................................................. 1

Fed. R. Bankr. P. 7015.................................................................................................................. 3

## NATURE AND STAGE OF PROCEEDING

Plaintiff filed the Complaint in this adversary proceeding on November 9, 2024. ("Compl.," D.I. 1).  The Complaint named movants About Capital Management (HK) Co., Ltd. ("About Capital") and Orange Anthem Ltd. ("Orange Anthem") as defendants, among others.  The Complaint asserted claims for turnover, violation of the automatic stay, and disallowance against About Capital.  Compl. ¶¶ 47-49, 65-72.  It asserted a claim for disallowance against Orange Anthem.  Compl. ¶ 65-68.

On April 21, 2025, About Capital and Orange Anthem filed a Motion to Dismiss under Rule 12(b)(2) and Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, with About Capital seeking to dismiss the Complaint for lack of personal jurisdiction, and both movants seeking dismissal for failure to state a claim. ("Mot. to Dismiss," D.I. 28).

On December 8, 2025, the Court granted the Motion to Dismiss.  D.I. 61.  The Court declined to consider About Capital's jurisdictional arguments because it concluded that, whether or not there was personal jurisdiction, the Complaint failed to state a claim against either entity, and therefore dismissed all claims against them under Rule 12(b)(6).  *See* Dec. 8, 2025 Hearing Tr. at 53:18-54:2.  The Court allowed Plaintiff to seek leave to amend within 30 days.  D.I. 61.

On January 7, 2026, Plaintiff filed a Motion for Leave to Amend Complaint.  D.I. 65 ("Mot.").  About Capital and Orange Anthem hereby submit this opposition to Plaintiff's Motion with respect to the claims asserted against About Capital and Orange Anthem.  About Capital and Orange Anthem take no position as to Plaintiff's request for leave to amend the Complaint as to other defendants.

## SUMMARY OF ARGUMENT

In the Proposed Amended Complaint, Plaintiff serves up allegations against About Capital and Orange Anthem that fail to cure any of the pleading defects already identified by this Court. Plaintiff's proposed amendment should be denied as to its claims against About Capital and Orange Anthem for several reasons.

*First*, leave to amend should be denied because amendment would be futile, as the Proposed Amended Complaint once again fails to state any claim against About Capital or Orange Anthem. As to About Capital, Plaintiff's allegations repeat the same story—or lack of story—as the original Complaint. Plaintiff lists out alleged governance grievances concerning a number of different entities, but About Capital is not found among them. With no new allegations to support Plaintiff's conclusory assertion that About Capital operates as an alter ego of Justin Sun, Plaintiff's claims are no less defective this time around. Nor does Plaintiff fix the impermissible group pleading and legal errors that previously infected its claims.

The proposed amendment of Plaintiff's disallowance claim against Orange Anthem fares no better. Plaintiff once again fails to engage with the relevant English law principles applicable to the veil-piercing analysis. Those principles are fatal to Plaintiff's alter ego theory, because veil-piercing under English law requires far more than what Plaintiff has alleged, and horizontal veil-piercing is not permitted at all. That legal failing aside, Plaintiff's handful of new allegations about Orange Anthem, most of which were already included in exhibits Plaintiff previously submitted to the Court, do nothing to help Plaintiff's deficient alter ego theory.

Plaintiff's newly concocted claim for equitable subordination against Orange Anthem would likewise be futile. Equitable subordination is a rare remedy in all instances, and particularly for a non-insider. Rather than alleging fraud or similarly egregious conduct as required, Plaintiff merely describes arm's-length dealings between Orange Anthem and FTX that placed Orange

2

Anthem's assets at risk in the first instance. Plaintiff's purported dissatisfaction with these dealings does not remotely justify a claim for equitable subordination.

*Second*, leave to amend should be denied because Plaintiff has unduly delayed in amending the Complaint, with severe resulting prejudice to About Capital and Orange Anthem. Plaintiff could have amended in response to their Motion to Dismiss, which was filed nine months ago, but chose instead to oppose it with 260 pages of exhibits, many of which now form the basis for the Proposed Amended Complaint. Having made that tactical decision, Plaintiff should not be given the chance to amend now, particularly where doing so will subject all parties to needless burden and further delay Orange Anthem's recovery of its assets.

## ARGUMENT

### I.   LEGAL STANDARD

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, applied to this proceeding through Federal Rule of Bankruptcy Procedure 7015, Plaintiff may amend its Complaint "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Walmart Inc. Sec. Litig.*, 151 F.4th 103, 112 (3d Cir. 2025) (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)).

## II.    PLAINTIFF'S PROPOSED AMENDMENT WOULD BE FUTILE AS TO ABOUT CAPITAL AND ORANGE ANTHEM

### A.  The Proposed Amended Complaint Fails to State a Claim Against About Capital

The Proposed Amended Complaint does nothing to cure its failure to state a claim against About Capital, an entity that is barely mentioned in the proposed pleading.  Plaintiff suggests that the Proposed Amended Complaint should be permitted because it provides more allegations demonstrating that About Capital (along with various other entities) is an alter ego of Justin Sun and exists as a mere "legal fiction."  Mot. ¶¶ 12, 21.   But with respect to About Capital, the Proposed Amended Complaint lacks any such facts.

For instance, Plaintiff asserts generically that "Sun's entities failed to observe even the most basic corporate formalities," Mot. ¶ 14, and spends pages describing allegations regarding a host of entities *other than* About Capital, many of which are not parties to the case.  *See, e.g.*, Mot. ¶¶ 14, 16, 17, 19.   The cited allegations offer nothing concerning About Capital—no allegations about a nonfunctioning board, undercapitalization, abuse of its corporate form, or any fact to justify the extraordinary step of disregarding its corporate status.  With no new allegations regarding About Capital at all, the Proposed Amended Complaint plainly fails to meet the Court's directive.  *See* Dec. 8, 2025 Hearing Tr. 54:13-17 ("I would expect the factors that support alter-ego claims to be supported by facts that are alleged in the complaint and control and ownership is just one fact.  And in Delaware, we respect the corporate form, so you need more, okay?").[1]

Plaintiff's other grounds for amendment merely rehash the same erroneous legal arguments already addressed—and shown to be meritless—in About Capital's Motion to Dismiss.  Once again, Plaintiff groups About Capital within "Huobi" based on the conclusory and unsupported

---

[1] Further reinforcing the futility of amendment, Plaintiff improperly relies upon federal common law, which is not applicable to substantive alter ego analysis.  *See* Mot. to Dismiss Reply (D.I. 50), at 14-15 (explaining applicable choice of law rules).

assertion that the Huobi cryptocurrency exchange is "owned, controlled and operated by or through one or more of" several entities, including About Capital, that supposedly operate as a unified enterprise. *See* Mot. ¶ 22; Proposed Am. Compl. ¶¶ 21, 26. The Proposed Amended Complaint is otherwise silent regarding About Capital, relying exclusively and impermissibly on group pleading against "Huobi." As explained in About Capital's Motion to Dismiss, such group pleading is "anathema to contemporary pleading standards," *Burtch v. Zachem (In re TZEW Holdco LLC)*, 2023 Bankr. LEXIS 2306, at *8 (Bankr. D. Del. Sep. 19, 2023), and asserting that About Capital is part of an integrated enterprise requires specific factual support lacking here. *See* Mot. to Dismiss (D.I. 28), at 16-17. As such, labeling numerous entities "Huobi" cannot form the basis for Plaintiff's claims against About Capital. *See MBIA Ins. Co. v. Tilton (In re Zohar III)*, 2021 Bankr. LEXIS 1947, at *31 (Bankr. D. Del. July 23, 2021) (dismissing group-pleading claims).

As to its turnover claim, Plaintiff recycles its argument that About Capital is in possession of estate property because it is alleged to be one of several entities that collectively "operate" the Huobi exchange. Mot. ¶ 22. That argument was already refuted in About Capital's Motion to Dismiss, which explained that ownership or governance control does not equate to possession of an entity's assets. *See FBI Wind Down Inc. Liquidating Tr. v. All Am. Poly Corp. (In re FBI Wind Down, Inc.)*, 581 B.R. 116, 131 (Bankr. D. Del. 2018). *See also Williams v. McGreevey (Touch Am. Holdings, Inc.)*, 401 B.R. 107, 126 (Bankr. D. Del. 2009) ("It is well recognized that 'a corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary.'"); Mot. to Dismiss (D.I. 28), at 15-16. Plaintiff had no

answer to those arguments then, and it still offers none now.  Plaintiff should not be permitted to amend the Complaint to repeat unavailing arguments that have been briefed and rebutted.[2]

The Proposed Amended Complaint similarly fails to cure the legal defects in its claim for violation of the automatic stay.  That claim fails at the outset because About Capital—as opposed to "Huobi"—is not alleged to have taken any action whatsoever.  That problem aside, the law is clear that "mere retention of estate property" cannot form the basis for such a violation.  *City of Chi. v. Fulton*, 592 U.S. 154, 161 (2021).  As this Court recognized, the original Complaint alleged mere retention of estate assets, and so did not state a claim.  Dec. 8, 2025 Hearing Tr. at 53:4-9.

Plaintiff claims to have remedied this defect by now alleging that, after the petition was filed, Huobi "affirmatively disabl[ed] access" to the Debtors' assets.  Mot. ¶¶ 23-26; Proposed Am. Compl. ¶ 72.  That reframing does not help Plaintiff.  It is merely another way of saying that the Huobi exchange held on to estate property that it possessed before the petition.  Plaintiff's own allegations concede that the assets at issue were already in the possession, custody, or control of the Huobi exchange.  *See* Proposed Am. Compl. ¶¶ 68, 83 (demanding under Section 542 that "Huobi" turn over estate property in its possession, custody, or control).  If assets already were in the possession, custody, or control of the Huobi exchange pre-petition, then "affirmatively" prohibiting the Debtors from accessing those assets post-petition still amounts to inactionable mere retention.  *See, e.g., Fulton*, 592 U.S. at 161 (prohibiting debtors from accessing their vehicles did not violate automatic stay where vehicles were in defendant's possession prior to petition).

---

[2] Plaintiff's Proposed Amended Complaint omits certain information that supposedly was integral to the previous Complaint and was included in Plaintiff's 260 pages of exhibits submitted with its Opposition to the Motion to Dismiss.  Specifically, according to those exhibits, the stake in Huobi Global that About Capital allegedly purchased was acquired from Huobi's founder and from two venture capital funds, further underscoring that About Capital could only plausibly be viewed as standing in the shoes of previous investors—not as the exchange itself.  Pl. Opp. to Mot. to Dismiss Ex. 14 (D.I. 47-1), at 112 (describing 60% stake sold by Leon Li and combined 28% stake sold by Sequoia China and ZhenFund).

*In re Denby-Peterson* is instructive in this regard.  There, the Third Circuit reasoned:

> Accordingly, pre-bankruptcy petition, the creditors had possession and control of the [asset], and post-bankruptcy petition, the creditors merely passively retained that same possession and control.  *Although the creditors exercised control over the [asset] by keeping it in their possession* after learning of the bankruptcy filing, the requisite post-petition affirmative "act . . . to exercise control over" the [asset] is not present in this case.

*In re Denby-Peterson*, 941 F.3d 115, 126 (3d Cir. 2019) (emphasis added).  The same logic applies here.  Huobi is alleged to have possessed the assets in question pre-petition and halted the Debtors' access to them post-petition.  That act of "keeping [assets] in their possession" is inactionable.  *Id.*

Plaintiff also cannot fashion an automatic stay violation out of an allegation that tokens held by the estate declined in market value post-petition as a result of a conversion program.  *See* Mot. ¶ 25; Proposed Am. Compl. ¶ 73.  About Capital is not alleged to have had anything to do with the conversion or the change in market value, let alone to have affirmatively exercised control over the estate assets that purportedly were affected.  Accordingly, the allegations cannot sustain a claim against About Capital, and amendment would be futile.  *See In re Walmart*, 151 F.4th at 112.

## B. The Proposed Amended Complaint Fails to Cure the Claim for Disallowance Against Orange Anthem

Plaintiff's claim for disallowance against Orange Anthem was previously dismissed for failing to adequately allege an alter ego theory sufficient to warrant disregarding Orange Anthem's corporate form.  Plaintiff posits that it has now fixed its claim with new allegations showing that Orange Anthem is an alter ego of Sun, Poloniex, and Huobi.  *See* Mot. ¶¶ 12, 16, 18.  Not so.  Plaintiff's claim remains both legally and factually deficient.

First off, Plaintiff once again fails to engage with English law, which governs the substantive veil-piercing inquiry at issue.  *See* Mot. to Dismiss (D.I. 28), at 23-25; Mot. to Dismiss Reply (D.I. 50), at 14-15.  Under English law, such opportunities for veil-piercing are "vanishingly rare," requiring the subject to have "deliberately evade[d]" an "existing legal obligation or

liability" owed to the plaintiff by "interposing a company under [the subject's] control." *See* Mot. to Dismiss (D.I. 28), at 23-25 (compiling English law authorities).  As with the original Complaint, nothing of the sort is alleged here.  Moreover, Plaintiff's claim seeks to disallow Orange Anthem's claim due to Huobi's and Poloniex's alleged failures to turn over estate assets, based on the theory that they are all alter egos within Sun's control.  As previously explained, that form of horizontal veil-piercing is not recognized under English law, nor under Delaware law.  *See id.*  *See also* Mot. to Dismiss Reply (D.I. 50), at 14-15.  Accordingly, the claim fails as a matter of law for the reasons already briefed, notwithstanding Plaintiff's invocation of inapplicable federal common law.

Incurable legal defects aside, Plaintiff's new allegations concerning Orange Anthem would not move the needle.  Plaintiff now alleges that, as with Orange Anthem, Sun was the sole owner and director of an entity called Black Anthem Ltd., and that the assets of those entities were supposedly "interchangeable."  Mot. ¶ 16; Proposed Am. Compl. ¶¶ 44, 45, 90.  The original Complaint already alleged that Sun was the sole director and owner of Orange Anthem.  *See* Compl. ¶ 67.  Plaintiff already argued that Orange Anthem was a mere "façade" and "front company" for Sun.  *See* Pl. Opp. Br. (D.I. 46), at 23.  Plaintiff's new allegation that Sun also owned some other entity called Black Anthem, a nonparty not alleged to have any role in this proceeding, adds nothing pertinent to this litigation.  It certainly does not show that either entity was interposed "to evade or conceal existing legal obligations."  *In re Tyson*, 433 B.R. 68, 94 (S.D.N.Y. 2010) (applying English law).

These allegations do not stand up to scrutiny in any case.  Plaintiff's assertions concerning these entities' supposedly "interchangeable" nature are based on quoted email correspondence with FTX that Plaintiff already presented to the Court in its Opposition to the Motion to Dismiss.  *See* Pl. Opp. Ex. 28 (D.I. 47-1), at 242-47 (containing all quotations in Proposed Amended

8

Complaint ¶¶ 43-44).  That correspondence shows important context now omitted from Plaintiff's allegations.  In preparing Orange Anthem's account registration, FTX had asked questions to verify a minimum asset ownership level needed to meet a "[p]rofessional investor requirement."  D.I. 47-1 at 247.  It was *FTX's own* compliance department that stated that, for purposes of meeting the required asset level for professional investor status, Orange Anthem could be considered the owner of the Black Anthem assets in question, if Sun also was the sole shareholder of Black Anthem.  *Id.* at 243.  Plaintiff's allegation selectively quotes from that very sentence but omits that transformative detail.  *Compare* Proposed Am. Compl. ¶ 44 ("FTX replied that this did not prove 'that the company Orange Anthem Limited owns th[e] assets . . . .'") *with* D.I. 47-1, at 243 ("[FTX:]  It doesn't proof that the company 'Orange Anthem Limited' owns that assets, *unless Sun Yuchen also be the sole shareholder* of Black Anthem Ltd.") (emphasis added, errors in original).

In other words, it was FTX, rather than Sun or Orange Anthem, that made the suggestion Plaintiff now takes issue with—namely, that Orange Anthem could count Black Anthem's assets for purposes of satisfying a professional investor asset threshold.  These allegations do not support Plaintiff's inaccurate conclusion that Orange Anthem "insist[ed] that Sun's common ownership and control rendered the entities interchangeable."  Proposed Am. Compl. ¶ 44.  And they do not remotely suggest an abuse of the corporate form.  Accordingly, this already-presented information provides no support to Plaintiff's theory, as the Court anticipated.  *See* Dec. 8, 2025 Hearing Tr. at 54:9-10 ("[I]f [Plaintiff's exhibit set] is what is submitted with an amended complaint, it most likely will not pass muster.").

Finally, Plaintiff alleges that Sun attempted to "exploit the fiction of corporate separateness between himself and Orange Anthem for his own personal benefit" by making a Twitter post in which he referred to himself personally as an FTX creditor.  Mot. ¶ 18; Proposed Am.

Compl. ¶¶ 46-47. It is not clear what benefit Sun supposedly attempted to exploit by referring to himself personally as a claimant in a social media post, rather than referring to an entity that he wholly owns. In any case, this allegation does not suggest any evasion or concealment of existing legal obligations to support an alter ego finding. *See In re Tyson*, 433 B.R. at 94.

Plaintiff's allegations do not come close to salvaging Plaintiff's deficient alter ego theory and disallowance claim. Amendment would be futile. *See In re Walmart*, 151 F.4th at 112.

### C. The Proposed Amended Complaint Does Not Plausibly State a Claim for Equitable Subordination Against Orange Anthem

Unable to shape up its defective claim for disallowance, Plaintiff also seeks leave to amend to assert an equally defective claim against Orange Anthem for equitable subordination. That proposed amendment would be futile because the allegations do not satisfy the rigorous requirements for asserting such a claim.

"Equitable subordination is 'an extraordinary remedy which is applied sparingly.'" *Official Comm. of Unsecured Creditors of HH Liquidation, LLC v. Comvest Grp. Holdings, LLC (In re HH Liquidation, LLC)*, 590 B.R. 211, 298 (Bankr. D. Del. 2018) (quoting *In re Epic Capital Corp.*, 307 B.R. 767, 773 (D. Del. 2004)). For a non-insider such as Orange Anthem, "the circumstances supporting an equitable subordination claim are few and far between." *Tilton v. MBIA Inc. (In re Zohar III, Corp.)*, 639 B.R. 73, 91 (Bankr. D. Del. 2022) (quoting *U.S. v. State St. Bank & Tr. Co.*, 520 B.R. 29, 87 (Bankr. D. Del. 2014) (internal alterations omitted)). To plead equitable subordination against a non-insider, Plaintiff must allege "egregious conduct such as fraud, spoliation or overreaching." *See Official Unsecured Creditors' Comm. of Broadstripe, LLC v. Highland Capital Mgmt., L.P. (In re Broadstripe, LLC)*, 444 B.R. 51, 79 (Bankr. D. Del. 2010). And it must do so "with particularity." *Official Comm. of Unsecured Creditors of Fedders N. Am.,*

*Inc. v. Goldman Sachs Credit Partners L.P. (In re Fedders N. Am., Inc.)*, 405 B.R. 527, 554 (Bankr. D. Del. 2009).  Plaintiff's allegations do not come close to meeting that high bar.

Plaintiff alleges that, shortly before FTX filed for bankruptcy, FTX and nonparty Tron Network Limited engaged in a "token facility" transaction to facilitate FTX customers' withdrawals of certain tokens allegedly affiliated with Sun.  Proposed Am. Compl. ¶ 75.  According to Plaintiff, that facility was accomplished by Orange Anthem loaning tokens to FTX, thereby becoming a substantial creditor and claimant in the bankruptcy.  *See* Proposed Am. Compl. ¶ 76 (noting that the tokens transferred to FTX "represent substantially all of the Petition Date balance of the Orange Anthem FTX Account").  Plaintiff suggests that, by allowing FTX customers holding certain Sun-related tokens to withdraw their tokens, the arrangement "facilitated a breakdown of creditor equality" vis-à-vis customers who did not hold Sun-related tokens, Proposed Am. Compl. ¶ 79, and "directly reduced the pool of assets available for pro rata distribution among creditors."  Proposed Am. Compl. ¶ 80.

These allegations do not support the extraordinary remedy of equitable subordination. Nothing resembling fraud or similar egregious conduct is suggested.  Rather, the facts alleged merely reflect "armslength bargaining between highly sophisticated parties," which is not a valid basis for equitable subordination.  *In re Zohar III*, 639 B.R. at 114.  This is the case even if, as Plaintiff suggests, the transaction reduced the assets available to creditors.  *See id.* at 113 ("[T]he pursuit of one's legal rights, including the exercise of contractual rights, may not be grounds for equitable subordination even if the rights are exercised harshly and cause harm to other creditors.") (internal quotation marks omitted).

There is nothing inequitable about transacting with a debtor in financial distress, let alone anything so egregious as to support a claim of equitable subordination against a non-insider.  *See,*

*e.g.*, *In re HH Liquidation*, 590 B.R. at 299 (taking security interest while debtor was "in dire financial straits" did not warrant equitable subordination); *Giuliano v. Fleming (In re Nobilis Health Corp.)*, 661 B.R. 891, 922 (Bankr. D. Del. 2024) (dismissing equitable subordination claim where nothing was inherently inequitable about defendants' acquisition of claims against debtor); *Burtch v. Seaport Capital, LLC (In re Direct Response Media, Inc.)*, 466 B.R. 626, 661 (Bankr. D. Del. 2012) (dismissing equitable subordination claim where defendant "merely exercised its rights under [relevant agreements]"). Although FTX may now regret its decision to engage in these transactions with Orange Anthem, the facts alleged do not articulate "any inequitable conduct . . . let alone the sort of egregious behavior required of non-insiders." *In re Zohar III*, 639 B.R. at 97.

Nor do the allegations support Plaintiff's suggestion that Orange Anthem's conduct enhanced its position to the detriment of creditors. A claim for equitable subordination typically involves a defendant's conversion of an equity interest or unsecured debt into secured debt to "leap-frog over another creditor." *See Knox v. Lion/Hendrix Cayman Ltd. (In re John Varvatos Enters.)*, 2021 U.S. Dist. LEXIS 171924, at *16-17 (D. Del. Sep. 10, 2021). Here, Orange Anthem did the opposite. Plaintiff alleges that Orange Anthem put itself in harm's way by delivering tokens to FTX, thereby enabling FTX to allow some of its customers to make withdrawals of those tokens. Proposed Am. Compl. ¶¶ 75-78. Those tokens make up "substantially all" of Orange Anthem's claim against the estate. *See* Proposed Am. Compl. ¶ 76. In other words, had Orange Anthem done nothing, those customers would be estate creditors awaiting repayment, and Orange Anthem would still have its assets. Instead, it is Orange Anthem that is waiting to recover its assets from the estate, years later. On those facts, equitable subordination would be a nonsensical and profoundly *inequitable* outcome.

Plaintiff vaguely asserts that Orange Anthem nonetheless benefited unfairly because the transactions enhanced Orange Anthem's "economic leverage and . . . market position[]" and increased the value of Sun-related tokens.  Proposed Am. Compl. ¶¶ 80-81.  Putting aside the fact that the alleged transactions placed millions of dollars at risk for Orange Anthem, the amorphous economic leverage or token price increases Plaintiff points to do not establish any "harm related to [Orange Anthem's] position as a creditor," and therefore cannot justify a claim for equitable subordination.  *See In re John Varvatos*, 2021 U.S. Dist. LEXIS 171924, at *17.

Plaintiff's allegations do not come close to plausibly establishing the egregious conduct and resulting harm necessary to plead equitable subordination against a non-insider.  Accordingly, amendment to add this claim would be futile.

## III.    ABOUT CAPITAL AND ORANGE ANTHEM WOULD BE PREJUDICED BY PLAINTIFF'S UNDUE DELAY IN PURSUING AMENDMENT

Delay in seeking leave to amend becomes "undue" where it "plac[es] an unwarranted burden on the court" and becomes "prejudicial" where it "plac[es] an unfair burden on the opposing party." *Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir. 2001).  Plaintiff's undue delay will unfairly burden the Court and all parties.

Plaintiff commenced this adversary proceeding 14 months ago, in November 2024.  About Capital and Orange Anthem moved to dismiss 9 months ago, in April 2025.  Rather than seek leave to amend then, Plaintiff effectively granted itself that relief by submitting an opposition brief with 260 pages of accompanying exhibits in July 2025.  *See* D.I. 47-1.  That tactic forced About Capital and Orange Anthem to respond to Plaintiff's newly expanded record, and forced the Court to review it, just to have much of that same information later added to the Proposed Amended Complaint.  *See* Dec. 8, 2025 Hearing Tr. 25:13-17 ("THE COURT:  So, when you write an opposition and you cite things that are outside the complaint, you should just amend, right.  I mean,

I'm at a 12(b)(6). . . . I mean, it just seems like a waste of all our time."). Having already gone through that lengthy and burdensome process, granting leave to amend here would be both unnecessary and unjustified. *See Indem. Ins. Co. v. Integrated Health Servs. (In re Integrated Health Servs.)*, 375 B.R. 730, 736 (D. Del. 2007) (considering whether "the movant has had previous opportunities to amend a complaint, but chose not to do so").

Plaintiff's delay in asserting its alter ego theory is also unwarranted. The original Complaint contained zero references to "alter ego," yet Plaintiff's opposition to the Motion to Dismiss principally relied on alter ego theories. *See* Pl. Opp. Br. (D.I. 47). Plaintiff could have sought leave to amend to support that theory long ago. Similarly, Plaintiff's equitable subordination claim is based on alleged transactions with FTX from more than three years ago. *See* Proposed Am. Compl. ¶¶ 75-81 (describing November 2022 token facility). Plaintiff could have brought that claim together with the original Complaint, or even earlier, but instead waited until Orange Anthem's disallowance claim was *dismissed*, thereby further stretching out the timeline before Orange Anthem can recover its assets. These unjustified delays raise questions of a dilatory motive and are ample reason for denying leave to amend at this stage. *See, e.g.*, *Stanziale v. Richards, Layton & Finger, P.A. (In re EP Liquidation, LLC)*, 583 B.R. 304, 317-18 (Bankr. D. Del. 2018) (denying leave due to 13-month delay between original complaint and seeking leave to add new legal theories); *Bayou Steel BD Holdings, L.L.C. v. Black Diamond Cap. Mgmt. L.L.C. (In re Bayou Steel BD Holdings, L.L.C.)*, 2024 Bankr. LEXIS 2469, at *13 (Bankr. D. Del. Oct. 8, 2024) (denying leave to add claim that could have been asserted years earlier); *Riverside Acquisition Grp. LLC v. Vertis Holdings, Inc. (In re Vertis Holdings, Inc.)*, 536 B.R. 589, 613-14 (Bankr. D. Del. 2015) (denying leave to add new legal theories where party provided no justification for significant delay).

14

Plaintiff's tactical delay in seeking leave to amend will cause substantial prejudice.  Having already addressed Plaintiff's opposition brief and accompanying exhibits, the parties will be forced to brief another motion to dismiss concerning many of the same legal theories and allegations previously found wanting.  About Capital and Orange Anthem have already incurred significant cost and time in these proceedings so far.  Moreover, Orange Anthem, a creditor of the estate, has already waited years to recover its assets.  That delay was exacerbated by Plaintiff's legally defective and now-dismissed disallowance claim, which kept Orange Anthem's claim in limbo for another year.  The prejudice to Orange Anthem will be further amplified if Plaintiff is permitted to amend the Complaint against Orange Anthem and further delay the return of its assets.

## CONCLUSION

For the foregoing reasons, the motion for leave to amend should be denied as to About Capital and Orange Anthem.  The claims against them should be dismissed with prejudice, and Orange Anthem's claim upon the estate should be deemed allowed.

Dated:  January 21, 2026

Respectfully submitted,

/s/ David E. Kirk
**KIRK & INGRAM, LLP**
David E. Kirk (No. 7310)
43 West 43rd Street, Suite 279
New York, NY 10036
Telephone: (212) 859-3504
DKirk@kirkingram.com

*Counsel for Defendants About Capital Management (HK) Co., Ltd. and Orange Anthem Ltd.*

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of January 2026, I caused a true and correct copy of the foregoing document to be served upon all parties of record via CM/ECF, and the parties listed below by e-mail.

Dated:  January 21, 2026

/s/ David E. Kirk
David E. Kirk (No. 7310)

LANDIS RATH & COBB LLP
Adam G. Landis, Esq.
Richard S. Cobb, Esq.
Matthew B. McGuire, Esq.
Howard W. Robertson IV, Esq.
919 Market Street, Suite 1800
Wilmington, Delaware 19801
landis@lrclaw.com
cobb@lrclaw.com
mcguire@lrclaw.com
robertson@lrclaw.com

SULLIVAN & CROMWELL LLP
Stephanie G. Wheeler, Esq.
Brian D. Glueckstein, Esq.
Justin J. DeCamp, Esq.
Christopher J. Dunne, Esq.
Jacob M. Croke, Esq.
125 Broad Street
New York, NY 10004
wheelers@sullcrom.com
gluecksteinb@sullcrom.com
decampj@sullcrom.com
dunnec@sullcrom.com
crokej@sullcrom.com

*Attorneys for Debtors and Plaintiff FTX*
*Recovery Trust*

CAHILL GORDON & REINDEL LLP
Gregory Strong, Esq.
221 W. 10th Street, 3rd Floor
Wilmington, DE 19801
GStrong@cahill.com

Samson A. Enzer, Esq.
Tammy L. Roy, Esq.
Joel H. Levitin, Esq.
Gregory Mortenson, Esq.
32 Old Slip
New York, NY 10005
SEnzer@cahill.com
TRoy@cahill.com
JLevitin@cahill.com
GMortenson@cahill.com

*Attorneys for Digital Legend Hodlings Ltd.*

YOUNG CONAWAY STARGATT &
TAYLOR LLP
Jared W. Kochenash, Esq.
Matthew Barry Lunn, Esq.
Robert F. Poppiti, Jr., Esq.
1000 North King Street
Wilmington, DE 19801
jkochenash@ycst.com
mlunn@ycst.com
rpoppiti@ycst.com

PAUL HASTINGS LLP
Luc A. Despins, Esq.
Caroline Diaz, Esq.
Erez Gilad, Esq.
Kristopher M. Hansen, Esq.
John F. Iaffaldano, Esq.
Leonie C. Koch, Esq.
Samantha Martin, Esq.
Kenneth Pasquale, Esq.
Gabriel Sasson, Esq.
Isaac Sasson, Esq.
200 Park Avenue
New York, NY 10166
lucdespins@paulhastings.com
carolinediaz@paulhastings.com
erezgilad@paulhastings.com
krishansen@paulhastings.com
jackiaffaldano@paulhastings.com
leoniekoch@paulhastings.com
samanthamartin@paulhastings.com
kenpasquale@paulhastings.com
gabesasson@paulhastings.com
isaacsasson@paulhastings.com

Frank A. Merola, Esq.
1999 Avenue of the Stars, 27th Floor
Century City, CA 90067
frankmerola@paulhastings.com

KRAMER LEVIN NAFTALIS &
FRANKEL LLP
Kenneth H. Eckstein, Esq.
1177 Avenue of the Americas
New York, NY 10036
keckstein@kramerlevin.com
*Attorneys for Official Committee of Unsecured Creditors*

OFFICE OF THE U.S. TRUSTEE
Joseph James McMahon, Jr., Esq.
Benjamin A. Hackman, Esq.
Linda Richenderfer, Esq.
Office of the United States Trustee
844 King Street, Suite 2207
Lockbox 35
Wilmington, DE 19801
joseph.mcmahon@usdoj.gov
benjamin.a.hackman@usdoj.gov
Linda.Richenderfer@usdoj.gov

David Gerardi, Esq.
Office of the United States Trustee
One Newark Center
1085 Raymond Boulevard, Suite 2100
Newark, NJ 07102
David.Gerardi@usdoj.gov

*Attorneys for United States Trustee*