**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (KBO)<br><br>(Jointly Administered) |
| FTX RECOVERY TRUST,<br><br>Plaintiff,<br><br>- against -<br><br>HUOBI GLOBAL LTD., ABOUT CAPITAL MANAGEMENT (HK) CO., LTD., DIGITAL LEGEND HODLINGS LTD., HUOBI GLOBAL S.A., ORANGE ANTHEM LTD., POLO DIGITAL ASSETS, LTD., and YUCHEN “JUSTIN” SUN<br><br>Defendants. | Adv. Pro. No. 24-50219 (KBO) |

**REPLY BRIEF OF DEFENDANTS ABOUT CAPITAL MANAGEMENT (HK) CO., LTD., ORANGE ANTHEM LTD., AND JUSTIN SUN IN FURTHER SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

**KIRK & INGRAM, LLP**
David E. Kirk (No. 7310)
3411 Silverside Road, Suite 104B
Baynard Building
Wilmington, DE 19810
(302) 593-0650
DKirk@kirkingram.com

*Counsel for Defendants About Capital Management (HK) Co., Ltd., Orange Anthem Ltd., and Yuchen “Justin” Sun*

**TABLE OF CONTENTS**


PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 2

I. THE COURT LACKS PERSONAL JURISDICTION OVER ABOUT CAPITAL AND JUSTIN SUN ........ 2

A. Plaintiff Overstates the Effect of *Fuld* ........ 2

B. The Amended Complaint Fails to Establish Alter Ego Jurisdiction Over About Capital or Mr. Sun ........ 3

C. Plaintiff's Automatic Stay Claim Does Not Support Personal Jurisdiction Over About Capital or Mr. Sun ........ 6

D. Jurisdictional Discovery Should Be Denied ........ 7

II. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST THE MOVANTS ........ 8

A. Plaintiff Fails to Plausibly Allege Alter Ego Liability ........ 8

B. The Amended Complaint Fails to State a Turnover Claim ........ 11

C. The Amended Complaint Fails to State a Claim for Violating the Automatic Stay ........ 12

D. The Amended Complaint Fails to State a Claim for Disallowance ........ 13

E. The Amended Complaint Fails to State a Claim for Equitable Subordination ........ 14

CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Cases**

*3G Licensing, S.A. v. Lenovo Grp. Ltd.*,
2019 U.S. Dist. LEXIS 143453 (D. Del. Aug. 22, 2019) ....................7

*Bd. of Trs. v. Foodtown, Inc.*,
296 F.3d 164 (3d Cir. 2002) ....................6

*Burtch v. Masiz (In re Vaso Active Pharms., Inc.)*,
2012 Bankr. LEXIS 4741 (Bankr. D. Del. Oct. 9, 2012) ....................15

*Cent. States, Se. & Sw. Areas Pension Fund Reimer Express World Corp.*,
230 F.3d 934 (7th Cir. 2000) ....................8

*Charal Inv. Co. v. Rockefeller*,
131 F. Supp. 2d 593 (D. Del. 2001) ....................8

*City of Chi. v. Fulton*,
592 U.S. 154 (2021) ....................13

*Despins v. ACA Capital Grp. Ltd. (In re Kwok)*,
2025 Bankr. LEXIS 1000 (Bankr. D. Conn. Apr. 23, 2025) ....................9

*EAL Corp. v. European Organisation for the Safety of Air Navigation (In re EAL Corp.)*,
1994 U.S. Dist. LEXIS 20528 (D. Del. Aug. 3, 1994) ....................7

*Energy Marine Servs. v. DB Mobility Logistics AG*,
2016 U.S. Dist. LEXIS 7406 (D. Del. Jan. 22, 2016) ....................6

*FBI Wind Down Inc. Liquidating Tr. v. All Am. Poly Corp. (In re FBI Wind Down, Inc.)*,
581 B.R. 116 (Bankr. D. Del. 2018) ....................12

*FTX Recovery Tr. v. Binance Holdings Ltd. (In re FTX Trading Ltd.)*,
2026 Bankr. LEXIS 1856 (Bankr. D. Del. July 24, 2026) ....................6

*Fuld v. PLO*,
606 U.S. 1 (2025) ....................2,3

*Giuliano v. Fleming (In re Nobilis Health Corp.)*,
661 B.R. 891 (Bankr. D. Del. 2024) ....................14

*Gracey v. Albawardi*,
2024 Del. Ch. LEXIS 383 (Del. Ch. Dec. 13, 2024) ....................10

*Henderson v. Samuel Son & Co. USA Inc.*,
2025 U.S. Dist. LEXIS 114822 (C.D. Cal. Apr. 24, 2025) ....................11

*Highland CDO Opportunity Master Fund, L.P. v. Citibank, N.A.*,
270 F. Supp. 3d 716 (S.D.N.Y. 2017) ....................9

*In re Daya Meds., Inc.*,
560 B.R. 855 (Bankr. S.D. Fla. 2016) ....................13

*In re Denby-Peterson*,
941 F.3d 115 (3d Cir. 2019) ....................13

*In re Diisocyanates Antitrust Litig.*,
2026 U.S. Dist. LEXIS 17071 (W.D. Pa. Jan. 8, 2026) ....................3

*In re Glenn*,
677 B.R. 871 (Bankr. E.D. Pa. 2026) ....................12

*In re UAL Corp.*,
412 F.3d 775 (7th Cir. 2005) ....................13

*King v. Bon Charge*,
814 F. Supp. 3d 497 (D. Del. 2025) ....................3

*Klarchek Family Tr. v. Costello (In re Klarchek)*,
508 B.R. 386 (Bankr. N.D. Ill. 2014) ....................13

*Lehman Bros. Special Fin. Inc. v. Bank of Am. N.A. (In re Lehman Bros. Holdings)*,
535 B.R. 608 (Bankr. S.D.N.Y. 2015) ....................7

*Off. Comm. of Unsecured Creditors v. PSS S.S. Co. (In re Prudential Lines, Inc.)*,
928 F.2d 565 (2d Cir. 1991) ....................13

*POM Grp. Inc. v. Schedule A Defendants*,
2026 U.S. Dist. LEXIS 83981 (W.D. Pa. Apr. 16, 2026) ....................3

*S.A. v. Starwood Capital Grp. Glob. I LLC*,
2019 U.S. Dist. LEXIS 3625 (D. Del. Jan. 9, 2019) ....................6

*Sheehan v. Breccia Unlimited Co. (In re Sheehan)*,
48 F.4th 513 (7th Cir. 2022) ....................7

*Shuker v. Smith & Nephew, PLC*,
885 F.3d 760 (3d Cir. 2018) ....................7

*Sierra v. Trafigura Trading LLC*,
2024 U.S. Dist. LEXIS 144600 (D. Del. Aug. 14, 2024) ....6

*Stuart v. City of Scottsdale (In re Stuart)*,
632 B.R. 531 (B.A.P. 9th Cir. 2021) ....12

*Tilton v. MBIA Inc. (In re Zohar III, Corp.)*,
639 B.R. 73 (Bankr. D. Del. 2022) ....14,15

*Trs. of Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*,
332 F.3d 188 (3d Cir. 2003) ....4

*United States v. Noland*,
517 U.S. 535 (1996) ....15

*Walnut Creek Mining Co. v. Cascade Inv., LLC (In re Optim Energy, LLC)*,
527 B.R. 169 (D. Del. 2015) ....14

*Welded Constr., L.P. v. The Williams Cos. (In re Welded Constr., L.P.)*,
609 B.R. 101 (Bankr. D. Del. 2019) ....12

*Youkelsone v. Wash. Mut., Inc. (In re Wash. Mut., Inc.)*,
2010 Bankr. LEXIS 2453 (Bankr. D. Del. Aug. 13, 2010) ....8

**Rules**

Fed. R. Civ. P. 12 ....8

Fed. R. Civ. P. 15 ....8

## PRELIMINARY STATEMENT

After filing two complaints, two oppositions to motions to dismiss, and two voluminous sets of exhibits, Plaintiff still has not explained why it should be permitted to collapse the separate business dealings of Orange Anthem, which is a creditor of FTX, and the Huobi and Poloniex cryptocurrency exchanges, which allegedly possess assets of Alameda Research. Nor, in all those filings, has Plaintiff justified haling foreign persons into this Court to resolve those foreign disputes. Plaintiff's opposition confirms that the Amended Complaint should be dismissed for several reasons.

*First*, Plaintiff abandons its efforts to plead facts establishing this Court's jurisdiction over About Capital or Justin Sun. Instead, Plaintiff asserts that the Supreme Court's *Fuld* decision has done away with such requirements. That is contrary to both *Fuld* itself and to cases in this Circuit applying it. Plaintiff otherwise solely bases its case for personal jurisdiction on piercing the veil of Orange Anthem, an entity subject to this Court's jurisdiction only because it has submitted a claim upon the estate. But despite many pages of briefing and dozens of exhibits concerning other entities, Plaintiff still fails to meet the stringent requirements for showing that Orange Anthem is an alter ego of either About Capital or Mr. Sun. Nor can Plaintiff establish jurisdiction based on violations of the automatic stay, either as a matter of law or on these facts. Because Plaintiff's jurisdictional theory is legally defective, jurisdictional discovery would be of no use.

*Second*, Plaintiff fails to state a claim against any of the Movants. Plaintiff purports to abandon its legally impermissible horizontal veil-piercing theory, but instead just restates it in a more convoluted fashion. The Amended Complaint lacks facts to support a veil-piercing theory under applicable English law in any event. Without an alter ego theory, Plaintiff's claims fall apart. Neither About Capital nor Mr. Sun can be liable for turnover or violations of the automatic stay, as they are not alleged to have possessed or interfered with estate assets. Plaintiff's disallowance

claim fails, because without an alter ego, Orange Anthem is not subject to a turnover claim. Finally, while Plaintiff argues that equitable subordination is a fact-intensive inquiry, there are no facts suggesting that the token facility in dispute was anything other than an arm's-length transaction. The incurable defects in these claims warrant dismissal with prejudice.

## ARGUMENT

### I. THE COURT LACKS PERSONAL JURISDICTION OVER ABOUT CAPITAL AND JUSTIN SUN[1]

#### A. Plaintiff Overstates the Effect of *Fuld*

Movants' Opening Brief demonstrated that the Amended Complaint fails to establish a *prima facie* case for personal jurisdiction over About Capital or Mr. Sun under a traditional minimum contacts standard, or any "more flexible" standard that this Court may determine applies in the wake of *Fuld v. PLO*, 606 U.S. 1, 16 (2025). *See* Mot. at 8-12. In response, Plaintiff contends that *Fuld* merely requires showing "reasonableness" based on the burden to the defendant, the interests of the forum, and the interests of the plaintiff, and asserts that exercising personal jurisdiction over these foreign defendants would be reasonable despite their lack of ties to the United States. *See* Plaintiff's Brief in Opposition to Motion to Dismiss, Dkt. 82 ("Opp.") at 8-9.

Plaintiff misreads *Fuld*. *Fuld* did not limit this Court's due process inquiry to an assessment of those burdens and interests. The *Fuld* court expressly held that it "[did] not purport to delineate the outer bounds of the Federal Government's power, consistent with due process, to hale foreign defendants into U.S. courts." *Fuld*, 606 U.S. at 18. The court confined its analysis to the territorial limits of the PSJVTA—a statute addressing terrorist violence against U.S. nationals—and cautioned that it was "wary to reach further" and that "[g]reat care and reserve" should be taken in

[1] Terms not otherwise defined herein have the same meanings provided in Movants' Opening Brief in Support of Motion to Dismiss, Dkt. 81 ("Mot.").

extending jurisdictional concepts internationally. *Id.* at 18, 19. The court otherwise left it to the lower courts to determine the extent to which traditional jurisdictional analyses should be loosened.

In response to *Fuld*, courts in this Circuit have adopted a "cautious approach," using minimum contacts principles as a starting point. *See King v. Bon Charge*, 814 F. Supp. 3d 497, 506 (D. Del. 2025) (Bibas, J.); *POM Grp. Inc. v. Schedule A Defendants*, 2026 U.S. Dist. LEXIS 83981, at *10 (W.D. Pa. Apr. 16, 2026) (noting that *King* took a "'cautious' approach that did not stray too far from the traditional pre-*Fuld* analysis," and adopting "a similar approach"). *See, e.g.*, *In re Diisocyanates Antitrust Litig.*, 2026 U.S. Dist. LEXIS 17071, at *65-66 (W.D. Pa. Jan. 8, 2026) (post-*Fuld* dismissal for lack of personal jurisdiction). Plaintiff instead advocates for a near-maximalist theory in which defendants can be haled into this Court from across the globe if they have already retained counsel to defend themselves, and if litigating domestically would be convenient for the plaintiff or of some interest to the forum. *See* Opp. at 9. Nothing in *Fuld*, nor in this Circuit's post-*Fuld* cases, suggests that such an approach is warranted in any circumstance, let alone in a financial dispute between foreign entities. Plaintiff's approach should be rejected.

### B. The Amended Complaint Fails to Establish Alter Ego Jurisdiction Over About Capital or Mr. Sun

Tacitly conceding that its allegations otherwise fail to establish personal jurisdiction, Plaintiff's opposition focuses almost entirely on the notion that About Capital and Mr. Sun can nonetheless be subject to this Court's jurisdiction as alter egos of Orange Anthem, the only entity with an alleged relevant tie to the United States (which arises solely by virtue of its submission of a claim upon the estate). *See* Opp. at 10-17. Plaintiff's theory does not hold water.

**About Capital.** The Amended Complaint, like the original Complaint, contains no allegations tying About Capital to Orange Anthem, and so fails to establish an alter ego

relationship. *See* Mot. at 16-17. Plaintiff spends several pages discussing governance and corporate formalities at *other* entities, but does not mention About Capital a single time. *See* Opp. at 12-17. That is of no help to Plaintiff. Furthermore, Plaintiff cannot establish alter ego jurisdiction over About Capital without horizontal veil-piercing, which is unavailable under either English law or Delaware law. *See* Mot. at 17.

**Mr. Sun.** Plaintiff runs into similar problems with respect to Mr. Sun. Plaintiff contends that Orange Anthem is an alter ego of Mr. Sun because assets of another entity he allegedly owns, Black Anthem Ltd. ("Black Anthem"), were referenced when Orange Anthem's FTX account was being opened. Opp. at 13-14. The Opening Brief demonstrated that Plaintiff's theory relies on a mischaracterization of the relevant correspondence. *See* Mot. at 14-15. In response, Plaintiff quibbles that Movants' description of the exhibited document attempts to draw inferences in their favor. Opp. at 14 & n.4. Not so. The text of the document makes clear that the inference Plaintiff seeks to draw is unsupported. *See* Opp. Ex. 19 (Dkt. 83-1), at 253-54. Nowhere in that document do "personnel operating at Sun's direction argue[] that FTX should ignore any distinctions between these ostensibly different legal entities." *See* AC ¶ 45. Rather, FTX's own personnel stated that its customer onboarding process would consider the assets of both entities if they had the same "sole shareholder." *See* Opp. Ex. 19 (Dkt. 83-1), at 254; Mot. at 14.

Regardless, these allegations do not clear the bar under any potentially applicable law. If the Court applies English law, Plaintiff fails to allege that Orange Anthem was interposed to deliberately evade or frustrate an existing legal obligation. *Prest v. Petrodel Res. Ltd.*, [2013] UKSC 34 (Mot. Ex. A), at 18 ¶ 35; Mot. at 24. Similarly, if the Court instead applies federal common law, there is no allegation of "injustice or fundamental unfairness," as would be required to pierce Orange Anthem's corporate veil. *See Trs. of Nat'l Elevator Indus. Pension, Health*

*Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 194 (3d Cir. 2003); Mot. at 15. At bottom, what Plaintiff considers injustice is mere dissatisfaction with the fact that Orange Anthem had a creditor relationship with FTX, while Huobi and Poloniex purportedly had relationships with Alameda Research and held assets that belonged to it. *See* Opp. at 17; AC ¶¶ 57-58, 76. Orange Anthem is not plausibly alleged to be a part of "Huobi" or "Poloniex" or to have participated in any conduct related to them. The mere fact that they allegedly have a common owner, yet can maintain separate businesses and liabilities, is not an injustice. Rather, "that is what incorporation is all about." *Prest*, [2013] UKSC 34 (Mot. Ex. A), at 18 ¶ 34.

To distract from its lack of allegations, Plaintiff generically argues that "Sun abuses his personal control over Orange Anthem." *See* Opp. at 15. But rather than support that contention, Plaintiff's brief discusses irrelevant matters about other entities. *See, e.g.*, Opp. at 12 (discussing service agreements and corporate registrations concerning HTX Ltd., the HTX Platform, and Polo Digital Assets, Ltd., without reference to Orange Anthem or Mr. Sun); Opp. at 14-15 (summarizing irrelevant allegations concerning Tron Foundation Limited, BitTorrent Foundation Ltd., and Rainberry Inc.; irrelevant assertions concerning a settled SEC enforcement action against Poloniex in 2021; and an October 2025 foreign regulatory action concerning Huobi that did not implicate Mr. Sun); Opp. at 17 (contending that the Huobi exchange has been "used by scammers" or has failed to prevent criminal activities). Rhetoric aside, Plaintiff has alleged nothing more than ownership of Orange Anthem, which is not nearly enough to warrant veil-piercing.

Plaintiff's allegations otherwise fail to establish any relevant connection to the United States. They concern either foreign entities, including the "Huobi" and "Poloniex" entities, or entities not at issue in this case at all. That readily distinguishes this case from the Court's decision in *FTX v. Binance Holdings Limited.* There, the transaction at issue was "one in which the Binance

Defendants sold assets located in the United States[,] . . . negotiated with U.S. counsel and chose a form of payment that required the use of a New York trust. Then, the payment occurred on their own exchange operating substantially in the United States." *FTX Recovery Tr. v. Binance Holdings Ltd. (In re FTX Trading Ltd.)*, 2026 Bankr. LEXIS 1856, at *20 (Bankr. D. Del. July 24, 2026). Other alleged conduct was undertaken "for the purpose of (and with the result of) acquiring customers located in the United States." *Id.* at *21-22. Nothing comparable is alleged here.

Even if, counterfactually, allegations concerning entities other than Orange Anthem were jurisdictionally relevant, they still would not support an alter ego finding. *See* Opp. at 13. For instance, Plaintiff relies on *Compagnie des Grands Hotels d'Afrique S.A. v. Starwood Capital Grp. Glob. I LLC*, 2019 U.S. Dist. LEXIS 3625 (D. Del. Jan. 9, 2019). The alter ego allegations there included siphoning of funds, failure to maintain corporate formalities, insolvency, and a corporate façade. *Id.* at *9-12. Corporate formalities were lacking because one company's management team spoke on behalf of another company with respect to the contract at issue in the case. *Id.* at *9. That is a far cry from posting company updates on social media. *See* Opp. at 12 & Exs. 13-15. *See also Bd. of Trs. v. Foodtown, Inc.*, 296 F.3d 164, 172 (3d Cir. 2002) (allegations of commingled funds and domination and control of board of directors). Here, Plaintiff's mere allegations of ownership and control are insufficient, as the Court has previously concluded. *See* Dec. 8, 2025 Oral Arg. Tr., at 52:20-25. *See also* Mot. at 15; *Sierra v. Trafigura Trading LLC*, 2024 U.S. Dist. LEXIS 144600, at *32-34 (D. Del. Aug. 14, 2024); *Energy Marine Servs. v. DB Mobility Logistics AG*, 2016 U.S. Dist. LEXIS 7406, at *7-9 (D. Del. Jan. 22, 2016).

### C. Plaintiff's Automatic Stay Claim Does Not Support Personal Jurisdiction Over About Capital or Mr. Sun

Plaintiff attempts to bootstrap its deficient automatic stay claim into a basis for asserting personal jurisdiction over About Capital and Mr. Sun. Opp. at 18-20. That attempt falls short as

well. To begin with, Plaintiff has not plausibly alleged that About Capital or Mr. Sun exercised control over any estate assets or violated the automatic stay. *See infra* Point II.C; Mot. at 10-11.

Plaintiff's theory also fails as a matter of law, because an "alleged violation of the automatic stay cannot itself provide the basis for personal jurisdiction." *EAL Corp. v. European Organisation for the Safety of Air Navigation (In re EAL Corp.)*, 1994 U.S. Dist. LEXIS 20528, at *64 (D. Del. Aug. 3, 1994). Other courts are in accord. *See Sheehan v. Breccia Unlimited Co.* (*In re Sheehan*), 48 F.4th 513, 521-22 (7th Cir. 2022); *Lehman Bros. Special Fin. Inc. v. Bank of Am. N.A. (In re Lehman Bros. Holdings)*, 535 B.R. 608, 623-24 (Bankr. S.D.N.Y. 2015); Mot. at 11. Plaintiff provides no contrary authority, but instead speculates that "*Sheehan* cannot survive *Fuld*." Opp. at 19. That suggestion is based solely on an *amicus* brief submitted in *Fuld* that advocated for a maximalist approach to personal jurisdiction unbounded by due process limitations.[2] But *Fuld* rejected such an approach, and endorsed a cautious one instead. *See supra* Point I.A. Thus, *Sheehan* remains good law.

**D. Jurisdictional Discovery Should Be Denied**

"[T]he Third Circuit has repeatedly indicated that if a plaintiff fails to make out a *prima facie* showing, a grant of jurisdictional discovery would not be appropriate." *3G Licensing, S.A. v. Lenovo Grp. Ltd.*, 2019 U.S. Dist. LEXIS 143453, at *23-24 (D. Del. Aug. 22, 2019) (noting that in the Third Circuit, there were "no" situations in which a plaintiff can be "entitled to jurisdictional discovery if it has not made out a *prima facie* showing of personal jurisdiction"), *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 225793 (D. Del. Sep. 19, 2019). *Compare Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781 (3d Cir. 2018) (cited at Opp. at 21)

---

[2] *See* Brief of Professor Stephen E. Sachs as *Amicus Curiae* in Support of Petitioners, *Fuld*, 606 U.S. (Nos. 24-20, 24-151), at 17-20 (asserting that there is no significant role for the Fifth Amendment to play in federal jurisdictional doctrine), *available at* https://www.supremecourt.gov/DocketPDF/24/24-20/341970/20250204175604486_Nos.%2024-20%2024-151%20Amicus%20Brief.pdf.

(permitting jurisdictional discovery where plaintiff's "factual allegations regarding [the defendant], if viewed in isolation, *suffice[d]* to make a *prima facie* showing of personal jurisdiction") (emphasis added). Moreover, as a matter of comity, "[f]oreign nationals usually should not be subjected to extensive discovery in order to determine whether personal jurisdiction over them exists." *Cent. States, Se. & Sw. Areas Pension Fund Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000). Plaintiff has failed to make out a *prima facie* case as to either About Capital or Mr. Sun, and its alter ego theory relies on mere ownership and control, which is deficient as a matter of law. Jurisdictional discovery will not fix that defect, and should be denied.

## II. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST THE MOVANTS[3]

### A. Plaintiff Fails to Plausibly Allege Alter Ego Liability

Plaintiff's opposition confirms that its alter ego liability theory is legally unsalvageable. *See* Opp. at 22-25. Hoping to avoid applicable foreign law, Plaintiff suggests that choice-of-law issues need not be decided at the motion to dismiss stage, or that it would be simpler for the Court to apply Delaware law. Opp. at 23. Not so. "Delaware's choice-of-law rules require a court sitting in Delaware to look to a company's state of incorporation to determine the relationship between the corporate entity and its shareholders." *Youkelsone v. Wash. Mut., Inc. (In re Wash. Mut., Inc.)*, 2010 Bankr. LEXIS 2453, at *30 (Bankr. D. Del. Aug. 13, 2010) (applying Washington state law to veil-piercing analysis on motion to dismiss). *See* Mot. at 23. Plaintiff's cited authorities do not overcome that rule, as they rely on inapplicable choice of law rules from different states. *See* Opp.

[3] Plaintiff argues that the Amended Complaint has survived the Rule 12(b)(6) standard because leave to amend was granted. Opp. at 21-22. Plaintiff is incorrect. Leave to amend should freely be given when justice so requires. Fed. R. Civ. P. 15(a)(2). Although a Court may deny leave where amendment would be futile, it is not required to do so, and granting leave to amend is not an endorsement that the amendment is not futile. *See Charal Inv. Co. v. Rockefeller*, 131 F. Supp. 2d 593, 601 (D. Del. 2001) ("[I]t is clear that this court was under no obligation to apply the futility standards in deciding whether to grant plaintiffs' motion for leave to amend their complaint.").

at 23-24 (citing *UBS Sec. LLC v. Dondero*, 2025 NY Slip Op 31115(U), 24 (N.Y. Sup. Ct.) (applying New York choice of law analysis); *Highland CDO Opportunity Master Fund, L.P. v. Citibank*, N.A., 270 F. Supp. 3d 716, 725 (S.D.N.Y. 2017) (same); *Despins v. ACA Capital Grp. Ltd. (In re Kwok)*, 2025 Bankr. LEXIS 1000, at *21 (Bankr. D. Conn. Apr. 23, 2025) (applying Connecticut choice of law rules and federal common law to jurisdictional veil-piercing inquiry)).

Regardless, Plaintiff's alter ego claims fail because neither applicable English law, nor Delaware law, supports horizontal veil-piercing. Mot. at 17, 24. Hoping to avoid this outcome, Plaintiff says that "liability flows up to [Mr.] Sun." Opp. at 25. That attempted reframing does not help Plaintiff. For Orange Anthem or About Capital to be liable for turnover, automatic stay, or disallowance claims, liability would need to flow not only "up to [Mr.] Sun," Opp. at 25, but then back down from Mr. Sun to Orange Anthem and About Capital. That is merely another way of attempting to impose impermissible horizontal veil-piercing on sibling entities.

That threshold problem aside, the allegations would not support veil-piercing in any event:

**Orange Anthem.** Plaintiff does not plead a plausible case for veil-piercing under applicable English law. Mot. at 24-26. Plaintiff acknowledges that, under English law, a controller must deliberately interpose a company to evade or frustrate an existing legal obligation. Opp. at 24. The Amended Complaint does not allege that Orange Anthem was interposed to evade or frustrate any existing liability. Rather, Orange Anthem had a contractual relationship with FTX, while "Huobi" entities allegedly had unrelated contractual relationships with Alameda. *See* Mot. at 24-25. Plaintiff offers no response, instead repeating allegations about "Huobi" and "Poloniex" entities that do not concern Orange Anthem. Opp. at 24-25. That gets Plaintiff nowhere.

**About Capital.** As to About Capital, Plaintiff alleges even less. Mr. Sun is not alleged to be an owner or director of About Capital. All that the Amended Complaint offers is a vague

allegation that Mr. Sun "acquired control of Huobi and its affiliates through Defendants About Capital and Digital Legend," and an information-and-belief allegation that Mr. Sun "exercises control over About Capital." AC ¶¶ 5, 21. Those scant allegations do not plausibly suggest that About Capital is an alter ego of Mr. Sun either.[4]

Even if the Court determined that Delaware law applied to either entity, the result would be no different. Horizontal veil-piercing is unavailable under Delaware law. Mot. at 17. Nor would the allegations support imposing liability "downward" from Mr. Sun to Orange Anthem or About Capital. Doing so would require reverse veil-piercing, which "is even more elusive and 'sanctioned only in the most exceptional circumstances.'" *Gracey v. Albawardi*, 2024 Del. Ch. LEXIS 383, at *8 (Del. Ch. Dec. 13, 2024) (dismissing reverse veil-piercing claim asserted downward against subsidiaries). Nothing in the Amended Complaint justifies invoking this extraordinary measure against About Capital or Orange Anthem. Thus, under any potentially applicable law, Plaintiff fails to allege a plausible alter ego theory as to these entities.

**Mr. Sun.** That leaves Plaintiff's theory that Mr. Sun is subject to liability based on the vague assertion that he "acquired the [Huobi] exchange and interposed his convoluted corporate structure." Opp. at 24. Assuming that Plaintiff is seeking to pierce the veil of certain "Huobi" entities and impose their alleged liabilities upwards on Mr. Sun, the Amended Complaint does not allege nearly enough to do so, for the reasons set forth above. *See supra* Point I.B. Purported governance concerns, regulatory inquiries, and social media posts—including numerous

[4] Should the Court follow Hong Kong law rather than English law as to About Capital, Hong Kong law considers English law to be persuasive as to alter ego issues. *See Winland Enters. Grp. Inc. v. WEX Pharmaceuticals Inc.*, H.K.C.A.C.V. 154/2011, at ¶¶ 50, 54 (reaffirming English law principles of corporate separateness under *Salomon v. A. Salomon & Co., Ltd.*, [1897] A.C. 22 (H.L.), and noting that a Hong Kong court "will lift the corporate veil of a company if it is a façade or a puppet of the parent company used to perpetrate fraud or evade legal obligation and liability"), *available at* https://legalref.judiciary.hk/lrs/common/ju/ju_frame.jsp?DIS=81049.

allegations concerning entities not at issue in this litigation—do not plausibly allege an alter ego relationship, particularly in the absence of any allegations concerning undercapitalization, siphoning funds, or insolvency. And fatally missing from these allegations is any aspect of fraud or injustice vis-à-vis Mr. Sun's purported control of these entities. Boiled down, the Amended Complaint alleges that Mr. Sun owned Poloniex and purchased an ownership interest in Huobi entities in September 2022, two months before FTX collapsed, and further alleges that those entities hold assets of Alameda Research. AC ¶¶ 5-6, 59-67. The fact that Mr. Sun separately owned Orange Anthem, an FTX creditor now seeking to recover its own assets, is not an injustice. It is a basic application of corporate separateness, which courts rightly respect. *See* Dec. 8, 2025 Oral Arg. Tr., at 54:16-17 ("And in Delaware, we respect the corporate form, so you need more[.]").

Plaintiff contends that it should still be permitted to take discovery into "how Defendants' internal control structure actually worked." Opp. at 25. That does not justify maintaining this case against Movants. Plaintiff's sole, out-of-circuit authority is inapposite. *See Henderson v. Samuel Son & Co. USA Inc.*, 2025 U.S. Dist. LEXIS 114822, at *9 (C.D. Cal. Apr. 24, 2025). That case concerned two potential employer entities that jointly operated a business and had merged. *Id.* The Court allowed claims to proceed against both defendants under a joint employer doctrine. *Id.* Plaintiff here seeks not only to proceed against the supposedly interconnected entities, but against their alleged owners, and against Orange Anthem, an entity alleged only to have an owner in common. That expansive redefining of alter ego liability should be rejected as a matter of law.

**B. The Amended Complaint Fails to State a Turnover Claim**

Having failed to state a viable alter ego theory, Plaintiff cannot maintain a turnover claim against About Capital or Mr. Sun because it does not allege that they themselves possess any estate assets. Mot. at 18-19. Plaintiff tacitly concedes as much, but instead contends that it can use sweeping "group pleading" because various unspecified "Huobi" entities are "intertwined." Opp.

at 26 & n.8. That contention ignores the nature of Plaintiff's own allegations concerning Mr. Sun and About Capital. Plaintiff alleges that About Capital is an equity owner that supposedly purchased an interest in "Huobi" through "Huobi Global and other related entities." AC ¶ 21. Thus, the only allegation specific to About Capital—an ownership interest in other entities—runs headlong into the principle that "a parent who only maintains ownership or corporate governance control over a subsidiary, but no legal title to a subsidiary's assets, does not have control of the subsidiary's assets." *FBI Wind Down Inc. Liquidating Tr. v. All Am. Poly Corp.* (*In re FBI Wind Down, Inc.*), 581 B.R. 116, 131 (Bankr. D. Del. 2018). Plaintiff's turnover claim against Mr. Sun is even more attenuated, as he is only alleged to be an indirect owner and controller of the entities collectively referred to as "Huobi." AC ¶ 30. Consequently, the turnover claim fails.

**C. The Amended Complaint Fails to State a Claim for Violating the Automatic Stay**

The Amended Complaint fails to allege that About Capital or Mr. Sun participated in any conduct violating the automatic stay. Mot. at 20. Plaintiff's opposition makes no attempt to show otherwise, instead relying on its failed alter ego premise. *See* Opp. at 28. Thus, just as About Capital and Mr. Sun cannot be responsible for turning over the assets of other entities, they cannot be held liable for purported violations of the automatic stay by entities that they allegedly own.

The alleged facts would not support an automatic stay claim in any event. Plaintiff contends that "Huobi" disabled access and refused to return Plaintiff's account balance after the petition was filed, Opp. at 28, but fails to engage with Movants' cited authorities that a refusal to release frozen accounts or remit payments does not violate the automatic stay. *See* Mot. at 21; *Stuart v. City of Scottsdale (In re Stuart)*, 632 B.R. 531, 542 (B.A.P. 9th Cir. 2021); *Welded Constr., L.P. v. The Williams Cos.* (*In re Welded Constr., L.P.*), 609 B.R. 101, 127 (Bankr. D. Del. 2019). Instead, Plaintiff cites an authority in which a creditor used a "kill switch" to disable a vehicle that was in *the petitioner's* possession. *In re Glenn*, 677 B.R. 871, 879 (Bankr. E.D. Pa. 2026).

The circumstance at hand is closer to *In re Denby-Peterson* than *In re Glenn*. In *In re Denby-Peterson*, although the defendant "exercised control" by retaining possession of estate assets post-petition and refusing to allow their return, such retention did not violate the automatic stay. *See In re Denby-Peterson*, 941 F.3d 115, 126 (3d Cir. 2019). Here, the alleged estate property was held by "Huobi." Refusing to provide "access" to reclaim those assets after the petition is a mere repackaging of Plaintiff's failed theory that Huobi refused to return them. *See* Mot. at 21.

Using inapposite authorities, Plaintiff also attempts to cobble together an automatic stay violation out of a decline in the value of HT tokens. Opp. at 28. That attempt fares no better. *In re Prudential Lines* involved taking a worthless stock deduction, after which the estate "would not be entitled to any [net operating loss] carryforward" as a matter of tax law, thereby directly affecting the debtor's legal rights. *Off. Comm. of Unsecured Creditors v. PSS S.S. Co. (In re Prudential Lines, Inc.)*, 928 F.2d 565, 574 (2d Cir. 1991). *See also Klarchek Family Tr. v. Costello* (*In re Klarchek*), 508 B.R. 386, 397 (Bankr. N.D. Ill. 2014) (dissolution affecting estate's legal interests violated automatic stay); *In re Daya Meds., Inc.*, 560 B.R. 855, 864 (Bankr. S.D. Fla. 2016) (attempts to legally assign intellectual property belonging to estate violated automatic stay).

Here, in contrast, Plaintiff's legal rights with respect to its tokens were never affected; the tokens simply lost functionality and declined in price during the time that Huobi passively retained possession of them. That is not an actionable exercise of control over property. *See City of Chi. v. Fulton*, 592 U.S. 154, 158 (2021). *See also In re UAL Corp.*, 412 F.3d 775, 779 (7th Cir. 2005) (distinguishing *In re Prudential* as involving "control (or consumption) of a loss carry-forward" and finding no equivalent control over estate property in an investor's detrimental sale of stock).

**D. The Amended Complaint Fails to State a Claim for Disallowance**

Because no turnover claim has been asserted against Orange Anthem, Plaintiff's disallowance claim hinges solely on its theory that Orange Anthem is Mr. Sun's alter ego. *See*

Opp. at 27. But as explained above, Plaintiff has failed to allege an alter ego relationship under applicable English law. *See supra* Point II.A. Orange Anthem opened an account on the FTX exchange, while Alameda separately opened accounts on the Huobi and Poloniex exchanges. Mot. at 25-26. Imposing responsibility on Orange Anthem for Huobi's and Poloniex's alleged obligations would result in Orange Anthem "being held liable as if [it] had been a co-contracting party" merely because they share an owner in common. *VTB Cap. plc v. Nutritek Int'l Corp.*, [2013] UKSC 5 (Mot. Ex. D), at 42 ¶ 132. Such an outcome would be an "illegitimate extension of the circumstances in which the veil can be pierced." *See id.* at 45 ¶ 143.

**E. The Amended Complaint Fails to State a Claim for Equitable Subordination**

The Amended Complaint fails to establish the required elements of an equitable subordination claim. Mot. at 26-30. Grasping to salvage its claim, Plaintiff suggests that equitable subordination is a fact-intensive inquiry difficult to resolve on a motion to dismiss. Opp. at 29. But this Court often dismisses equitable subordination claims where the allegations fail to meet their difficult pleading burden. *See, e.g.*, *Tilton v. MBIA Inc.* (*In re Zohar III, Corp.*), 639 B.R. 73, 117 (Bankr. D. Del. 2022) (dismissing equitable subordination claim); *Walnut Creek Mining Co. v. Cascade Inv., LLC (In re Optim Energy, LLC)*, 527 B.R. 169, 178 (D. Del. 2015) (same); *Giuliano v. Fleming* (*In re Nobilis Health Corp.*), 661 B.R. 891, 921-22 (Bankr. D. Del. 2024) (same).

Alleging that an outsider acted inequitably requires showing "egregious" conduct, but the Amended Complaint alleges only that Orange Anthem provided assets through a token facility that was negotiated while FTX was in financial distress. Mot. at 27-29. Plaintiff contends that whether the token facility was an arm's-length transaction cannot be resolved on the pleadings. Opp. at 29. That is incorrect. It is undisputed that Orange Anthem and Mr. Sun were not insiders, and the allegations do not plausibly support the conclusion that the transaction was anything other than

arm's-length. *Compare Burtch v. Masiz (In re Vaso Active Pharms., Inc.)*, 2012 Bankr. LEXIS 4741, at *62 (Bankr. D. Del. Oct. 9, 2012) (finding a "genuine issue of material fact as to whether negotiations were conducted at arms' length"), *with In re Zohar III*, 639 B.R. at 95, 117 (dismissing claim where there were no plausible allegations of a non-arm's length relationship).

Plaintiff also fails to plausibly allege an injury to creditors. Plaintiff vaguely says that Orange Anthem and Mr. Sun "extracted unfair leverage as gatekeepers of the only withdrawal path," Opp. at 29, but does not explain what leverage they extracted or how doing so unfairly benefited them as creditors. No such explanation exists, because as Plaintiff's own allegations concede, the token facility *added* liquidity to the estate and put Orange Anthem's assets in harm's way. Plaintiff argues that "victims were forced to convert assets," Opp. at 29, but that is not what is alleged. The token facility provided a voluntary opportunity to withdraw Sun-affiliated tokens, because those were the tokens that Orange Anthem provided. *See* AC ¶¶ 76-78. The allegations do not plausibly establish that any creditor's standing was worsened by the creation of the token facility.

Subordinating Orange Anthem's claim would not be consistent with the Bankruptcy Code. Mot. at 29-30. Plaintiff has not pointed to a single circumstance in which an outsider, non-creditor entered into an arm's-length transaction, only to have its claim subordinated to other creditors because the estate is now dissatisfied with the purported terms of that transaction. Plaintiff's rhetoric notwithstanding, the opposition fails to identify *how* the claim position of Orange Anthem produces inequality vis-à-vis any other creditor. *See* Opp. at 30. Merely repeating the word "inequality" does not suffice. *See* Mot. at 30; *United States v. Noland*, 517 U.S. 535, 539 (1996).

**CONCLUSION**

For the foregoing reasons, the claims against Mr. Sun, About Capital, and Orange Anthem should be dismissed with prejudice. Further amendment should not be permitted.

Dated: August 13, 2026

Respectfully submitted,

/s/ *David E. Kirk*
**KIRK & INGRAM, LLP**
David E. Kirk (No. 7310)
3411 Silverside Road, Suite 104B
Baynard Building
Wilmington, DE 19810
(302) 593-0650
DKirk@kirkingram.com

*Counsel for Defendants About Capital Management (HK) Co., Ltd., Orange Anthem Ltd., and Yuchen "Justin" Sun*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of August, 2026, I caused a true and correct copy of the foregoing document to be served upon all parties of record via CM/ECF, and the parties listed below by e-mail.

Dated: August 13, 2026

/s/ *David E. Kirk*
David E. Kirk (No. 7310)

LANDIS RATH & COBB LLP
Adam G. Landis, Esq.
Richard S. Cobb, Esq.
Matthew B. McGuire, Esq.
Howard W. Robertson IV, Esq.
919 Market Street, Suite 1800
Wilmington, Delaware 19801
landis@lrclaw.com
cobb@lrclaw.com
mcguire@lrclaw.com
robertson@lrclaw.com

SULLIVAN & CROMWELL LLP
Stephanie G. Wheeler, Esq.
Brian D. Glueckstein, Esq.
Justin J. DeCamp, Esq.
Christopher J. Dunne, Esq.
Jacob M. Croke, Esq.
125 Broad Street
New York, NY 10004
wheelers@sullcrom.com
gluecksteinb@sullcrom.com
decampj@sullcrom.com
dunnec@sullcrom.com
crokej@sullcrom.com

*Attorneys for Debtors and Plaintiff FTX Recovery Trust*

CAHILL GORDON & REINDEL LLP
Gregory Strong, Esq.
221 W. 10th Street, 3rd Floor
Wilmington, DE 19801
GStrong@cahill.com

Samson A. Enzer, Esq.
Tammy L. Roy, Esq.
Joel H. Levitin, Esq.
Gregory Mortenson, Esq.
32 Old Slip
New York, NY 10005
SEnzer@cahill.com
TRoy@cahill.com
JLevitin@cahill.com
GMortenson@cahill.com

*Attorneys for Digital Legend Hodlings Ltd. and Huobi Global, S.A.*

YOUNG CONAWAY STARGATT &
TAYLOR LLP
Jared W. Kochenash, Esq.
Matthew Barry Lunn, Esq.
Robert F. Poppiti, Jr., Esq.
1000 North King Street
Wilmington, DE 19801
jkochenash@ycst.com
mlunn@ycst.com
rpoppiti@ycst.com

PAUL HASTINGS LLP
Luc A. Despins, Esq.
Caroline Diaz, Esq.
Erez Gilad, Esq.
Kristopher M. Hansen, Esq.
John F. Iaffaldano, Esq.
Leonie C. Koch, Esq.
Samantha Martin, Esq.
Kenneth Pasquale, Esq.
Gabriel Sasson, Esq.
Isaac Sasson, Esq.
200 Park Avenue
New York, NY 10166
lucdespins@paulhastings.com
carolinediaz@paulhastings.com
erezgilad@paulhastings.com
krishansen@paulhastings.com
jackiaffaldano@paulhastings.com
leoniekoch@paulhastings.com
samanthamartin@paulhastings.com
kenpasquale@paulhastings.com
gabesasson@paulhastings.com
isaacsasson@paulhastings.com

Frank A. Merola, Esq.
1999 Avenue of the Stars, 27th Floor
Century City, CA 90067
frankmerola@paulhastings.com

KRAMER LEVIN NAFTALIS &
FRANKEL LLP
Kenneth H. Eckstein, Esq.
1177 Avenue of the Americas
New York, NY 10036
keckstein@kramerlevin.com
*Attorneys for Official Committee of Unsecured Creditors*

OFFICE OF THE U.S. TRUSTEE
Joseph James McMahon, Jr., Esq.
Benjamin A. Hackman, Esq.
Linda Richenderfer, Esq.
Office of the United States Trustee
844 King Street, Suite 2207
Lockbox 35
Wilmington, DE 19801
joseph.mcmahon@usdoj.gov
benjamin.a.hackman@usdoj.gov
Linda.Richenderfer@usdoj.gov

David Gerardi, Esq.
Office of the United States Trustee
One Newark Center,1085 Raymond
Boulevard, Suite 2100
Newark, NJ 07102
David.Gerardi@usdoj.gov

*Attorneys for United States Trustee*